# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) ) | C.A. No.: N21C-08-063 EMD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NEWSMAX MEDIA, INC., and NEWSMAX BROADCASTING, LLC, | ) ) ) | |
| Defendants. | ) | |

Submitted: March 21, 2025
Decided: April 9, 2025

*Upon Defendants' Motion for Summary Judgment*,
**DENIED.**

*Upon Plaintiffs' Motion for Summary Judgment*,
**GRANTED in part and DENIED in part.**

Brian E. Farnan, Esquire, Michael J. Farnan, Esquire, Rosemary J. Piergiovanni, Esquire, Farnan LLP, Wilmington, Delaware; Rodney Smolla, Esquire, South Royalton, Vermont; Stephen Shackelford, Jr., Esquire, Mark Hatch-Miller, Esquire, Zach Savage, Esquire, Christina Dieckmann, Esquire, Eve Levin, Esquire, George R. El-Khoury, Esquire, Susman Godfrey LLP, New York, New York; Davida Brook, Esquire, Susman Godfrey LLP, Los Angeles, California; Jonathan Ross, Esquire, Mary Kathryn Sammons, Esquire, Laranda Walker, Esquire, Elizabeth Hadaway, Esquire, Susman Godfrey LLP, Houston, Texas; Edgar Sargent, Esquire, Steve Seigel, Esquire, Katherine Peaslee, Esquire, Susman Godfrey LLP, Seattle, Washington. *Attorneys for Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation*.

C. Barr Flinn, Esquire, Kevin A. Guerke, Esquire, Timothy E. Lengkeek, Esquire, Lauren Dunkle Fortunato, Esquire, Michael A. Laukaitis II, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Howard M. Cooper, Esquire, Joseph M. Cacace, Esquire, Josh L. Launer, Esquire, Maria A. Lombardi, Esquire, Todd & Weld LLP, Boston, Massachusetts; Victoria L. Weatherford, Esquire, Baker and Hostetler LLP, San Francisco, California; Andrew B. Grossman, Esquire, Mark W. DeLaquil, Esquire, Renee M. Knudsen, Esquire, Brian V.

Johnson, Esquire, Baker and Hostetler LLP, Washington, DC; Michael E. Olney, Esquire, Newsmax Media, Inc., New York, New York. *Attorneys for Defendants Newsmax Media, Inc., and Newsmax Broadcasting, LLC.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a civil defamation action.  Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") claim that Defendants Newsmax Media, Inc., and Newsmax Broadcasting, LLC (collectively, "Newsmax") published false and defamatory statements about Dominion relating to Dominion's role in the 2020 United States Presidential Election (the "Election").[1]

Dominion filed its Complaint on August 10, 2021, seeking economic and punitive damages for defamation *per se* against Newsmax (the "Complaint").[2]  Newsmax filed a Motion to Dismiss under Superior Court Civil Rule 12(b)(6) on October 11, 2021.[3]  The Court denied the Motion to Dismiss on June 16, 2022.[4]  Newsmax filed an Answer and Counterclaim on August 22, 2022.[5]  Newsmax filed a motion to amend its Answer on March 11, 2024, which the Court granted on May 3, 2024.[6]  Newsmax filed the Amended Answer on May 7, 2024 (the "Answer").[7]

On January 16, 2025, the Court held that Colorado substantive law applies in this action.[8]

---

[1] *See* Plaintiffs' Complaint (hereinafter "Compl.") (D.I. No. 1).
[2] *Id.*
[3] *See* Newsmax's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (D.I. No. 21).
[4] *See* D.I. No. 61.
[5] *See* Newsmax's Answer to Plaintiffs' Complaint and Counterclaim (D.I. No. 69).
[6] *See* D.I. No. 299.
[7] *See* Newsmax's First Amended Answer to Plaintiffs' Complaint and Counterclaim (hereinafter "Answer") (D.I. No. 301).
[8] *See* Decision on Choice of Law (D.I. No. 468).

Presently before the Court are the parties' Cross-Motions for Summary Judgment pursuant to Superior Court Civil Rule 56 filed on January 24, 2025 (together, the "Motions," individually the "Newsmax Motion" and "Dominion Motion").[9] Each party timely filed their Oppositions on February 20, 2025,[10] and their Reply Briefs on March 7, 2025.[11]

The Court heard oral arguments on the Motions on March 21, 2025, at which time the matter was taken under advisement.

For the reasons stated below, the Court **DENIES** the Newsmax Motion and **GRANTS in part and DENIES in part** the Dominion Motion.

## II. BACKGROUND

### A. THE PARTIES

#### 1. *Plaintiffs*

US Dominion, Inc. is a Delaware corporation with its principal place of business in Denver, Colorado.[12] Dominion Voting Systems, Inc. is a Delaware corporation with its principal place of business in Denver, Colorado.[13] Dominion Voting Systems Corporation is an Ontario, Canada corporation with its principal place of business in Toronto, Ontario.[14] Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation are wholly owned subsidiaries of US Dominion, Inc.[15]

---

[9] *See* Newsmax's Motion for Summary Judgment (hereinafter "Def. Mot.") (D.I. No. 471); *see also* Dominion's Motion for Summary Judgment on Liability of Newsmax Media, Inc. (hereinafter "Pl. Mot.") (D.I. No. 473).

[10] *See* Newsmax's Opposition Brief to Plaintiff's Motion for Summary Judgment (hereinafter "Def. Opp'n") (D.I. No. 503); *see also* Dominion's Opposition to Newsmax Media, Inc.'s Motion for Summary Judgment (hereinafter "Pl. Opp'n") (D.I. No. 504).

[11] *See* Newsmax's Reply Brief in Support of its Motion for Summary Judgment (hereinafter "Def. Reply Br.") (D.I. No. 529); *see also* Dominion's Reply in Further Support of its Motion for Summary Judgment (hereinafter "Pl. Reply Br.") (D.I. No. 527).

[12] *See* Compl. ¶ 11.

[13] *See id.* ¶ 12.

[14] *See id.* ¶ 13.

[15] *See id.* ¶¶ 12-13.

### 2. *Defendants*

Newsmax Media, Inc. is a Delaware corporation with its principal place of business in Boca Raton, Florida.[16]  Newsmax Media, Inc. operates a television news channel, the website www.newsmax.com, mobile applications for smartphones, and various social media accounts, including a YouTube channel.[17]

Newsmax Broadcasting, LLC is Newsmax Media, Inc.'s wholly owned subsidiary.[18] Newsmax Broadcasting, LLC "owns and operates Newsmax TV."[19]

## B. RELEVANT NON-PARTIES

### 1. *"Newsmax's Leaders"[20]*

Christopher (Chris) Ruddy is the founder, CEO, and President of Newsmax Media, Inc. and Newsmax Broadcasting, LLC.[21]  Mr. Ruddy is "responsible for executive management" of Newsmax.[22]

Elliot Jacobson "contracted with Newsmax Broadcasting, LLC" as the "Chief Content Officer and the Executive Vice President of Programming."[23]  Mr. Jacobson is "responsible for managing the operations and logistics" for Newsmax.[24]  Dominion asserts that during the relevant time surrounding the Election, "[h]osts and senior producers reported to [Mr.] Jacobson."[25]

---

[16] *See* Def. Mot. at 4.
[17] *See* Compl. ¶ 14.
[18] *See* Dominion's Motion for Leave to File First Amended Complaint Adding Newsmax Broadcasting, LLC as a Co-Defendant (D.I. No. 581).
[19] Def. Mot. at 4.
[20] *Id.*
[21] *See id.*
[22] *Id.*
[23] *Id.*; *see* Def. Reply Br. at 4.
[24] *Id.*
[25] Pl. Mot. at 10.

Gary Kanofsky "contracted with Newsmax Broadcasting, LLC" and was Newsmax's Interim News Director from February 2020 to August 2021.[26] As such, Mr. Kanofsky was "not an executive" at Newsmax during the relevant time surrounding the Election;[27] however, Dominion claims that during this time, Mr. Kanofsky reported to Mr. Jacobson, and Newsmax reporters "reported directly to [Mr.] Kanofsky."[28] Newsmax asserts that Mr. Kanofsky was "hired to help develop Newsmax's live programming, and his daily responsibilities included creating systems, processes, teams, and best practices as Newsmax grew."[29] Mr. Kanofsky has been the "Vice President of Production" at Newsmax since August 2021.[30]

### 2. *Newsmax Shows, Hosts, and Producers*

Greg Kelly is the host of *Greg Kelly Reports*, an "hour-long 'opinion-based show' that aired on weeknights at 7 pm."[31] Damon Plotnick is the executive producer of *Greg Kelly Reports*.[32] Sebastian Gorka was a guest-host who appeared on *Greg Kelly Reports*.[33] Six Statements are attributed to *Greg Kelly Reports*: Statements B, C, G, N, R, and S.

Emma Rechenberg and Shaun Kraisman are the co-hosts of *National Report*, "a three-hour long program that aired weekdays from 9 am to noon" and "featured about a hundred guests per week."[34] Amalia Cella is the producer of *National Report*.[35] Two Statements are attributed to *National Report*: Statements D and F.

---

[26] Def. Reply Br. at 4.
[27] Def. Mot. at 4.
[28] Pl. Mot. at 10.
[29] Def. Mot. at 4.
[30] GARY KANOFSKY, *Career*, https://www.kanofsky.com/4 (last visited Feb. 5, 2025).
[31] Def. Mot. at 20, 89.
[32] *See* Pl. Mot. at 10.
[33] *See* Compl. ¶ 184; *see also* Def. Mot. at 36, 76.
[34] Def. Mot. at 22.
[35] *See* Pl. Mot. at 10.

Heather Childers and Bob Sellers were the co-hosts of *American Agenda*, which provided a "live, fast-paced look at national news and international events" and aired on Newsmax "weekdays from 2-4pm."[36] Jerry Burke was the executive producer of *American Agenda*.[37] Two Statements are attributed to *American Agenda*: Statements E and Q.

Rob Schmitt was the host of *Wake Up America*, which aired on Newsmax "weekdays at 7am,"[38] and *The Count*, which provided the "top ten stories of the week" and aired on Newsmax on "Saturdays at 8pm."[39] One Statement is attributed to *Wake Up America*, Statement H. One Statement is attributed to *The Count*, Statement L, which also featured co-host Mark Halperin.

Grant Stinchfield was the host of *Stinchfield*, "'an opinion show' that aired at 8pm on weeknights."[40] Cynthia Costas produced *Stinchfield*.[41] Three Statements are attributed to *Stinchfield*: Statements I, K, and P.

Chris Salcedo is the host of the *Chris Salcedo Show*, "an hour-long 'opinion show' that aired on weeknights at 5pm" on Newsmax.[42] Julian Atienza is the executive producer of the *Chris Salcedo Show*.[43] One Statement, Statement J, is attributed to *Chris Salcedo Show*.

Howie Carr is the host of *The Howie Carr Show*.[44] Newsmax "'simulcast' this show 'simultaneously with [Carr's] live radio broadcast' pursuant to a licensing agreement with Howie Carr Show Enterprises, LLC, which produced the show."[45] One Statement, Statement K, is attributed to *The Howie Carr Show*.

---

[36] Def. Mot. at 23.
[37] *See* Pl. Mot. at 10.
[38] Def. Mot. at 26.
[39] *Id*. at 30.
[40] *Id.* at 26.
[41] *See* Pl. Mot. at 11.
[42] Def. Mot. at 27.
[43] *See* Pl. Mot. at 10.
[44] *See* Def. Mot. at 49.
[45] *Id.*

Benny Johnson was the host of *The Benny Report*, an "opinion-based show" that aired on Newsmax.[46]  One Statement, Statement M, is attributed to *The Benny Report*.

John Bachman is the host of *John Bachman Now*, which covers "'[p]olitical topics, financial topics, health topics,' and occasionally 'sports.'"[47]  Erin Parker and Chris Tamas are the producers of *John Bachman Now*.[48]  One Statement, Statement O, is attributed to *John Bachman Now*.

Other relevant Newsmax personnel include Ron Messer (producer),[49] Jill Vitale (booker),[50] David Perel (website editorial director),[51] Geoff Harbaugh (producer),[52] Pierce Sargeant (producer),[53] Stephanie Cassidy (head of booking),[54] Alicia Hesse (booker),[55] David Wasser (executive producer),[56] Michelle Lopata (associate producer),[57] Chris Knowles (executive producer),[58] and Jason Rosenberg (senior producer).[59]

### 3. *Relevant Newsmax Guests*

Sidney Powell is a former federal prosecutor and former member of President Donald Trump's legal team.[60]  Ms. Powell appeared as a live on-air guest on: *Greg Kelly Reports* on November 17, 2020; *The Howie Carr Show* on November 20, 2020; *The Count* on November 21, 2020; and *Greg Kelly Reports* on December 7, 2020.[61]  Two shows played video "clips" of Ms.

---

[46] *Id.* at 31, 94.
[47] *Id.* at 33.
[48] *See* Pl. Mot. at 10.
[49] *See* Pl. Mot. at 16-17.
[50] *See id.* at 17.
[51] *See id.*
[52] *See id.* at 73.
[53] *See id.*
[54] *See id.* at 21.
[55] *See id.* at 74.
[56] *See id.* at 75.
[57] *See id.* at 102.
[58] *See id.* at 88.
[59] *See id.* at 96.
[60] *See* Compl. ¶ 19; *see also* Def. Mot. at 13.
[61] *See* Compl. ¶¶ 248(g), (k), (l), (n); *see also* Def. Mot. at 25, 29, 30, 32.

Powell from a November 15, 2020, interview by Maria Bartiromo on Fox (the "Powell Fox Interview"): *Greg Kelly Reports* on November 16, 2020; and *National Report* on November 16, 2020.[62] On November 19, 2020, *Stinchfield* played a clip of Ms. Powell speaking at a press conference held earlier the same day by three members of Trump's legal team, Ms. Powell, Rudolph (Rudy) Giuliani, and Jenna Ellis (the "Press Conference"), which discussed "Trump's legal actions and strategy."[63]

Dick Morris is a political commentator and former advisor to Bill Clinton.[64] Dominion asserts that Mr. Morris is a "regular" "paid Newsmax contributor."[65] Mr. Morris appeared as a live on-air guest on: *Greg Kelly Reports* on November 16, 2020; *American Agenda* on November 17, 2020; *John Bachman Now* on December 14, 2020; and *American Agenda* on December 18, 2020.[66]

Joe diGenova is a "former United States Attorney for Washington, D.C., and member of Trump's legal team."[67] Mr. DiGenova appeared on *National Report* as a live on-air guest on November 16, 2020.[68]

Patrick Byrne is the founder and former CEO of Overstock.com.[69] Newsmax claims that Mr. Byrne "had been working with a team investigating claims of vote fraud."[70] Mr. Byrne appeared on *National Report* as a live on-air guest on November 17, 2020.[71]

---

[62] *See* Compl. ¶¶ 248(b), (d); *see also* Def. Mot. at 53, 56.
[63] *See* Compl. ¶ 248(i); *see also* Def. Mot. at 27.
[64] *See* Compl. ¶ 22; *see also* Def. Mot. at 22.
[65] Compl. ¶ 22; Pl. Mot. at 11.
[66] *See* Compl. ¶¶ 248(c), (e), (o), (q); *see also* Def. Mot. at 22, 24, 33, 34.
[67] Def. Mot. at 23.
[68] *See* Compl. ¶ 248(d); *see also* Def. Mot. at 23.
[69] *See* Compl. ¶ 23; *see also* Def. Mot. at 24.
[70] Def. Mot. at 24.
[71] *See* Compl. ¶ 248(f); *see also* Def. Mot. at 24-25.

Emerald Robinson is "a former White House Correspondent for Newsmax hired in January 2020."[72] Ms. Robinson appeared live for a segment featured on *Wake Up America* on November 17, 2020.[73]

Mr. Stinchfield appeared as a live on-air guest on an episode of the *Chris Salcedo Show* on November 19, 2020.[74] The broadcast included clips of Mr. Giuliani and Ms. Ellis speaking at the Press Conference.[75]

Russell Ramsland is a 2016 Republican congressional candidate and authored the "Ramsland Report," an "expert report" filed in a lawsuit in Antrim County, Michigan, the site of alleged "vote-flipping."[76] The Ramsland Report concluded that "Dominion Voting System is intentionally and purposefully designed with inherent errors to create systemic fraud and influence election results."[77] Mr. Ramsland appeared on *Greg Kelly Reports* as a live on-air guest on December 18, 2020.[78]

Michael (Mike) Lindell is the founder and CEO of MyPillow, Inc.[79] Newsmax describes Mr. Lindell as "a businessman who had been investigating fraud claims and supporting election-related challenges."[80] Mr. Lindell appeared as a live on-air guest on: *Stinchfield* on December 17, 2020; and *Greg Kelly Reports* on December 21, 2020.[81]

---

[72] Def. Mot. at 24; *see* Pl. Mot. at 56: "Robinson was ultimately terminated from Newsmax for tweeting false information on other topics (namely, COVID)."
[73] *See* Compl. ¶ 248(h); see *also* Def. Mot. at 26.
[74] *See* Compl. ¶ 248(j); *see also* Def. Mot. at 28.
[75] *See id.*
[76] *See* Compl. ¶ 31; *see also* Def. Mot. at 15-16; *see also* Pl. Mot. at 45 n.5: "The Antrim County Clerk [] explained, over and over again, how the error in initial reporting of unofficial votes in her county was the result of human error—her own admitted error—not any mischief with the machines."
[77] Def. Mot. at 15-16.
[78] *See* Compl. ¶ 248(r); *see also* Def. Mot. at 35.
[79] *See* Compl. ¶ 21.
[80] Def. Mot. at 34.
[81] *See* Compl. ¶¶ 248(p), (s); *see also* Def. Mot. at 34, 36.

## C. THE ALLEGED DEFAMATORY CONDUCT

Dominion alleges that in the wake of the Election, Newsmax engaged in a defamatory campaign against Dominion, comprising of nineteen at-issue statements—eighteen statements that aired on Newsmax's television news channel, and one social media post.[82] Each statement is titled "Statement A," "Statement B," "Statement C," etc., and together are the "Statements."

The Statements span a six-week period, from November 10, 2020, through December 21, 2020.[83] Dominion classifies the Statements into five categories:[84]

(1) Dominion committed election fraud by rigging the Election (the "election fraud lie").[85] Dominion asserts that all nineteen Statements, Statements A through S, contain the "election fraud lie."

(2) Dominion's software and algorithms manipulated vote counts in the Election (the "algorithm lie").[86] Dominion asserts that fifteen Statements contain the "algorithm lie": Statements B, D, F, G, H, I, J, K, L, N, O, P, Q, R, and S.

(3) Dominion is owned by or owns a company founded in Venezuela to rig elections for Hugo Chavez (the "Venezuela lie").[87] Dominion asserts that eleven Statements contain the "Venezuela lie": Statements A, B, D, E, G, H, J, L, M, N, and O.

(4) Dominion paid kickbacks to government officials who used its machines in swing states during the Election (the "kickback lie").[88] Dominion asserts that Statement L contains the "kickback lie."

(5) Dominion was involved with alleged voting irregularities in Dallas, Texas in 2018 (the "Dallas lie").[89] Dominion asserts that Statement F contains the "Dallas lie."

---

[82] *See generally* Compl. ¶¶ 248(a)-(s).
[83] *See id.*; *see also* Def. Mot. at 19, 36.
[84] *See* Pl. Mot. at 28.
[85] *See id.* at 30.
[86] *See id.* at 43.
[87] *See id.* at 48.
[88] *See id.* at 50.
[89] *See id.* at 53.

## D. DOMINION RESPONDS TO THE ALLEGATIONS

### 1. *"SETTING THE RECORD STRAIGHT": Fact Sheets from Dominion*

On November 11, 2020, Dominion published a "Fact Sheet" on its public website to "rebut[] the lies and falsehoods that had begun to spread about Dominion and the 2020 Election."[90] Dominion titled the webpage "SETTING THE RECORD STRAIGHT."[91]

At the same time, Dominion began "circulating a regular email titled 'SETTING THE RECORD STRAIGHT: FACTS & RUMORS.' The emails were complete with links to independent sources disproving the false claims being made about the company."[92]

According to Dominion, on November 12, 2020, "[Mr.] Kanofsky began researching Dominion online. … [Mr.] Kanofsky found, and circulated broadly to hosts and producers of the accused broadcasts, Dominion's 'SETTING THE RECORD STRAIGHT' press release."[93] The email's subject line was "RESPONSE FROM DOMINION VOTING SYSTEMS."[94]

Newsmax claims that it broadcasted the Fact Sheet on *Stinchfield* on November 12, 2020, "[b]efore any of the challenged statements aired … to give its viewers Dominion's side of the story."[95] Newsmax contends that Stinchfield stated, "[t]he problem is, Dominion may not know about a hack or switch. In fact, no one accused Dominion of being in on anything, only that they could be the possible victims of something, only that the system could be vulnerable. That's the accusation here, and it certainly needs investigating."[96]

---

[90] Pl. Mot. at 18.
[91] Compl. ¶ 119.
[92] *Id.*
[93] Pl. Mot. at 84-85.
[94] *Id.* at 18 (Pl. Mot., Ex. 175, Dominion Fact Sheet).
[95] Def. Mot. at 120 (Def. Mot., Ex. 123).
[96] Def. Opp'n at 7 (Def. Mot., Ex. 238 at 8:2-9).

Dominion asserts that on November 17, 2020, Dominion sent the first "SETTING THE RECORD STRAIGHT" email to Newsmax's booking producer, Alicia Hesse.[97] "Upon information and belief, [Ms.] Hesse shared the contents of the emails she received from Dominion with the hosts and other producers for the shows she books."[98] Dominion claims that it "received no reply from Newsmax in response to this email."[99] Newsmax, however, maintains that it has "no record of this alleged communication, and [Ms.] Hesse testified that she did not see the press releases and believes, if they were sent to her, that she likely deleted them, possibly without reviewing them."[100]

Dominion insists that "Newsmax received thirty-six 'SETTING THE RECORD STRAIGHT' releases debunking false claims made about Dominion."[101]

### 2. *Dominion's Retraction Requests to Newsmax, and Newsmax's "Clarification"*

On December 18, 2020, "Dominion sent a formal retraction demand letter to Newsmax. In that letter, Dominion once again put Newsmax on formal written notice of facts—which Newsmax knew of from widespread reporting, from receiving numerous iterations of Dominion's 'SETTING THE RECORD STRAIGHT' emails beginning over a month before…."[102] Dominion claims that "Newsmax refused to retract" any prior broadcast.[103]

On December 19, 2020, "Newsmax posted a clarification notice on its website" (the "Clarification"), stating in relevant part:

> Newsmax has found no evidence either Dominion or Smartmatic owns the other, or has any business association with each other. We have no evidence Dominion uses Smartmatic's software or vice versa. No evidence has been offered that Dominion or Smartmatic used software or reprogrammed software that

---

[97] *See* Compl. ¶ 120.
[98] *Id.*
[99] *Id.* ¶ 121.
[100] Def. Mot. at 39 (Def. Mot., Ex. 176 at 63:4-5, 65:1-66:12).
[101] Pl. Mot. at 19 n.4.
[102] Compl. ¶ 177.
[103] *Id.* ¶ 179.

manipulated votes in the 2020 election. … Smartmatic is a U.S. company and not owned by the Venezuelan government, Hugo Chavez or any foreign official or entity.[104]

Newsmax claims that it aired the Clarification "across its programs" on December 21, 2020.[105]

On December 21, 2020, guest-host Mr. Gorka interviewed Lindell on *Greg Kelly Reports.* According to Dominion, the interview included "algorithm lies" and "fraud lies."[106]

On December 22, 2020, Dominion sent a second retraction letter to Newsmax.[107] Dominion "explain[ed] that Dominion was 'disappointed that Newsmax continues to publish lies about US Dominion Inc.,' despite Dominion's retraction demand."[108]

Dominion claims that on December 28, 2020, Newsmax's lawyers "responded to Dominion's retraction-demand and notice letters."[109] Newsmax's lawyers "did not contest that what Newsmax had broadcast about Dominion was false; they claimed only that Newsmax was not at fault."[110]

Newsmax maintains that between November 13, 2020, and December 22, 2020, "Newsmax contacted Dominion in writing for its side of the story at least nine more times, in addition to phone calls. … Altogether, Newsmax sent at least 10 written requests for Dominion's side of the story."[111] "It was only on December 16, … that Dominion responded, stating that Newsmax could 'cite Dominion's fact sheet' and '[Mr.] Poulos's testimony from yesterday's hearing in Michigan.'" … That is exactly what Newsmax did in Statement R."[112]

---

[104] Def. Mot. at 37, 39 (Def. Mot., Ex. 131, Newsmax Clarification).
[105] *Id.*
[106] Pl. Mot. at 124.
[107] Compl. ¶ 185.
[108] *Id*.
[109] Pl. Mot. at 28.
[110] *Id*.
[111] Def. Mot. at 37.
[112] *Id.* at 38.

## E. RELEVANT INTERNAL DIALOGUE OF NEWSMAX PERSONNEL PRIOR TO THE STATEMENTS

For background, Dominion notes that on Election Day, "Fox was the first outlet to call Arizona for Biden—at 11:20 p.m. on November 3 [2020]. Fox's decision infuriated viewers, conservative activists, and the White House, but presented an opportunity for Newsmax to capitalize on the disillusioned and disaffected."[113]

On November 4, 2020, Mr. Ruddy emailed Mr. Kanofsky and Mr. Jacobson, directing them to "show throughout [the] day" a Newsweek report titled "*Conservatives Turn Against Fox News Over Election Coverage, Change Channel to Newsmax.*"[114]

The same day, Mr. Ruddy sent an email stating in relevant part, "Last night was a turning point for the network. We are now a force to be reckoned with."[115]

On November 5, 2020, "in an email to executives, hosts, and guests, [Mr.] Ruddy instructed: 'we can show clips of this,' referring to Newsweek's coverage of anti-Fox News protests…."[116]

On November 6, 2020, Mr. Ruddy emailed host Mr. Bachman "a bullet-point list of points to cover," including "Fox at War with Trump package," "Election night, newsmax called fla, trump won it handily, but fox wouldn't call," and "Newsmax is beneficiary … Nielsen reports 3 million viewers tuned in election night for our coverage, a record number…. Now with trump fighting for his political fight [*sic*], it's clear, Fox will not be there for him."[117]

---

[113] Pl. Mot. at 14.
[114] *Id.* at 15 (Pl. Mot., Ex. 163).
[115] *Id.* at 14 (Pl. Mot., Ex. 160).
[116] *Id.* at 15 (Pl. Mot., Ex. 166).
[117] *Id.*

14

On November 7, 2020, Mr. Jacobson texted Ms. Parker, "We are not calling it. It is a huge opportunity for us as by tomorrow we will be the only outlet that will not have called it so millions of vireos [*sic*] will be looking. Viewers. For an outlet."[118]

The same day, Mr. Kanofsky "received audience feedback admonishing Newsmax for failing to call the election for Joe Biden, as 'there is no evidence of illegal voting, ballots being accepted when they should not have been accepted, or other fatal flaw that renders the outcome of the vote nationwide unsustainable.'"[119] Mr. Kanofsky forwarded the feedback to Mr. Jacobson and wrote, "This is exactly what I am worried about…."[120]

On November 8, 2020, Mr. Burke emailed other Newsmax producers, stating in relevant part, "we know Viewers are leaving other channels in droves, and we welcome them."[121]

The same day, Mr. Jacobson texted Mr. Burke, "Jerry[.] I think we need to reinforce our surprise that fox called this election[.] It's the big opportunity[.]"[122]

On November 9, 2020, Mr. Sellers texted Mr. Burke, "How long are we going to have to play along with election fraud?"[123] Newsmax, however, contends that "the text this line was ripped from *never even mentions Dominion*."[124] Newsmax argues that Dominion's "characterization of this text is misleading," stating, "[l]ater in the same thread, [Mr.] Sellers writes, 'I think there's a legit legal challenge in PA,' and [Mr.] Sellers and [Mr.] Burke agreed that Trump has 'every right to pursue' legal remedies 'until the count ends and the courts have ruled.'"[125]

---

[118] *Id.* at 65 (Pl. Mot., Ex. 224).
[119] *Id.* at 16 (Pl. Mot., Ex. 168).
[120] *Id.*
[121] *Id.* (Pl. Mot., Ex. 149).
[122] *Id.* (Pl. Mot., Ex. 225).
[123] *Id.* (Pl. Mot., Ex. 169).
[124] Def. Opp'n at 14.
[125] *Id.* at 74.

## F. RELEVANT INTERNAL DIALOGUE OF NEWSMAX PERSONNEL DURING THE TIMEFRAME OF THE STATEMENTS (NOVEMBER 10, 2020, TO DECEMBER 21, 2020)

On November 10, 2020, Mr. Ruddy emailed Mr. Perel, "Please prepare: … Dominion Software Played a Big Role in Vote Count, Did It Help Biden," and included a link to an article titled "*Human error, Dominion voting equipment fuel false fraud claims in Michigan*."[126]

In a "Newsmax TV Operations Meeting" on November 10, 2020, Mr. Ruddy stated that Newsmax is doing "incredible numbers" and "beat Fox Business."[127]

On November 12, 2020, Mr. Ruddy "bragged on Twitter that President Trump had called him and 'congratulated Newsmax on our ratings explosion.'"[128]

On November 12, 2020, "[Mr.] Ruddy forwarded to [Mr.] Kanofsky a link to an article titled 'Newsmax TV: Trump voters are flocking to a channel that claims Biden is not president-elect' with the note: 'this is great.'"[129]

On November 12, 2020, "[Mr.] Kanofsky sent Newsmax producers, hosts, and [Mr.] Ruddy an email, subject 'RESPONSE FROM DOMINION VOTING SYSTEMS,' that contained [the Fact Sheet]."[130]

On November 12, 2020, Mr. Ruddy sent an email to Mr. Jacobson and Mr. Kanofsky with the subject line "Newsmax's Editorial Position," and the body of the email stated in relevant part:

> Newsmax does not have evidence of widespread voter fraud. We have no evidence of a voter fraud conspiracy nor do we make such claims on Newsmax.[131] … We believe we should not censor allegations made by the President or his lawyers or surrogates. Our job is not to filter the news but report information and allow Americans to decide.[132]

---

[126] Pl. Mot. at 17 (Pl. Mot., Ex. 173).
[127] *Id.* (Pl. Mot., Ex. 171).
[128] *Id.* at 15 (Pl. Mot., Ex. 90 at 343:24-344:4).
[129] *Id.* at 65 (Pl. Mot., Ex. 214).
[130] *Id.* at 18 (Pl. Mot., Ex. 175).
[131] *Id.* at 19-20 (Pl. Mot., Exs. 58, 156).
[132] Def. Opp'n at 50 (referencing Pl. Mot., Exs. 58, 156).

Later in the same day, Mr. Jacobson sent the body of Mr. Ruddy's email to Newsmax "hosts and producers" with the subject line "Newsmax's Editorial Position on the election."[133]

After sending the above email, Mr. Ruddy sent an "urgent" internal email stating "please add to this story many criticisms of dominions software[.] also they bought the company that was accused of rigging the Venezuela election[.]"[134]

On November 12, 2020, and November 13, 2020, Mr. Stinchfield "invited Dominion on the air to respond to the Trump Legal Team's claims … In the first invitation, Newsmax identified 'alleged problems with your Dominion system' and 'a report from Texas that raises concerns,' including whether Dominion's voting machines are 'safe from fraudulent or unauthorized manipulation.'"[135]  Dominion "ignored the request—its VP of Government Affairs Kay Stimpson remarked, 'I don't think we need to worry about this request,' apparently because she'd never heard of Newsmax, and Dominion's PR consultant mocked Newsmax as being 'on the far side of the crazy wall.'"[136]

On November 12, 2020, Mr. Ruddy forwarded Mr. Kanofsky a link to an article titled "Newsmax TV: Trump voters are flocking to a channel that claims Biden is not president-elect" and noted: "this is great."[137]

On November 13, 2020, "[Mr.] Burke texted the production staff of *American Agenda* an image of a Fox blimp crashing with the caption: 'The crashing of #FoxNews.  More and more people are moving to #Newsmax.'"[138]

---

[133] Pl. Mot. at 20 (Pl. Mot., Ex. 156).
[134] *Id.* (Pl. Mot., Ex. 176).
[135] Def. Mot. at 119 (Def. Mot., Ex. 11).
[136] Def. Opp'n at 7 (Def. Mot., Ex. 11).
[137] Pl. Mot. at 65 (Pl. Mot., Ex. 214).
[138] *Id*. at 65-66 (Pl. Mot., Ex. 228).

On November 13, 2020, Mr. Sellers texted Mr. Jacobson "about an appearance [Mr.] Morris had done regarding election fraud allegations, stating, 'I think it's a good idea not to have Dick Morris on my show anymore…. This is the second time I've had a run in with him—both times where I was trying to maintain the integrity of our network.'"[139]

On November 13, 2020, Mr. Wasser emailed Mr. Jacobson, stating in relevant part, "There is not a shred of evidence to support that [fraud] allegation from [Mr. Morris]."[140]

On November 22, 2020, Mr. Ruddy texted Jimmy Finkelstein, then-owner of *The Hill*, about Ms. Powell, stating, "She's nuts."[141] Mr. Ruddy then stated "in reference to the Trump legal team: 'I was told earlier tonight that she has been a Lonewolf, raising money for her own C4 and also not sharing legal documents with the team.'"[142] Mr. Finkelstein texted back, "the whole thing is stupid and most [*sic*] stop. It's embarrassing." Mr. Ruddy responded, "Jimmy don't worry when they release the Kraken we will all be vindicated! You can't make this shit up."[143]

On November 22, 2020, in an email to Edward Pentin, contributor to the National Catholic Register,[144] Mr. Ruddy "cautioned Pentin against having Cardinal Leo Burke weigh in on the voter fraud claims: 'I'd like Sidney but she is a little loose with the facts so we have to be a little careful with his Eminence weighing in.'"[145]

---

[139] *Id.* at 75 (Pl. Mot., Ex. 241).
[140] *Id.* (Pl. Mot., Ex. 240).
[141] *Id.* at 72 (Pl. Mot., Ex. 236).
[142] *Id.*
[143] *Id.*
[144] *Id.* (Pl. Mot., Ex. 233).
[145] *Id.*

On November 22, 2020, Mr. Ruddy texted another individual a "meme"[146] that was "apparently … circulating online" suggesting that Republicans were leaving Fox for Newsmax.[147]

On November 22, 2020, "after the Trump campaign distanced itself from [Ms.] Powell, [Mr.] Ruddy texted pollster John McLaughlin: 'Sidney Powell Trump is apparently so upset she is giving up the Trump name, she wants only to be referred to as Sidney Powell now, and she's planning on retiring either to Roswell or area 51!'"[148]

The same day, "while talking about election fraud conspiracies," Mr. Burke texted Mr. Sellers, "I think ruddy knows there is a market for this stuff."[149]  Newsmax, however, insists that this text thread "never mentions Dominion."[150]

On December 4, 2020, Mr. Kanofsky emailed Mr. Sargeant and Mr. Jacobson stating in relevant part:

> [Ms. Powell] has been routinely accused of advancing especially controversial claims including Chinese Money, Hugo Chavez, and a litany of accusations regarding Dominion which have been batted down or (arguably) repudiated.  When is she going to step forward with specific and unambiguous evidence which stands up to the scrutiny it will be afforded in the court system?  Or – is her contention that she's already done so?  She's simply got to answer for this.[151]

On December 15, 2020, Mr. Kanofsky "referred to [Ms.] Powell's election fraud claims as 'insanity'" in an email to Mr. Jacobson.[152]

---

[146] "Meme: An amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media."  MERRIAM-WEBSTER, *Meme*, https://www.merriam-webster.com/dictionary/meme (last visited Feb. 18, 2025).
[147] Pl. Mot. at 14 (Pl. Mot., Ex. 158).
[148] *Id.* (Pl. Mot., Ex. 234).
[149] *Id.* (Pl. Mot., Ex. 159).
[150] Def. Opp'n at 14.
[151] Pl. Mot. at 73 (Pl. Mot., Ex. 309).
[152] *Id*. at 74 (Pl. Mot., Ex. 151).

On December 20, 2020, Mr. Ruddy texted Mr. McLaughlin: "I hear [Trump] is meeting with sydney [*sic*] Powell tonight actually at the White House scary."[153]

### III. PARTIES' CONTENTIONS

#### A. PLAINTIFFS

First, Dominion argues that the Statements are false.[154] Dominion asserts that since the Court decided *US Dominion, Inc. v. Fox News Network, LLC*, "Newsmax has developed ***zero*** evidence to dispute falsity."[155]

Second, Dominion contends that the Statements are "of and concerning" Dominion because each Statement identifies Dominion expressly by name.[156]

Third, Dominion asserts that Newsmax published the Statements.[157] Dominion argues that Newsmax published Statement A because Newsmax controlled Ms. Robinson's social media.[158] Dominion contends that Newsmax published, and republished, Statements B through S directly on its news channel, website, and social media accounts.[159]

Fourth, Dominion argues that Newsmax acted with actual malice.[160] Dominion asserts: (i) Newsmax executives—Messrs. Ruddy, Jacobson, and Kanofsky—had actual malice;[161] (ii) "at least one individual within Newsmax who knew or recklessly disregarded the truth has or

---

[153] *Id.* (Pl. Mot., Ex. 230).
[154] *See id.* at 28.
[155] *Id.* at 5 (emphasis supplied) (referencing *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002 (Del. Super. 2023)) (hereinafter "*US Dominion, Inc.*").
[156] *See id.* at 55.
[157] *See id.* at 55.
[158] *See id*. at 56.
[159] *See id.* at 78.
[160] *See id.* at 58.
[161] *See id*. at 81-85.

20

shares responsibility for the publication of each Statement;"[162] and (iii) circumstantial evidence shows actual malice, including a financial motive and departure from journalistic standards.[163]

Fifth, Dominion claims that the Statements are *per se* defamatory because each one imputes either a criminal offense or conduct inconsistent with Dominion's business.[164]

Sixth, Dominion contends that it is entitled to summary judgment on two of Newsmax's affirmative defenses: (i) the fair report privilege; and (ii) the incremental harm doctrine.[165]

## B. DEFENDANTS

First, Newsmax argues that it is entitled to summary judgment on actual malice because Dominion fails to meet its burden of proving, by clear and convincing evidence, that each Statement was published with actual malice by a responsible Newsmax employee.[166]

Second, Newsmax asserts that the Statements are not actionable as defamation because: (i) Dominion cannot prove publication;[167] (ii) the fair report privilege and incremental harm doctrine protects Newsmax;[168] and (iii) the Statements are non-actionable opinions.[169]

Third, Newsmax contends that Dominion cannot prove damages because: (i) the "presumption of regularity" applies;[170] (ii) Dominion's damages are speculative and contradicted

---

[162] *Id.* at 85.
[163] *See id.* at 65-79.
[164] *See id.* at 57.
[165] *See id.* at 127-129; *see also* Pl. Opp'n at 5, 60. In its Motion, Dominion argued that it was also entitled to summary judgment on Newsmax's neutral report defense. However, the parties do not contest that there exists no neutral report privilege under Colorado law. Thus, for purposes of the Motions, the parties are only contesting Newsmax's defenses of the fair report privilege and incremental harm doctrine.
[166] *See* Def. Mot. at 41.
[167] *See id.* at 77.
[168] *See id*. at 78.
[169] *See id.* at 86.
[170] *See id.*

by evidence;[171] (iii) Dominion attributed the same damages to others;[172] and (iv) Dominion cannot recover lost enterprise value damages.[173]

Fourth, Newsmax argues that Dominion is not entitled to punitive damages because there is no evidence of fraud, malice, or willful and wanton conduct.[174]

Fifth, Newsmax asserts that it is entitled to an offset of Dominion's $787.5 million settlement with Fox for the "same alleged harms."[175]

## IV.    STANDARD OF REVIEW

Superior Court Civil Rule 56 governs motions for summary judgment.[176]  The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[177] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[178]  If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[179]  The moving party bears the initial burden of demonstrating that the undisputed facts support its claims or defenses.[180]  If the motion is properly supported, then the burden shifts to the non-moving party

---

[171] *See id.* at 104-13.
[172] *See id.* at 115-16.
[173] *See id.* at 116-17.
[174] *See id.* at 118.
[175] *Id.* at 121.
[176] Super. Ct. Civ. R. 56.
[177] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[178] *See Merrill*, 606 A.2d at 99-100.
[179] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244, at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates … that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[180] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[181]

"These well-established standards and rules equally apply [to the extent] the parties have filed cross-motions for summary judgment."[182] Where cross-motions for summary judgment are filed and neither party argues that a genuine issue of material fact exists, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[183] However, "the existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues."[184] Therefore, where cross-motions for summary judgment are filed and an issue of material fact exists, summary judgment is not appropriate.[185] To determine whether a genuine issue of material fact exists, the Court evaluates each motion independently.[186] Again, where it seems prudent to make a more thorough inquiry into the facts, summary judgment will be denied.[187]

## V.    DISCUSSION

Dominion asserts a claim for defamation *per se* against Newsmax. Dominion therefore must prove that when the record is reviewed in a light most favorable to Newsmax, no genuine issues of material fact exist as to each element of defamation.

---

[181] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[182] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Jan. 31, 2019) (citations omitted); *see Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001)).
[183] Super. Ct. Civ. R. 56(h).
[184] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A. 2d 1076, 1079 (Del. 1997).
[185] *Motors Liquidation Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 19, 2017), *aff'd sub nom.*, *Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 191 A.3d 1109 (Del. 2018); *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008); s*ee also Anolick v. Holy Trinity Greek Orthodox Church, Inc.*, 787 A.2d 732, 738 (Del. Ch. 2001) ("[T]he presence of cross-motions 'does not act per se as a concession that there is an absence of factual issues.'" (quoting *United Vanguard Fund, Inc.*, 693 A.2d at 1079).
[186] *Motors Liquidation*, 2017 WL 2495417, at *5; *see Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003).
[187] *Ebersole*, 180 A.2d at 470-72; *Pathmark Stores, Inc. v. 3821 Assocs., L.P.*, 663 A.2d 1189, 1191 (Del. Ch. 1995).

Under Colorado law, the elements of a defamation claim are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication."[188]

Where, as here, the defamatory statement involves a matter of public concern,[189] the plaintiff faces heightened standards.[190] The plaintiff must prove: (1) falsity by clear and convincing evidence; (2) publication by clear and convincing evidence; (3) actual malice by clear and convincing evidence;[191] and (4) actual damages, even if the statement is defamatory *per se*.[192] Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt."[193]

## A. THE COURT FINDS THAT THE STATEMENTS CONSTITUTE DEFAMATION *PER SE*

Whether a statement is defamatory *per se* is a question of law.[194] Colorado law recognizes "two types of defamatory statements: statements which are libelous or slanderous *per se*, and those that are libelous or slanderous *per quod*."[195] A *per se* defamatory statement "must be (1) on its face and without extrinsic proof, unmistakenly recognized as injurious (defamatory meaning) and (2) specifically directed at the plaintiff (identity)."[196] Here, the parties only dispute the first element.

---

[188] *Lawson v. Stow*, 2014 COA 26, ¶ 15 (quoting *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993)).
[189] The parties do not dispute that the Statements involve a matter of public concern. *See* Def. Mot. at 42; *see also* Pl. Opp'n at 30 n.4.
[190] *Lawson*, ¶ 18.
[191] *See L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 45: "[W]here actual malice must be shown, the applicable burden is clear and convincing evidence."
[192] *Anderson v. Senthilnathan*, 2023 COA 88, ¶ 13.
[193] *Destination Maternity v. Burren*, 2020 CO 41, ¶ 10 (quoting *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995)).
[194] *See Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (citing *Walker v. Associated Press*, 417 P.2d 486, 489 (Colo. 1966)).
[195] *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993) (hereinafter "*Wilkerson*").
[196] *Gordon*, 99 P.3d at 78-79 (citing *Lininger v. Knight*, 226 P.2d 809, 812-13 (Colo. 1951)).

The traditional categories of *per se* defamatory statements are those which impute "(1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct."[197]

In evaluating whether a statement is *per se* defamatory, courts "examine the statement 'alone, without the aid of inducements, colloquialism, innuendos, and explanatory circumstances.'"[198] Additionally, courts focus on a statement's overall "gist," "not the literal truth or falsity of each word."[199]

Dominion argues that all the Statements are *per se* defamatory because each imputes a criminal offense or an improper conduct of a lawful business.[200] Dominion notes that in *Fox*, the Court held statements that:

> [C]laimed [] Dominion committed election fraud; manipulated vote counts through its software and algorithms; is owned by a company founded in Venezuela to rig elections for dictator Hugo Chavez; and paid kickbacks to government officials who used its machines in elections … strike at the "basic integrity" of [Dominion's] business: providing voting systems to state and local governments … [and] are defamatory *per se*.[201]

Dominion asserts that the Court should similarly rule that all the Statements, except Statement F, are *per se* defamatory.[202] Though not covered by *Fox*,[203] Dominion maintains that Statement F is nevertheless defamatory *per se* because it "'directly implicate[s] and damage[s] the basic integrity'" of Dominion's business.[204]

---

[197] *Id.* at 79 (citing RESTATEMENT (SECOND) OF TORTS § 570); *see Wilkerson*, 859 P.2d at 301 (citing *Cinquanta v. Burdett*, 388 P.2d 779, 780-81 (Colo. 1963)).

[198] *Wilkerson*, 859 P.2d at 301 (quoting *Inter-State Detective Bureau, Inc. v. Denver Post, Inc.*, 484 P.2d 131, 133 (Colo. App. 1971)).

[199] *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 90 (hereinafter "*Coomer*").

[200] *See* Pl. Reply Br. at 10-27 (quoting *Wilkerson*, 859 P.2d at 301 (edits in original)).

[201] *US Dominion, Inc.*, 293 A.3d at 1053; *see* Pl. Mot. at 30-53, 57.

[202] Pl. Mot. at 57.

[203] Statement F is not covered by the *Fox* ruling because it contains the Dallas Lie and no statement at issue in *Fox* similarly alleged that "Dominion was involved with alleged voting irregularities in Dallas, Texas, in 2018[.]" *Id.* at 53-54. *See generally US Dominion, Inc.*, 293 A.3d at 1020-23.

[204] Pl. Mot. at 57-58 (quoting *US Dominion, Inc.*, 293 A.3d at 1055) (edits in original).

In its Opposition, Newsmax notes that because the Statements involve a matter of public concern, Dominion must establish actual damages, even if the Statements are defamatory *per se*.[205] Newsmax contends that Dominion's lack of evidence regarding actual damages precludes summary judgment on liability.[206] Newsmax then argues that "[m]any of the challenged statements are not actionable defamation and, taken on their own term, are not materially false."[207] This final argument blends together Newsmax's contentions concerning *per se* defamation, falsity, and opinion.[208]

The Court concludes that all the Statements are *per se* defamatory because each suggests that Dominion aided in election fraud.[209] Statements B, C, D, F, G, H, I, K, L, P, and R state that the Election was "absolutely stolen" using Dominion's software.[210] Similarly, Statements B, D, G, H, I, K, L, N, P, Q, R, and S accuse Dominion's software of being full of "problems, vulnerabilities[,]"[211] and containing "a corrupt algorithm" designed to "switch[] votes from President Trump to Biden."[212] Statement F claims "a hack … involving Dominion technologies" caused "irregularities" in the 2018 Dallas election.[213] Statement L suggests that Dominion paid government officials kickbacks for using its voting machines.[214] Finally, Statements A, D, E, G,

---

[205] *See* Def. Opp'n at 17 (quoting *McIntye v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008)).

[206] *Id.*

[207] *Id.* at 21-34 (arguing Statements B, C, D, E, F, L, M, N, O, P, Q, R, and S are not *per se* defamatory).

[208] *Id.* Dominion further criticizes Newsmax's evaluation of the Statements as an impermissible "piecemeal dissection of *some* statements in *some* accused broadcasts," when under the proper "full context" inquiry all the Statements are *per se* defamatory. Pl. Reply Br. at 12-27 (citing *Coomer*, ¶ 90) ("[I]t is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory, but whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance.")).

[209] *See* Compl., Exs. 11-30.

[210] Compl., Ex. 13; *see* Compl., Exs. 12, 14, 16-20, 22-23, 27, 29.

[211] Compl., Ex. 12.

[212] Compl., Exs. 19-20; *see* Compl., Exs. 14, 17-18, 22-24, 27-30.

[213] Compl., Ex. 16.

[214] Compl., Ex. 23.

H, J, M, N, and O claim that Dominion is affiliated with dictator Hugo Chavez, utilized to rig elections in Venezuela, and improperly counted votes abroad.[215]

Thus, each Statement accuses Dominion of participating in crimes, both in the United States and abroad. Each Statement also attacks the integrity of Dominion's "business: providing voting systems to state and local governments."[216] While Newsmax provides additional context surrounding the Statements,[217] under Colorado law, the Statements "alone" control whether they are defamatory *per se*.[218] Accordingly, the Court finds that all the Statements are *per se* defamatory.[219]

The parties disagree as to whether Newsmax is insulated from liability under the First Amendment principle that pure opinions cannot be actionable as defamation. Colorado courts hold that "accusations of criminal activity, 'even in the form of opinion, are not constitutionally protected.'"[220] Because all the Statements suggest that Dominion engaged in criminal activity by aiding in election fraud, whether they assert opinions is it is accordingly irrelevant.

Even if the opinion inquiry were relevant, the Court alternatively finds that all the Statements are nonetheless actionable because none assert pure opinions. Attached to this decision is an appendix (the "Appendix"). The Appendix goes through each of the Statements and decides whether the Statement constitutes a statement of fact or opinion, or one of mixed

---

[215] *See* Compl., Exs. 11, 14-15, 17-18, 21, 24-26.
[216] *US Dominion, Inc.*, 293 A.3d at 1053.
[217] *See* Def. Mot. at 19-36.
[218] *Wilkerson*, 859 P.2d at 301.
[219] *See Arrington v. Palmer*, 971 P.2d 669, 671 (Colo. App. 1998) (holding a statement accusing an individual of participating in a criminal offense was *per se* defamatory); *Kendall v. Lively*, 31 P.2d 343, 343-44 (Colo. 1934) (holding statements that "the milk sold by the plaintiff was filthy, dirty, unhealthful, and taken from filthy and unhealthy cows, and that it showed on analysis an extremely high bacterial count and a high count of B. Coli," were *per se* defamatory of plaintiff's business); *Brooks v. Jackson*, 813 P.2d 847, 848 (Colo. App. 1991) (defamatory remarks relating to the conduct of an individual's business, tantamount to defamation of his business and professional reputation, amounted to slander *per se* because injury to reputation is presumed.") (citing *Rowe v. Metz*, 579 P.2d 83 (Colo. 1978))).
[220] *Keohane v. Stewart*, 882 P.2d 1293, 1304 (Colo. 1994) (en banc) (hereinafter "*Keohane*").

fact and opinion.  The Court finds that even if the Statements were not *per se* defamatory, each Statement would be actionable because they assert either facts or mixed facts/opinions.

Beyond the classification dispute, the parties also contest the effect of a finding that the Statements are *per se* defamatory.  Typically, "[a] plaintiff proceeding under a theory of defamation *per se* need not plead or prove special damages."[221]  Colorado law, however, recognizes an exception for statements that involve a matter of public concern.[222]  For such statements, the plaintiff "must establish actual damages to maintain the action, even where the statement is defamatory *per se*."[223]  Long-established Colorado law provides that "[i]t is a matter of general public concern that, at all elections, … safeguards be afforded."[224]

Here, each Statement addresses either the Election or the 2018 Dallas elections.  The Statements, therefore, each involve a matter of public concern.  Accordingly, the Court holds that, even though the Statements are defamatory *per se*, Dominion must prove damages at trial.

Therefore, the Court will **GRANT** summary judgment in favor of Dominion on whether the statements are *per se* defamatory.

### B. DOMINION IS ENTITLED TO SUMMARY JUDGMENT ON THE ELEMENT OF FALSITY

Under Colorado law, the burden is on the plaintiff to prove that the alleged defamatory statement is "materially false" by clear and convincing evidence.[225]  "To establish falsity, a plaintiff must show that the substance or the gist of the statement was inaccurate. … 'Minor inaccuracies do not amount to falsity' so long as the substance or the gist of the statement was

---

[221] *Wilkerson*, 859 P.2d at 301.
[222] *See McIntye*, 194 P.3d at 524.
[223] *Id.* (citing *Keohane*, 882 P.2d at 1304).
[224] *Mauff v. People*, 123 P. 101, 103 (Colo. 1912); s*ee Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 2023 COA 114, ¶ 20 ("a matter is of public concern when it can fairly be considered as relating to any matter of *political*, social, or other concern to the community[.]" (internal quotes omitted) (emphasis added)); *Coomer v. Salem Media of Colorado, Inc.*, 2025 COA 2, ¶ 23 (finding statements related to rigging the 2016 election, which also reference Dominion, "involve[d] a matter of public concern[.]") (hereinafter "*Salem Media*").
[225] *See Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4, ¶¶ 22-24.

true."[226]  The statement must also be "'likely to cause reasonable people to think "significantly less favorably" about the plaintiff' than if they knew the whole truth."[227]

In *US Dominion, Inc. v. Fox News Network, LLC*, the Court closely examined the falsity of Fox's statements relating to Dominion's role in the Election.[228]  The Court granted summary judgment in favor of Dominion on the element of falsity for four categories of statements: the "election fraud lie," "algorithm lie," "Venezuela lie," and the "kickback lie."[229]  The Court held that the evidence, as developed in that litigation, demonstrated that none of the statements relating to Dominion about the 2020 election were true.[230]

Dominion argues that since *Fox*, "Newsmax has developed *zero* evidence to dispute falsity."[231]

While the instant Statements are similar in topic to those examined in *Fox*, the Statements are not the same.  As such, the Court must examine the falsity of each Statement.

### 1.  The "Election Fraud Lie"

Dominion asserts that all nineteen Statements contain the "election fraud lie."  Dominion provides the following to argue that there is no genuine issue of material fact as to falsity for the "election fraud lie": (i) Dominion's use of state and federal certification and testing as required by the Cybersecurity and Infrastructure Security Agency;[232] (ii) Dominion's use of "pre-election logic and accuracy" testing in "contested swing-state jurisdictions that used Dominion voting machines," which provides "additional assurances of accuracy, and is often required by state

---

[226] *Id.* (citations omitted).
[227] *Fry v. Lee*, 2013 COA 100, ¶ 50.
[228] *See US Dominion, Inc.*, 293 A.3d at 1035.
[229] *Id.* at 1039.
[230] *Id.* (emphasis in original).
[231] Pl. Mot. at 5 (emphasis supplied).
[232] *Id.* at 31 (Pl. Mot., Exs. 22, 47).

law;"[233] (iii) hand counts, state audits, and recounts of paper ballots "for each vote cast in the contested swing-state jurisdictions;"[234] (iv) public evidence published by reputable sources like the Cybersecurity & Infrastructure Security Agency, the National Association of State Election Directors, and the National Association of Secretaries of State;[235] (v) U.S. EAC Commissioner, Benjamin Hovland's, sworn declaration that there was "no evidence Dominion voting systems deleted, lost, changed, or compromised votes in the 2020 Election;"[236] (vi) Dominion's "source code" showing no evidence of "any mechanism or functionality for switching votes, deleting votes, or manufacturing additional fraudulent votes;"[237] and (vii) Dominion's "contemporaneous and sworn statements," including the Fact Sheets posted on its website and provided to Newsmax.[238]

In its Opposition, Newsmax only specifically addresses two Statements concerning the "election fraud lie"—Statements E and Q.

Regarding Statement E, Newsmax argues that Dominion "does not attempt to show" the falsity of Childers's comment that Dominion was sitting on the "board of the Department of Homeland Security, Cybersecurity and Infrastructure Agency."[239] "Public records show that Dominion did serve on the 'Election Infrastructure Subsector Government Coordinating Council' within the Department of Homeland Security's Cybersecurity and Infrastructure Agency. Even if Childers erred in identifying the precise entity—which Dominion has not shown—that would not make her statement materially false."[240]

---

[233] *Id.* at 32.
[234] *Id.*
[235] *Id.* at 38.
[236] *Id.* (Pl. Mot., Ex. 47).
[237] *Id.* at 39 (Pl. Mot., Ex. 57).
[238] *Id.* at 40.
[239] Def. Opp'n at 26.
[240] *Id.*

For Statement Q, Newsmax argues that "[e]ven if the 'sting' of Morris's comment was that Dominion's machines are vulnerable to hacking, Dominion does not and cannot prove that false...."[241]

### 2. The "Algorithm Lie"

Dominion asserts that fifteen Statements contain the "algorithm lie." In addition to the evidence offered above for the "election lie," Dominion also provides the following to argue that there is no genuine issue of material fact as to falsity for the "algorithm lie": (i) "basic knowledge about the U.S. electoral system and process makes clear that the claimed forms of vote manipulation, including external control by Dominion, are not feasible;"[242] (ii) Mr. Poulos' "sworn testimony before the Michigan Senate Oversight Committee in December 2020," stating, "No votes are sent overseas. Let me be clear[] [b]allots aren't sent anywhere, not overseas, not over state lines, and not even over county lines...[a]ll the votes are counted by local bipartisan US election officials in the United States;"[243] and (iii) when Mr. Ruddy was asked if he "believe[d] that the machines, the Dominion machines, flipped votes in the 2020 election," Mr. Ruddy stated, "I don't believe it because there's been no evidence that has come out since this period to show that that happened."[244]

### 3. The "Venezuela Lie"

Dominion asserts that eleven Statements contain the "Venezuela lie." Dominion highlights that in *Fox*, the Court held "information ... readily available to the public" shows that

---

[241] *Id.* at 32.
[242] Pl. Mot. at 45.
[243] *Id.* at 45-46 (Pl. Mot., Ex. 22).
[244] *Id.* at 46 (Pl. Mot., Ex. 84).

the "allegations of Dominion being owned by a company founded in Venezuela to rig elections for Hugo Chavez is false."[245]

Additionally, Dominion provides testimony from Mr. Ruddy in which he allegedly acknowledged the falsity of these Statements:

> Newsmax's CEO, Chris Ruddy, also admitted in binding corporate representative testimony: (1) that "it was inaccurate" to say "that Dominion is owned by Smartmatic," (2) that it was "inaccurate" to say that Dominion "[w]as invented by people working for Hugo Chavez, the Venezuela dictator," (3) that Dominion "was not founded in Venezuela and not founded by people that were in line with Chavez," and (4) that "the statement 'Dominion is owned by a company founded in Venezuela to rig elections for the dictator Hugo Chavez'" is "a false – it's a false statement…."[246]

### 4. The "Kickback Lie"

To prove the falsity of the "kickback lie" in Statement L, Dominion offers Mr. Poulos' sworn testimony stating that Dominion did not "pay kickback[s] to government officials who used its machines in the 2020 presidential election."[247]

Dominion also maintains that "public elections officials in Pennsylvania, Georgia, and Arizona … similarly confirmed in depositions that they did not receive kickbacks from Dominion and had no reason to believe Dominion paid kickbacks to any government official."[248]

### 5. The "Dallas Lie"

To prove the falsity of the "Dallas lie" in Statement F, Dominion maintains that Mr. Poulos "confirmed that Dominion machines and software were not used for any election held in Dallas in 2018."[249]

---

[245] *Id.* at 48 (citing *US Dominion, Inc.*, 293 A.3d at 1038).
[246] *Id.* at 48-49 (Pl. Mot., Ex. 84 at 112:6-8, 98:7-11, 183:8-10, 184:24-185:6).
[247] *Id*. at 51 (Pl. Mot., Ex. 26 at 895:19-22).
[248] *Id.* (Pl. Mot., Ex. 45).
[249] *Id.* at 53 (Pl. Mot., Ex. 22).

Dominion also insists that Newsmax admitted that Dominion did not operate in Texas: "[Mr. Ruddy] testified: 'that's true, that [Dominion machines] … weren't used in Dallas, Texas.'"[250]

In its Opposition, Newsmax argues:

[T]he gist or "sting" of Byrne's comments was not that Dominion's machines were used in Dallas but that they are vulnerable to hacking. Dominion does not contend that is false, and it has therefore failed to prove material falsity. Nor could it. Dominion itself, as well as third parties, have identified serious vulnerabilities in Dominion's machines.[251]

The Court finds that no genuine issue of material fact exists as to falsity for any Statement. While the Court must view the record in the light most favorable to Newsmax, the record does not show a genuine issue of material fact as to falsity for any Statement. Dominion presents clear and convincing evidence showing: (i) the substance or gist of each Statement is inaccurate; and (ii) the falsehoods asserted in the Statements are material because they would likely cause reasonable viewers to think significantly less favorably about Dominion than if the viewers knew the truth.

In addition to Dominion's proffered evidence, the Court notes that Newsmax acknowledged the falsity of the "election fraud lie," the "algorithm lie," and the "Venezuela lie" in the Clarification posted on its website on December 19, 2020:

No evidence has been offered that Dominion or Smartmatic used software or reprogrammed software that manipulated votes in the 2020 election.

…

No evidence has been offered that Dominion or Smartmatic used software or reprogrammed software that manipulated votes in the 2020 election.

…

---

[250] *Id.* (Pl. Mot., Ex. 84 at 132:6-14).
[251] Def. Opp'n at 27-28.

Smartmatic is a U.S. company and not owned by the Venezuelan government, Hugo Chavez or any foreign official or entity.[252]

Newsmax dedicates little of its argument to the element of falsity, primarily discussing it in its actual malice arguments. Accordingly, Newsmax fails to meet its rebuttal burden of showing that an issue of material fact exists as to falsity.

Therefore, the Court **GRANTS** summary judgment in Dominion's favor regarding falsity.

## C. DOMINION IS ENTITLED TO SUMMARY JUDGMENT ON THE ELEMENT OF PUBLICATION FOR STATEMENTS B THROUGH S, BUT NOT STATEMENT A

A statement is "published" when it is communicated orally or in writing and is understood by some person other than the plaintiff.[253] A statement may be considered published by the person who "originally published the statement" and by those who "repeat or otherwise republish the statement."[254]

Colorado statute codifies the publication element of a defamation claim, providing in relevant part: "No action for libel or slander may be brought or maintained unless the party charged with such defamation has published, either orally or in writing, the defamatory statement to a person other than the person making the allegation of libel or slander."[255]

Where, as here, the defamatory statement involves a matter of public concern, the plaintiff must show: (i) that the publication "concerned the plaintiff;"[256] and (ii) that the defendant "published or caused to be published" the defamatory statement.[257]

---

[252] *See* Def. Mot., Ex. 131, Newsmax Clarification.
[253] Colo. Jury Instr., Civ. 22:7 (2025).
[254] *Id.*
[255] COLO. REV. STAT. § 13-25-125.5.
[256] *Gordon*, 99 P.3d at 80.
[257] *Wilson v. Meyer*, 126 P.3d 276, 281 (Colo. App. 2005) (citing Colo. Jury Instr., Civ. 22:2 (2000)). The most recently updated version of Colo. Jury Instr., Civ. 22:2 (2025) contains the same language.

First, the Court finds that there is no genuine issue of material fact as to whether the Statements "concerned" Dominion. Each Statement refers to Dominion by name.

Second, the Court finds that Newsmax published Statements B through S, but a genuine issue of material fact exists as to whether Newsmax published Statement A.

### 1. A Genuine Issue of Material Fact Exists as to Whether Newsmax Published Statement A

Dominion asserts that Newsmax published Statement A, a Twitter post by Ms. Robinson, because "Newsmax both could and did exercise control over [Ms.] Robinson's social media posts, but chose to do so selectively, only when it deemed it in its own interest to do so."[258] Dominion contends that Ms. Robinson's contract with Newsmax "both contemplates pre-approval of her social media posts, … and requires [Ms.] Robinson to indemnify the company for the November 10 [2020] tweet, if it was not pre-approved."[259]

Dominion claims that in November 2020, Mr. Kanofsky "urged [Ms.] Robinson to moderate her Twitter posts about Dominion."[260] Dominion also asserts that Mr. Jacobson "often directed Newsmax hosts to take down tweets that the company disapproved of."[261] Dominion argues that Newsmax "chose not to exercise its control—both contractual and practical—over [Ms.] Robinson's social media posts in this instance, either before or after she posted," and quoted Ms. Robinsons testimony "confirming Newsmax neither directed her to take down the tweet nor reprimanded her for spreading the unfounded lies about Dominion."[262]

Newsmax argues that the Twitter post was not published by Newsmax, but rather by Ms. Robinson "on her personal account that she operated on her own while serving as a Newsmax

---

[258] *See id.* at 56.
[259] *Id.* (Pl. Mot., Ex. 222 (referencing §§ 1(c), 10(a), 10(a), 11(a), 13(b), 16)).
[260] *Id.* (Pl. Mot., Ex. 77).
[261] *Id.* (Pl. Mot., Ex. 257).
[262] *Id.* at 56-57 (Pl. Mot., Ex. 89 at 189:11-16).

correspondent and continues to operate after leaving Newsmax."[263]  Newsmax also contends that Ms. Robinson's independent contractor agreement with Newsmax provided that Ms. Robinson's social media "shall remain personal property" of Ms. Robinson, and that she retained "the right to engage in personal social media activities to express [her] thoughts or ideas."[264]

The Court finds that there is a genuine issue of material fact as to whether Newsmax published Statement A.  Because reasonable jurors could differ on whether Newsmax published Statement A, there exists a genuine issue of material fact.  While Dominion meets its initial burden, Newsmax offers enough support for its position that Newsmax did not publish, or cause to be published, the Twitter post.  Accordingly, Dominion fails to meet its burden of showing, by clear and convincing evidence, that there is no genuine issue of material fact as to the element of publication for Statement A.

Therefore, the Court **DENIES** summary judgment on the issue of publication as it relates to Statement A.

### 2. *Newsmax Published Statements B through S*

Dominion argues that Newsmax "directly broadcast eighteen out of the nineteen accused statements," Statements B through S, "which were also republished to Newsmax's website, YouTube channel, Facebook account, and Twitter account."[265]

Newsmax contends that Dominion cannot prove that Newsmax Media, Inc. published any Statement because "Newsmax Media, Inc., does not broadcast Newsmax TV; Newsmax TV is owned and operated by Newsmax Broadcasting, LLC. … Newsmax Media, Inc. alerted Dominion of this fact on the very first page of its answer filed in **August 2022**."[266]

---

[263] *Id.* at 78.
[264] Def. Opp'n at 21, 65.
[265] Pl. Mot. at 55.
[266] Def. Mot. at 77-78 (emphasis supplied).

Newsmax also asserts that "Newsmax's daily programming is developed by its hosts and production teams, not its management."[267] Newsmax maintains that its executives—Messrs. Ruddy, Jacobson, and Kanofsky—"viewed only a small fraction of Newsmax's programming during this time period; much less did they participate directly in the day-to-day production of Newsmax's programming."[268]

Newsmax further argues that the production for "some of the programs, especially the evening opinion shows, was the responsibility of independent contractors" like Messrs. Salcedo, Stinchfield, and Kelly.[269] Newsmax maintains that "[Mr.] Ruddy was not the one making the final decisions over what aired in particular shows or approving others' decisions. … The closest [Mr.] Ruddy came to getting involved in the details was sending 'proposed topics and questions,' which were sometimes used, and sometimes not."[270]

In its Opposition, Dominion disputes Newsmax's argument that Newsmax Media, Inc. is not a proper defendant, stating:

> Newsmax Media has repeatedly admitted in this litigation, including to this Court, that it "operates a television news channel." … ("Newsmax [defined as 'Defendant Newsmax Media, Inc.'] *operates a television news channel*, the news website Newsmax.com, news mobile applications for smartphones, various Newsmax social media accounts, and a YouTube page.") … ("This coverage was broadcast across various *Newsmax*-owned and licensed programs."). Chris Ruddy himself, in a sworn affidavit, confirmed that "Newsmax"—again, defined only as defendant "Newsmax Media, Inc."—"*operates a television news channel* that broadcasts nationwide," and described the television broadcasts at issue in this case as "[p]rograms owned by Newsmax." And in every discovery response in this case, Newsmax did not distinguish between (and in fact expressly conflated) Newsmax Media and Newsmax Broadcasting.[271]

---

[267] Def. Opp'n at 14.
[268] *Id.* at 15.
[269] *Id.*
[270] *Id.* at 16.
[271] Pl. Opp'n at 4 (Pl. Mot., Ex. 245) (emphasis supplied).

Dominion also rejects Newsmax's argument that its executives did not participate in the publication of the Statements, asserting that the argument is "wrong for multiple … reasons:"

> For one, Newsmax ignores that in Colorado … liability attaches to all who participate in a defamatory publication, and there is no genuine dispute that Newsmax Media "participated" in each publication. For another, each of the employees Newsmax tries to wall off at Newsmax Broadcasting reported up to Ruddy (CEO of Newsmax Media) and acknowledged that Ruddy was their ultimate boss, making them all agents or employees of Newsmax Media for purposes of *respondeat superior*. Finally, Newsmax forgets that Newsmax Media separately incurs publisher liability for republishing and rebroadcasting the accused statements on other Newsmax Media platforms, and also that Newsmax is vicariously liable for the directly sanctioned and controlled actions of its broadcasting division.[272]

In its Reply Brief, Newsmax attaches a new affidavit from Mr. Ruddy asserting that he is the CEO of Newsmax Broadcasting LLC, stating in relevant part: "My involvement in anything related to Newsmax TV is in my capacity as CEO of Newsmax Broadcasting, LLC, not as CEO of Newsmax Media, Inc."[273] Newsmax also insists, "Time and again in this litigation, Newsmax has explained that Newsmax Broadcasting, LLC … not Newsmax Media, Inc. … published the at-issue statements."[274]

Although Newsmax advanced its position that Newsmax is suing the "wrong entity" in a footnote of its Answer, it was not until Newsmax's Motion—two and half years later—that it actively pursued this argument. Thus, Newsmax has consistently represented to the Court that it participated in the Statements' publication. For example, the Court relied on the following assertions in Newsmax's choice of law briefing:[275]

> **Defendant Newsmax Media, Inc. ("Newsmax")** is a small domestic news organization that is incorporated in Florida and has its principal place of business in Boca Raton, FL.[276]

---

[272] *Id.* at 4-5.
[273] *See* Def. Reply Br. at 5.
[274] *Id.* at 3.
[275] *See* Newsmax's Opening Brief on Choice of Law (D.I. No. 417).
[276] *Id.* at 1 (emphasis added).

38

…

**Newsmax operates a television news channel**, the news website Newsmax.com, news mobile applications for smartphones, various Newsmax social media accounts, and a YouTube page.[277]

…

Here, Dominion's principal place of business is in Colorado and **Newsmax's challenged publications were *published* there.**[278]

…

**Newsmax's** at issue material was *published* **in Colorado** and Dominion specifically claims that Newsmax's reporting harmed Dominion's business in Colorado. … Thus, Colorado is the only state both where "the matter complained of was *published*" and where Dominion "had its principal place of business at the time."[279]

…

**Newsmax's CEO, who 'exercised final editorial authority' over *all programs***, was primarily located in Florida during the Relevant Period. … Thus, **Newsmax completed "acts of communication,"** … relevant to this action in Florida….[280]

The Court finds that both Newsmax Media, Inc. and Newsmax Broadcasting, LLC, participated in publishing Statements B through S by broadcasting those Statements to its viewers. Newsmax controls what shows are broadcast on its network, and Newsmax does this through its employees as agents of Newsmax. Thus, regardless of who within Newsmax was responsible for publication, Newsmax published and republished the Statements to its viewers. The Court is not "piercing the corporate veil" and finding that Newsmax Media, Inc. and Newsmax Broadcasting are the same entity; however, throughout this litigation Newsmax has

---

[277] *Id.* at 3 (emphasis added).
[278] *Id.* at 6 (emphasis added).
[279] *Id.* at 15 (emphasis added).
[280] *Id.* at 16 (emphasis added).

blurred the responsibilities of the two entities and represented that one and/or the other was responsible for publishing the Statements.

Dominion meets its burden of showing, by clear and convincing evidence, that there is no genuine issue of material fact as to the element of publication for Statements B through S. Newsmax fails to meet its rebuttal burden of showing that an issue of material fact exists.

Therefore, the Court **GRANTS** summary judgment in favor of Dominion on the element of publication for Statements B through S.

### D. THE COURT WILL NOT GRANT SUMMARY JUDGMENT ON THE ISSUE OF ACTUAL MALICE

A statement is published with actual malice if it is made "with actual knowledge that it was false or with reckless disregard for whether it was true."[281] "It is rare for there to be evidence that the speaker *knew* their statement was false yet published it anyway."[282] Thus, the inquiry "typically turns on" whether the publisher made the statement with "reckless disregard."[283] "Reckless disregard" exists if the publisher "entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity."[284]

"Actual malice can, and often must, be proved by circumstantial evidence."[285] Absent direct evidence of a defendant's mental state, a plaintiff can prove actual malice "by presenting evidence that would permit the *inference* that the defendant acted with actual malice based on all the circumstances."[286] Circumstantial evidence of actual malice may take many forms, including: (i) "a reporter's failure to pursue the most obvious available sources of possible

---

[281] *Lawson*, ¶ 18.
[282] *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 37 (emphasis in original).
[283] *Id.*
[284] *Id.* ¶ 38 (quoting *Fry*, ¶ 21).
[285] *Coomer*, ¶ 149.
[286] *Id.* ¶ 151 (emphasis in original) (internal citations omitted).

corroboration or refutation;"[287] (ii) "inconsistencies in the source's account;"[288] (iii) obvious reasons to doubt the veracity or reliability of the source;[289] (iv) the "inherent improbability of the claim;"[290] (v) financial motive to lie about the plaintiff;[291] (vi) a departure from journalistic standards;[292] and (vii) "other credible information contradicting the information."[293]

Failure to investigate or mere negligence on the part of the publisher are "constitutionally insufficient to show the recklessness that is required for a finding of actual malice."[294]  Also, a speaker's "'failure to corroborate information received from [an otherwise] reliable source'— which later turns out to be incorrect—does not establish actual malice."[295]

Moreover, a plaintiff cannot show actual malice in the abstract.  Actual malice must be "brought home to the persons in the [] organization having responsibility for the publication."[296]

### 1. Dominion's Motion

#### i. Newsmax executives—Messrs. Ruddy, Jacobson, and Kanofsky—had actual malice.

##### a. Mr. Ruddy had actual malice.

Dominion asserts that "[Mr.] Ruddy *is* Newsmax"—he is "founder, CEO, controlling shareholder, and—in his own words in a declaration filed in this litigation—the 'chief editorial officer' and 'ultimate authority editorially' of Newsmax."[297]  Accordingly, Dominion contends that Mr. Ruddy's knowledge or reckless disregard of the truth is alone sufficient to prove

---

[287] *Id.* ¶ 150 (quoting *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981)).
[288] *Id.*
[289] *See id.*; *see also St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).
[290] *See id.*
[291] *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667-68 (1989).
[292] *See id.*
[293] *Coomer*, ¶ 150.
[294] *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).
[295] *Creekside Endodontics, LLC*, ¶ 38.
[296] *Sullivan*, 376 U.S. at 287.
[297] Pl. Mot. at 1, 80.

Newsmax's actual malice.[298]  Dominion argues that there is "no material dispute of fact that Mr. Ruddy knew or recklessly disregarded the truth about the Dominion lies."[299]

As to "knowledge," Dominion offers that Mr. Ruddy testified that he "never believed" any of the assertions about Dominion: "It was my view **and the network's view**."[300]  Dominion also provides that "[Mr.] Ruddy explained in a December 7, 2020, email to the New York Times: he believed '**no massive fraud, no conspiracy**.'"[301]  In addition, Dominion asserts that Mr. Ruddy's "contemporaneous communications showed he knew the allegations were not just false, but crazy, as he privately told friends and colleagues that having [Ms. Powell] on was 'like the twilight zone,' that she was 'nuts' and 'sounded crazed,' and that '[y]ou can't make this shit up.'"[302]

As to "reckless disregard," Dominion argues that Mr. Ruddy's admissions under oath "leave no doubt" that Mr. Ruddy "entertain[ed] serious doubts as to the truth of the statement or act[ed] with a high degree of awareness of its probable falsity."[303]  Dominion states:

> When asked whether he "**had serious doubts that there was a criminal conspiracy involving voting machines rigging the election**," [Mr.] Ruddy said: "**yes**," and "**I had serious doubts is a fair answer**." … He explained: "**that's why I put out the memo right away, like it didn't seem to me that -- that there was -- there was evidence of it initially and that -- that we should be very careful about reporting it, covering it.**" … His "serious doubts" thus arose no later than when he put out the Editorial Position memo on November 12, [2020,] before every accused broadcast and only two days after the accused tweet.[304]

---

[298] *See id.* at 81.
[299] *Id.* at 81.
[300] *Id.* (Pl. Mot., Ex. 90 at 136:18-138:2) (emphasis supplied).
[301] *Id.* (Pl. Mot., Ex. 246) (emphasis supplied).
[302] *Id.*
[303] *Id.* (quoting *Coomer*, ¶ 147).
[304] *Id.* at 81-82 (Pl. Mot., Ex. 90 at 151:16-152:14) (emphasis supplied).

### b. Mr. Jacobson had actual malice.

Dominion asserts that Mr. Jacobson's actual malice is relevant because Mr. Jacobson was and remains Newsmax's "senior vice president for programming" and Chief Content Officer; thus, Mr. Jacobson had responsibility for "all of the broadcasts underneath [Ruddy]," and that "[a]part from bookers, everyone on the programming side of Newsmax reported to [Mr.] Jacobson."[305] Dominion argues that Mr. Jacobson "knew the statements about Dominion were false, or at least recklessly disregarded the truth, all along."[306]

Dominion contends that before Mr. Ruddy circulated the Editorial Position email on November 12, 2020, "[Mr.] Jacobson had drafted his own version, stating that 'Newsmax is not suggesting there has been a conspiracy and *we do not have proof of voter fraud/election fraud. When we interview guests we need to be very careful to allow them to share their perspective but should at all time contextualize as alleged, potential etc.*'"[307]

### c. Mr. Kanofsky had actual malice.

Dominion argues that Mr. Kanofsky's actual malice is relevant because although he was not considered an executive of Newsmax during the period surrounding the Election, Mr. Kanofsky "led Newsmax's network-wide daily morning editorial planning meeting. … He also directly managed Newsmax's reporters, … including, among other people, Emerald Robinson."[308]

Dominion asserts that Mr. Kanofsky's communications "make clear that he did not ever believe the lies about Dominion."[309] Dominion provides two examples: (i) on November 6,

---

[305] *Id.* at 82.
[306] *Id.* at 83.
[307] *Id.* (Pl. Mot., Ex. 249) (emphasis supplied).
[308] *Id.* at 84 (Pl. Mot., Exs. 77, 85).
[309] *Id.*

43

2020, Mr. Kanofsky wrote to Mr. Ruddy and Mr. Jacobson "urging them to display race calls and the national electoral vote map on their website to 'legitimize' the race calls;"[310] and (ii) on November 7, 2020, "in response to a viewer email noting that Newsmax was 'out of step with reality' when it came to accepting election results, and that there was 'no evidence' of election fraud, Mr. Kanofsky wrote to Jacobson: "*this is exactly what I am worried about*."[311]

Dominion maintains that "[Mr.] Kanofsky was (understandably) frustrated with the network's insistence on continuing to broadcast the lies, writing to [Mr.] Jacobson: '*Simply giving them a microphone to spew more anti-election rhetoric and advance their claims without being properly equipped to question the legitimacy or factual accuracy of their assertions may be fun, but it's terrible journalism*.'"[312]

### ii. "At least one individual within Newsmax who knew or recklessly disregarded the truth has or shares responsibility for the publication of each Statement."[313]

In its Motion, Dominion identifies by name Newsmax personnel allegedly responsible for each Statement.[314] For all Statements, Dominion asserts that Messrs. Ruddy, Jacobson, and Kanofsky are responsible Newsmax personnel.[315] Most Statements include the producers and bookers of the respective Newsmax shows.[316] Some Statements include the hosts and guests.[317]

For purposes of this Decision, it is sufficient to state that Dominion argues that certain individuals within Newsmax either knew the falsity of the accusations about Dominion or

---

[310] *Id.* (Pl. Mot., Ex. 250).
[311] *Id.* (Pl. Mot., Ex. 168) (emphasis supplied).
[312] *Id.* (Pl. Mot., Ex. 151) (emphasis supplied, but underline provided in original).
[313] *Id.*, n.7: "The lists of 'Responsible Newsmax Personnel' for each accused statement are non-exclusive."
[314] *See generally* Pl. Mot. at 85-124; Pl. Opp'n at 71-107.
[315] *See id.*
[316] *See id.*
[317] *See id.*

recklessly disregarded the truth.[318] Dominion provides internal communications and deposition testimony to show the actual malice of these individuals.[319]

### iii. Circumstantial evidence shows actual malice.

#### a. Newsmax had a financial motive.[320]

Dominion argues that "Fox's decision to call the election for President Biden provided Newsmax with a rare opportunity. Personnel within Newsmax widely recognized as much."[321] Dominion provides the following communications between Newsmax personnel:

- On November 7, 2020, Mr. Jacobson texted [Ms.] Parker: "We are not calling it. *It is a huge opportunity for us* as by tomorrow we will be the only outlet that will not have called it so millions of vireos [*sic*] will be looking. Viewers. For an outlet."[322]

- On November 7, 2020, Mr. Jacobson texted Mr. Burke: "Jerry. I think we need to reinforce our surprise that fox called this election. *It's the big opportunity*."[323]

- On November 8, 2020, Mr. Burke sent an email to other Newsmax producers: "*We know viewers are leaving other channels in droves, and we welcome them*."[324]

- On November 12, 2020, Mr. Ruddy forwarded Mr. Kanofsky a link to an article titled "Newsmax TV: Trump voters are flocking to a channel that claims Biden is not president-elect" with the note: "this is great."[325]

- On November 13, 2020, Mr. Burke texted the production staff of *American Agenda* an image of a Fox blimp crashing with the caption: "The crashing of #FoxNews. More and more people are moving to #Newsmax."[326]

---

[318] *See id.*
[319] *See id.*; *see also* Background Sections E and F, *supra*, and Discussion Section D(1)(iii)(a)-(c), *infra*, to view relevant internal communications and deposition testimony.
[320] *See id.* at 65.
[321] *Id.*
[322] *Id.* (Pl. Mot., Ex. 224) (emphasis supplied).
[323] *Id.* (Pl. Mot., Ex. 225) (emphasis supplied).
[324] *Id.* (Pl. Mot., Ex. 149) (emphasis supplied).
[325] *Id.* (Pl. Mot., Ex. 214).
[326] *Id.* at 65-66 (Pl. Mot., Ex. 228).

Dominion contends that there was a "direct correlation between Newsmax embracing the Dominion lies—at first slowly, and then extensively—and Newsmax's ratings climbing higher. Newsmax's ratings climbed throughout the defamatory period, with Newsmax's ratings for the November 16-19 period … making Newsmax the fourth-most-watched cable channel during that period."[327]

### b. Newsmax's allegations were "inherently improbable."[328]

Dominion argues that "Newsmax knew the statements it aired about Dominion were false because—very early on, and before the first defamatory statements—the public record made abundantly clear that Dominion did not steal the election."[329]

Dominion also asserts that Newsmax received Dominion's Fact Sheets, which provided Newsmax with "public evidence demonstrating those charges were false (and inherently improbable). These communications started on November 12, and continued through the following weeks and months. Mr. Ruddy himself testified that he likely reviewed Dominion's website during this period."[330]

Further, Dominion contends that "Newsmax's own internal guidance, drafted by [Mr.] Kanofsky and circulated to all Newsmax hosts and producers, demonstrated why the claims were inherently implausible."[331]

Finally, Dominion offers that Mr. Ruddy testified that he acknowledged the implausibility of the claims: "'*[T]he idea that he was gonna switch millions of votes, it does seem over-the-top* ….' … He further admitted that even at the time, the claim that Dominion

---

[327] *Id.* at 67-68 (Pl. Mot., Ex. 185).
[328] *Id.* at 68.
[329] *Id.*
[330] *Id.* at 69 (Pl. Mot., Ex. 90 at 123:23- 124:3).
[331] *Id.*

46

flipped millions of votes '*seemed to be out there*' and that he therefore '*had serious doubts that that could ever be true.*'"[332]  Dominion also provides the following transcript from Mr. Ruddy's testimony:

> Q: … [Y]ou do agree that the kraken allegations about massive vote rigging algorithms and conspiracies to flip votes and throw the election, that that is out there, that is UFO and martians on Mars type of stuff; right?
> …
> A: *The kraken stuff is definitely out in the twilight zone.*[333]

### c. "The sources Newsmax relied on were unreliable, and Newsmax did nothing to vet them."[334]

Dominion argues that Newsmax personnel "broadly recognized that the purported 'sources' for the claims about Dominion were unreliable and unqualified to speak on matters pertaining to election administration, election technology, or fraud. … Newsmax personnel knew these proponents of the Dominion lies were not to be believed."[335]

Regarding Ms. Powell's credibility, Dominion offers various private communications (as detailed above in Sections E. and F.) where Mr. Ruddy "repeatedly recognized [Ms.] Powell's unreliability, even as he kept pushing for her to appear on Newsmax's broadcasts."[336]  In addition, Dominion provides the following deposition testimony of Mr. Ruddy:

- When discussing how Ms. Powell never brought forth any evidence, Mr. Ruddy said: "*obviously there is something wrong with her, I don't know what it is*."[337]

- Mr. Ruddy said Ms. Powell's "Kraken" language was "*really bizarre*" and "*made her lose credibility in [his] eyes*."[338]

- Mr. Ruddy testified that Ms. Powell's anonymous affidavits "*raises a red flag for me*" and he "*did not personally find them credible*."[339]

---

[332] *Id.* at 70 (Pl. Mot., Ex. 90 at 245:24-246:16, 250:7-18).
[333] *Id.* at 70 (Pl. Mot., Ex. 90 at 291:9-16) (emphasis supplied).
[334] *Id.* at 71.
[335] *Id.*
[336] *Id.* at 72.
[337] *Id.* at 73 (Pl. Mot., Ex. 90 at 167:18-168:17) (emphasis supplied).
[338] *Id.* (Pl. Mot., Ex. 90 at 242:17-243:12) (emphasis supplied).
[339] *Id.* (Pl. Mot., Ex. 90 at 249:13-250:6) (emphasis supplied).

Dominion also contends that other Newsmax personnel "echoed the same sentiments" about Ms. Powell, offering the following communications:

- On November 8, 2020, Mr. Gorka texted Mr. Harbaugh: "[T]hat's not her background … *[i]f she had evidence where is it…. Her success on Flynn was backed up by real evidence*."[340]

- On November 18, 2020, Mr. Gorka texted: "*Trouble is [Ms. Powell's] out of her depth on national security issues…. Venezuela. Not her lane*."[341]

- On December 4, 2020, Mr. Kanofsky sent an email to Mr. Sargeant: Ms. Powell "has been routinely accused of advancing especially controversial claims including Chinese Money, *Hugo Chavez, and a litany of accusations regarding Dominion which have been batted down or (arguably) repudiated. When is she going to step forward with specific and unambiguous evidence which stands up to the scrutiny it will be afforded in the court system?* Or— is her contention that she's already done so? *She's simply got to answer for this*."[342]

Regarding Mr. Giuliani, Dominion provides the following to show that Newsmax knew that Mr. Giuliani was not credible:

- On October 15, 2020, after an interview with Mr. Giuliani, Mr. Kraisman texted Mr. Sellers: "[H]ard to keep that one on track. He rambles." Mr. Sellers responded: "*He's looney now*."[343]

- On November 18, 2020, Mr. Plotnick texted Ms. Hesse: "*And Rudy? I dunno why [R]uddy wants him. I think he's losing his mind. But we should do what our boss wants*."[344]

- On November 19, 2020, during the Press Conference, Mr. Halperin wrote to Mr. Bachman: "*If there is justice in heaven, Rudy will be indicted by his old office before sundown.*"[345]

---

[340] *Id.* (Pl. Mot., Ex. 206) (emphasis supplied).
[341] *Id.* (Pl. Mot., Ex. 207) (emphasis supplied).
[342] *Id*. (Pl. Mot., Ex. 309) (emphasis supplied).
[343] *Id*. at 74 (Pl. Mot., Ex. 237) (emphasis supplied).
[344] *Id*. (Pl. Mot., Ex. 308) (emphasis supplied).
[345] *Id*. (Pl. Mot., Ex. 106) (emphasis supplied).

- Mr. Messer testified that he had conversations with Mr. Jacobson and "others at the network" in which he "***urged caution with having [Rudy Giuliani] on***" air.[346]

For Mr. Morris, Dominion argues that he "did nothing to investigate his claims about Dominion, and he testified that, had anyone from Newsmax asked him whether he'd done any research, he would have said no."[347]  Dominion also provides the following to show that Newsmax "knew [Mr.] Morris had a proclivity to promote conspiracy theories and lies":[348]

- On November 13, 2020, Mr. Wasser emailed Mr. Jacobson stating "***[t]here is not a shred of evidence to support that allegation from Dick***" regarding election "***fraud***."  Yet Newsmax continued to have Mr. Morris on to discuss his allegations even after that email.[349]

- On November 13, 2020, Mr. Sellers texted Mr. Jacobson about an appearance Mr. Morris had done regarding election fraud allegations, stating, "I think it's a good idea not to have Dick Morris on my show anymore…. This is the second time I've had a run in with him—both times where I was trying to maintain the integrity of our network."[350]

- Mr. Plotnick wrote to Mr. Jacobson that Mr. Morris "***spreads conspiracy theories and rumors***" and "is ***the epitome of fake news***."[351]

- Mr. Ruddy testified of Mr. Morris: "***I do think that he doesn't verify things sometimes and he hears something and he doesn't check it carefully***."[352]

For Mr. Lindell, Dominion contends that Newsmax personnel knew that he was "unqualified and uncredible on issues of voter fraud," yet Newsmax "nonetheless invited [Mr.] Lindell on repeatedly to discuss voting machines."[353]  Dominion offers the following:

- Mr. Burke testified that Mr. Lindell's work did not qualify him to be a credible source on whether Dominion machines stole the 2020 election.[354]

---

[346] *Id*. (Pl. Mot., Ex. 81 at 102:3-102:8) (emphasis supplied).
[347] *Id.* at 75 (Pl. Mot., Ex. 82 at 29:21-30:6; 30:7-32:14).
[348] *Id.*
[349] *Id.* (Pl. Mot., Ex. 240) (emphasis supplied).
[350] *Id.* (Pl. Mot., Ex. 241).
[351] *Id.* (Pl. Mot., Ex. 216) (emphasis supplied).
[352] *Id.* (Pl. Mot., Ex. 90 at 403:24-404:10) (emphasis supplied).
[353] *Id.* at 76.
[354] *Id.* (Pl. Mot., Ex. 63 at 263:25-264:13).

- "[Mr.] Ruddy implicitly acknowledged that [Mr.] Lindell was patently unqualified to be a credible source on voting machines by testifying as corporate representative that he expected Newsmax viewers to '***realize[] when he comes on-air, that he's not an election expert on voting machines but an expert on pillows***.'"[355]

- In January 2021, Mr. Plotnick texted Mr. Jacobson: "[Mr.] Lindell supposedly calling [Mr. R]uddy soon.  Says he has 'huge news.'"  Mr. Jacobson responded: "***[H]e's probably gonna tell him that the spaceship's finally coming back to take [h]im away***."[356]

For Mr. Byrne, Dominion asserts that he "was known, even among President Trump's public supporters, as an uncredible source."[357]  On November 22, 2020, "former Trump advisor and election denier Steve Bannon texted [Mr.] Ruddy…: '***Dude: Patrick Byrne is a pathological liar and psychopath.  Accused Hilary Clinton of taking an $18 million cash bribe from the FBI and Obama that he delivered.  And he is on your channel.  Clown Show.***'"[358]

### d.  "Newsmax departed from journalistic standards."[359]

Dominion contends that Newsmax's departure from journalistic standards involved "an abject failure to fact check the claims or to vet the sources, running across virtually every show. … Newsmax personnel nonetheless widely acknowledged a set of rules that govern their work and profession."[360]

Dominion asserts that Newsmax witnesses (including Mr. Bachman and Ms. Childers) testified that journalistic ethics and standards apply to Newsmax generally, apply to Newsmax hosts specifically, and apply to Newsmax guests specifically.[361]

---

[355] *Id.* (Pl. Mot., Ex. 84 at 172:1-15) (emphasis supplied).
[356] *Id.* (Pl. Mot., Ex. 242) (emphasis supplied).
[357] *Id.*
[358] *Id.* (Pl. Mot., Ex. 243) (emphasis supplied).
[359] *Id.* at 77.
[360] *Id.*
[361] *Id.* (Pl. Mot., Exs. 61, 238, 68, 262).

Dominion further maintains that Newsmax witnesses (including Mr. Ruddy, Mr. Bachman, Mr. Burke, and Ms. Childers) testified that the rules Newsmax should adhere to include: accuracy; making sure not to spread misinformation; completeness; two-source attribution; fact-checking and confirming the accuracy of claims before publishing them; using credible sources; vetting sources; if a guest makes a claim on air, the host will push back and ask for evidence; not making, repeating, or endorsing false claims on air; not "say[ing] that allegations are true when they don't have evidence that they are true;" not "giving air to unsubstantiated, unproven allegations … without demonstrated evidence that stands up to scrutiny from both sides of the story;" and correcting misstatements and falsehoods.[362]

### e. "Newsmax had a stated policy and editorial position of non-endorsement that was communicated to all relevant people."

Dominion argues that when reporting on Dominion, Newsmax "was quick to abandon *all*" of its principles from its "Ethics and Journalistic Guidelines," which Dominion asserts was "circulated to all Newsmax hosts, and even incorporated by reference in hosts' contracts."[363] Newsmax's Ethics and Journalistic Guidelines states in relevant part:

> We find inaccuracies, carelessness, bias or distortions unacceptable. … We may not always find the truth, or the complete truth, but we will not knowingly introduce false information into material intended for publication or broadcast; … We always strive to identify all sources of our information, shielding them with anonymity only when they insist upon it and when they provide vital information … and when we know the source is knowledgeable and reliable….[364]

Dominion also maintains that "at least from November 12, [2020,] onward, the network's own editorial position, which was set by Mr. Ruddy [] and communicated to all relevant editorial

---
[362] *Id.* at 77-78 (Pl. Mot., Exs. 262, 238, 61, 63, 86, 90, 68, 67, 82, 77).
[363] *Id.* at 79 (Pl. Mot., Ex. 276) (emphasis supplied).
[364] *Id.*

staff, recognized that Newsmax had seen no evidence to substantiate the claims and that they were not sufficiently reliable for Newsmax itself to 'make' those claims."[365]

### 2. Newsmax's Motion

#### i. Dominion does not prove actual malice by clear and convincing evidence.[366]

Newsmax argues that Dominion fails to meet its burden of proving, by clear and convincing evidence, that each Statement was published with actual malice by a responsible Newsmax employee.[367] Newsmax maintains that summary judgment for the publisher is "quite often appropriate because of the difficulty [of] showing actual malice."[368] Newsmax acknowledges that the Court has "expressed reluctance to resolve questions involving 'state of mind' at summary judgment," but requests that the Court "at a minimum narrow the scope of this case by granting judgment on the statements where actual malice cannot be 'brought home' to any Newsmax employee."[369]

Newsmax asserts that Dominion cannot "bring home" actual malice to an individual within Newsmax who was "actually involved" in the publication.[370] According to Newsmax, Messrs. Ruddy, Jacobson, and Kanofsky were not "actually involved" in approving or publishing of any of the Statements, nor were they "routinely involved in the day-to-day details of preparing and producing specific content for Newsmax TV."[371]

Newsmax also contends that "most of those responsible for Newsmax's programming— its hosts, reporters, producers, and so on—are Newsmax employees. But not all of them. … [S]ome of the hosts of Newsmax's personality-driven news-opinion shows are not employees of

---

[365] *Id.* at 80.
[366] *See* Def. Mot. at 41, 47.
[367] *See id.* at 41.
[368] *See id.* (quoting *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1318 (3d Cir. 1994)).
[369] *Id.* at 41-42.
[370] *See id.* at 44-45 (citing *Page v. Oath Inc.*, 270 A.3d 833, 850 (Del. 2022)).
[371] Def. Mot. at 4-5; *see also* Def. Opp'n at 43, 47.

the network, but independent contractors."[372]  Newsmax argues that Dominion cannot rely on the states of mind of independent contractors to prove actual malice because "the law is that non-employees' mental states may not be imputed to a publisher."[373]

### a.  *Howie Carr*

Newsmax argues that Mr. Carr's state of mind may not be imputed to Newsmax because Mr. Carr is not a Newsmax employee, but an "employee of the Howie Carr Radio Network."[374] Newsmax contends that Mr. Carr "comes up with the content" for the show, and "made the decision" himself to have Ms. Powell on the show, "with no involvement by Newsmax."[375] Newsmax claims that it has a licensing agreement to "simulcast" *The Howie Carr Show* on Newsmax, but that the show is produced "without the involvement of Newsmax employees."[376]

### b.  *Heather Childers, Benny Johnson, Greg Kelly, Emerald Robinson, Chris Salcedo, and Grant Stinchfield*

Newsmax argues that Dominion may not rely on the mental states of Ms. Childers, Mr. Johnson, Mr. Kelly, Ms. Robinson, Mr. Salcedo, or Mr. Stinchfield to prove actual malice because they were not Newsmax employees, but independent contractors.[377]

*Ms. Childers*: Newsmax contends that Ms. Childers was not a Newsmax employee because she had "never signed a contract working full-time with [Newsmax]. … She did spots for Newsmax on an as-needed basis and received 'a day rate or an hourly rate.'"[378]

*Mr. Johnson*: Newsmax argues that Mr. Johnson was not a Newsmax employee and had "no direct contact with Newsmax."[379]  Rather, Newsmax maintains that Mr. Johnson "produced

---

[372] Def. Mot. at 48.
[373] *Id.*
[374] *Id.* (Def. Mot., Ex. 166).
[375] *Id.*
[376] *Id.* at 49 (Def. Mot., Ex. 80).
[377] *See id.*
[378] *Id.* at 50 (Def. Mot., Ex. 169).
[379] *Id.*

and hosted [*The Benny Report*] pursuant to an agreement between Newsmax and Benny LLC, which provided that the latter would 'supply…the services' of Mr. Johnson to host a weekly show, 'choose the show topic,' and choose the guests."[380]  Newsmax offers that the agreement provided that "Benny LLC and [Mr.] Johnson are not Newsmax employees 'for any purpose' and 'are and will remain independent contractors.'"[381]

*Mr. Kelly*: Newsmax claims that "[Mr.] Kelly's contract with Newsmax provides that he is an independent contractor and not an employee of the company. … [Mr. Kelly] used a personal email address. … [Mr.] Kelly also took on other work outside of Newsmax, including hosting a daily radio program on WABC."[382]

*Ms. Robinson*: Newsmax contends that Ms. Robinson was an "independent contractor, pursuant to her contract with Newsmax."[383]  Newsmax states that the contract provides: "[Ms. Robinson's] personal social media accounts shall remain personal property of [Ms. Robinson] and [Ms. Robinson] has the right to engage in personal social media activities to express [Ms. Robinson]'s thoughts or ideas" on her own time and using her own social media accounts.[384]

*Mr. Salcedo*: Newsmax asserts that Mr. Salcedo's contract with Newsmax "provided that he was an independent contractor. … [Mr.] Salcedo hosted the *Chris Salcedo Show* from his home studio in Dallas, Texas, using his own equipment. … [Mr.] Salcedo also does not perform work exclusively for Newsmax; among other things, he hosts a radio program … and produces a podcast."[385]

---

[380] *Id.* (Def. Mot., Ex. 81).
[381] *Id.* (Def. Mot., Exs. 81, 205).
[382] *Id.* (Def. Mot., Exs. 82, 181, 129).
[383] *Id.* at 51 (Def. Mot., Ex. 86).
[384] *Id.*
[385] *Id.* (Def. Mot., Exs. 84, 196).

*Mr. Stinchfield*: Newsmax states that Mr. Stinchfield's contract with Newsmax "identified him as an 'independent contractor' and not an 'employee' for any purpose."[386] Newsmax maintains that Mr. Stinchfield hosted the show from his home in Dallas, Texas, using his own equipment.[387]

### c. *Newsmax Guests*

Newsmax argues that Newsmax cannot be liable for "guests' live, on-air claims of which Newsmax employees had no foreknowledge."[388] "Absent knowledge that a guest intended to make a particular claim live on the air, a Newsmax employee could not possibly have entertained serious doubts as to its truth and so bears no fault for its publication."[389] Accordingly, Newsmax asserts that guests' mental states cannot be imputed to Newsmax, including guests Mr. Morris, Mr. diGenova, Mr. Byrne, Ms. Powell, Mr. Ramsland, and Mr. Lindell.[390]

Newsmax asserts that other jurisdictions recognize that media platforms are not liable for live on-air statements of guests.[391] In *Adams v. Frontier Broadcasting Co.*, the Supreme Court of Wyoming found that "a businessman accused of dishonesty by a talk-radio caller could not establish the radio station's actual malice because it had no foreknowledge of the caller's remarks and therefore could not have 'in fact entertained serious doubts with respect to [their] truth.'"[392] In *Brecht v. Fisher Communications, Inc.*, a Washington appellate court found that the "'the lack of opportunity' for the radio station's employees 'to evaluate the [callers' statements] prior to publication, or to form some conclusion as to the truth or falsity of those statements,' precluded the plaintiff 'from making the factual showing necessary to demonstrate

---

[386] *Id.* (Def. Mot., Ex. 83).
[387] *See id.* (Def. Mot., Ex. 199).
[388] Def. Mot. at 45.
[389] *Id.*
[390] *Id.* at 48.
[391] *Id.* at 46.
[392] *Id.* (citing *Adams v. Frontier Broadcasting Co.*, 555 P.2d 556, 564 (Wyo. 1976)).

actual malice.'"[393]  In *Weber v. Woods*, an Illinois appellate court "grant[ed] summary judgment to ABC because the speaker of the at-issue words 'was merely a participant in a television talk show.'"[394]  In *Pacella v. Milford Radio Corporation*, a Massachusetts appellate court "rejected liability in similar circumstances, explaining that it was 'one thing to require a newspaper to check the accuracy of an interview,' but quite 'another matter to hold a TV newsperson responsible for the spontaneous live utterance of an interviewee.'"[395]

### ii.  Dominion cannot prove actual malice respecting the individual statements.

In its Motion and Opposition, Newsmax goes through each Statement and argues that Dominion cannot prove actual malice of the alleged responsible Newsmax personnel.[396] Newsmax also dedicated a significant amount of time of its oral argument reiterating its position.

For purposes of this Decision, it is sufficient to state that Newsmax's argument is that Dominion provides no evidence showing that any Newsmax personnel knew or seriously doubted the truth of the comments made about Dominion.[397]  To the contrary, Newsmax provides the following evidence to show that Newsmax personnel believed the comments made about Dominion:[398] (i) the Whistleblower Affidavit; (ii) the Ramsland Report; (iii) a letter signed by Senators Klobuchar and Warren which named Dominion and expressed concern about "secretive and 'trouble-plagued companies'" that left "voting systems across the country 'prone to security problems;'"[399] (iv) U.S. District Judge Amy Totenberg's decision "expressing grave

---

[393] *Id.* (citing *Brecht v. Fisher Communications, Inc.*, 2011 WL 1120506, at *6 (Wash. Ct. App. Mar. 28, 2011)).
[394] *Id.* (citing *Weber v. Woods*, 334 N.E.2d 857, 863 (Ill. App. 1st Dist. 1975)).
[395] *Id.* at 47 (citing *Pacella v. Milford Radio Corporation*, 462 N.E.2d 355, 360 (1984)).
[396] *See generally* Def. Mot. at 51-76; Def. Opp'n at 65-97.
[397] *Id.*
[398] This list is non-exhaustive and only includes the main sources that Newsmax cites throughout its Motion and Opposition.
[399] Def. Mot. at 54 (Def. Mot., Exs. 88 and 216).

concerns about the security risks of Dominion's voting machines;"[400] and (v) "Texas's refusal to certify Dominion machines."[401]

### 3. *Dominion's Opposition*

#### i. **Newsmax misstates Dominion's burden of proof.**[402]

Dominion opposes Newsmax's position that "Dominion must 'prove' by clear and convincing evidence at summary judgment that Newsmax harbored actual malice…."[403] Rather, Dominion contends that "the standard governing summary judgment is a procedural matter governed by Delaware law,"[404] and in Delaware, the clear and convincing burden does not apply at summary judgment, stating:

> [T]he Court "take[s] the substantive evidentiary standard into consideration" by asking "whether *any rational* finder of fact could find, on the record presented to the Court…on summary judgment viewed in the light most favorable to the non-moving party, that the substantive evidentiary burden had been satisfied." … "The test is *not* whether the…plaintiff will ultimately prevail."[405]

#### ii. **"Executives and producers responsible for the defamatory broadcasts possessed actual malice."[406]**

Dominion argues that "none of Newsmax's arguments about whose state of mind matters for purposes of the actual malice inquiry applies to CEO [Mr.] Ruddy," and that "[Mr.] Ruddy's actual malice alone is sufficient" to grant Dominion's Motion on actual malice.[407] Dominion also offers that in the choice of law proceedings in this case, "[Mr.] Ruddy submitted a sworn affidavit declaring himself 'responsible for the daily operations and management,' 'the chief

---

[400] *Id.* at 64 (Def. Mot., Ex. 111).
[401] *Id.* at 65 (Def. Mot., Ex. 123).
[402] *See* Pl. Opp'n at 31.
[403] *Id.*
[404] *Id.* at n.5 (citing *Kier Constr., Ltd. v. Raytheon Co.*, 2005 WL 628498, *4 n.15 (Del. Ch. Mar. 10, 2005)).
[405] *Id.* at 31 (quoting *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1148-50 (Del. 2002) (emphasis supplied)).
[406] *Id.*
[407] *Id.* at 33-34.

editorial officer,' in charge of 'setting the company's editorial policies and strategies,' 'the ultimate authority editorially within the company,' and the 'exercise[r]' of 'final editorial authority' for all of the accused content."[408]

### iii. "Dominion may rely on Newsmax's on-air talent's actual malice."[409]

Dominion opposes Newsmax's argument that actual malice must be "brought home" to a Newsmax employee, rather than an independent contractor: "Under [*Sullivan*,] actual malice may not be attributed outside *respondeat superior*. … Actual malice may thus be attributed to any Newsmax employee as well as any so-called 'independent contractor' who, notwithstanding their purported contractor status, falls within the bounds of *respondeat superior*."[410]

Dominion argues that "the title ascribed to an individual by their contract does not govern."[411]  Rather, Dominion states that *respondeat superior* exists where the "employer controlled or had the right to control the actions of its purported employee.… The central element in an employer-employee relationship is the right of the employer to control the details of performance of the employee's duties."[412]

*Mr. Salcedo and Mr. Stinchfield*: Dominion argues that the "mere fact that [Mr.] Salcedo and [Mr.] Stinchfield's contracts referred to them as 'contractors' is irrelevant.  Abundant record testimony shows that the two hosts, whose shows were fully produced by Newsmax personnel, reported to [Mr.] Jacobson and [Mr.] Ruddy as regular employees and their job performance was controlled by Newsmax."[413]

---

[408] *Id.* at 34 (Pl. Mot., Ex. 245).
[409] *Id.* at 34.
[410] *Id.* at 35 (quoting *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1303 (D.C. Cir. 1996)).
[411] *Id.* at 36.
[412] *Id.* (quoting *Veintimilla v. Dobyanski*, 975 P.2d 1122, 1123 (Colo. App. 1997)).
[413] *Id.* at 36.

*Mr. Kelly and Ms. Robinson*: Dominion contends that Newsmax incorrectly argues that Mr. Kelly and Ms. Robinson's contracts classify them as independent contractors; rather, each contract "repeatedly describes them as employees. … the term 'contractor' appears nowhere in either employment contract."[414]

*Ms. Childers*: Dominion contends that none of Newsmax's arguments control whether Ms. Childers was an employee or otherwise subject to *respondeat superior*.[415]  Dominion asserts that the following facts show that Ms. Childers was an employee of Newsmax:

> [Ms.] Childers admitted that she "report[ed] to" Elliot Jacobson, … "interacted with … [him] on a daily basis," … and "understood that Christopher Ruddy was the ultimate boss. … She admitted that if Jacobson or Ruddy told her to cover a certain topic, she would, … that it was not her role to determine what topics she should avoid and that instead the executive producer would make that decision, … and that she would have "followed whatever instructions came down through…the executive producer." … What [Ms.] Childers said on air, she admitted, was generally pre-scripted such that she would read from teleprompters.[416]

### iv. Newsmax can be held liable for its guests' statements.

Dominion opposes Newsmax's argument that it cannot be held liable guests' statements and distinguishes the four out-of-jurisdiction cases that Newsmax cites.  Dominion first contends that Newsmax mischaracterizes *Weber*:

> What Newsmax quotes is the court's recitation of **ABC's argument** that a guest cannot be considered an "agent" of the station[.] … But the court did not wholesale adopt ABC's argument, holding only that the plaintiff offered only "'bare allegation[s] of malice'" and that "investigatory failures alone are not sufficient to establish reckless disregard."[417]

Dominion then asserts that *Pacella*, *Adams*, and *Brecht* are not applicable here because all three cases concerned "defamatory statements made by anonymous callers on talk-radio

---

[414] *Id.* at 37 (Def. Mot., Exs. 82, 86).
[415] *See id*. at 40.
[416] *Id.*
[417] *Id.* at 41 (emphasis supplied).

shows, which the court in *Pacella* recognized is a context entirely divorced from a news program: 'the role of a talk-show host differs from that of a reporter or newscaster. His function is not to discover the news but to moderate the public debate.'"[418]

### 4. Newsmax's Opposition

#### i. Dominion fails to prove that a Newsmax employee had actual malice.[419]

Newsmax opposes Dominion's "attempt to pin actual malice" for all the Statements on Newsmax executives Messrs. Ruddy, Jacobson, and Kanofsky.[420] Newsmax maintains that "authority is not participation."[421]

As for Mr. Ruddy, Newsmax asserts that Dominion presents no evidence that Mr. Ruddy was "actually involved" in approving or publishing any of the Statements.[422] "Whatever [Mr.] Ruddy's power, the question is *whether he exercised it* to approve publication of each of the challenged statements, and Dominion presents no evidence that he did."[423] Newsmax also contends that Dominion does not identify any evidence showing that Mr. Ruddy was aware of, or approved, any Statement before it aired.[424] Further, Newsmax maintains that Mr. Ruddy's "serious doubts" language that Dominion relies on does not apply to all the Statements because it "addressed 'any conspiracy theory involving the election,' not any particular claim involving Dominion."[425]

As for Mr. Jacobson and Mr. Kanofsky, Newsmax argues that Dominion does not present any evidence that they participated in the publication of any Statement.[426]

---

[418] *Id.* at 42.
[419] *See id.* at 45.
[420] Def. Opp'n at 43.
[421] *Id.* at 49.
[422] *See id.* at 47.
[423] *Id.*
[424] *See id.*
[425] *Id.* at 49.
[426] *See id.* at 49-50.

### ii. Dominion's reliance on Mr. Ruddy's Editorial Position email is misplaced.[427]

Newsmax asserts that Mr. Ruddy's November 12, 2020, email does not mention Dominion; rather, "the email states that Newsmax 'should not censor allegations made by the President or his lawyers or surrogates' but will instead 'report information and allow Americans to decide,' … which is exactly what Newsmax did."[428]

Newsmax opposes Dominion's reliance on the portion of the email which stated "Newsmax does not have evidence of widespread voter fraud" or "evidence of a voter fraud conspiracy"—Newsmax argues that these "general statements" "could not and did not address the truth or falsity of claims that arose subsequently, which (as Dominion admits, [][]) includes every single broadcast it challenges."[429]

Newsmax also maintains that "Dominion is wrong to assume that Ruddy's email reached all those responsible for publication of the challenged statements."[430] The email lists "28 recipients, … but even a cursory comparison reveals that this list excludes persons Dominion identifies as 'Responsible Newsmax Personnel,'" such as [Mr. Cella], [Mr. diGenova], and [Mr. Morris] …. The list also excludes the guests responsible for most of the statements Dominion challenges."[431]

### iii. Dominion's proffered circumstantial evidence does not prove actual malice.

First, Newsmax argues that "Dominion's story about Newsmax's supposed 'financial motive' to defame Dominion is pure fiction…."[432] Newsmax asserts Dominion misunderstands Newsmax's viewership: "The majority are not Republicans. About 25.8% of Monday-Sunday

---

[427] *See id.* at 50.
[428] *Id.*
[429] *Id.* at 51.
[430] *Id.*
[431] *Id.*
[432] *Id.* at 52.

viewers identify as Democratic, 37.1% Republican, and 37.1% independent/unaffiliated."[433] Accordingly, Newsmax argues that it had "no motive to alienate the 63 percent of its viewers who were not Republicans and its advertisers."[434]  Newsmax also contends that Dominion fails to provide any evidence indicating that any of the "Responsible Newsmax Personnel" shared in any financial motive to defame Dominion.[435]

Second, Newsmax asserts that Dominion's claim that the Statements were "'inherently improbable' is a blatant attempt to wield its falsity evidence against persons who were not aware of it."[436]  Newsmax continues:

> That includes "updates" Dominion posted to its own website and other materials it contends "debunked provably false claims and confirmed there was no evidence of widespread electoral fraud in the 2020 Presidential Election."  If Dominion seeks to rely on these materials to prove that an individual seriously doubted the truth of some claim, then it must prove that individual reviewed them before publishing.[437]

Newsmax also argues that it is not "inherently improbable" for Dominion to "steal the election" because:

> Venezuela's leaders have almost certainly fixed elections, it's far from outlandish to suppose they manipulated voting machines and software to do so, and the supplier of those machines and software could be purchased by a competitor. … Computer systems and software can be and are used for ill as well as good.  The abuse of computer systems through hacking and other unauthorized access is a pervasive fact of modern life.[438]

Further, Newsmax argues that it is not inherently improbable that Dominion was founded in Venezuela: "Electronics giant Huawei was founded in Communist China, and Volkswagen's disreputable origins are well-known."[439]  Finally, Newsmax offers that it is not inherently

[433] *Id.* at 12.
[434] *Id.* at 52.
[435] *See id.*
[436] *Id.* at 53.
[437] *Id.*
[438] *Id.* at 54.
[439] *Id.*

improbable that Dominion paid kickbacks to officials: "Kickbacks and bribes by government contractors are hardly unusual."[440]

Third, Newsmax opposes Dominion's argument that Newsmax relied on unreliable sources.[441] Newsmax first asserts that Mr. Morris and Mr. Lindell were not "sources," but talk-show commentators discussing the news.[442]

Newsmax then contends that Ms. Powell and Mr. Giuliani were "sources, appearing live or in video clips to provide information, rather than just commentary."[443] Newsmax maintains that they both were viewed as credible at the time because they were affiliated with the President.[444]

Newsmax also argues that "Dominion identifies no reasons that anyone would have had to doubt [Byrne's] credibility in advance of his sole appearance at issue here. … Dominion cites only a text message disparaging [Mr.] Byrne that [Mr.] Ruddy received *five days after [Mr.] Byrne's appearance*."[445]

Fourth, Newsmax argues that "Dominion has no factual basis to assert that Newsmax departed from journalistic standards applicable to its broadcasts," stating: "Legally, it is enough to observe that Newsmax repeatedly sought comment from Dominion—beginning on November 12, before the first challenged broadcast, and repeatedly thereafter—and from many other sources as the story developed."[446]

---

[440] *Id.* at 54-55.
[441] *See id.* at 55.
[442] *See id.*
[443] *Id.*
[444] *Id.*
[445] *Id.* at 56.
[446] *Id.* at 57.

Newsmax continues, "Similarly misplaced is Dominion's heavy reliance on Newsmax's supposed failure to fact-check…."[447] Newsmax contends that it sufficiently fact-checked guests by consulting and airing information "from a variety of sources with different points of view," as well as "asking probing questions of guests making factual claims."[448] "Dominion's position that Newsmax had an obligation to fact check its guests' live, on-air statements *after* they were broadcast is at odds with the actual malice standard, which turns on an individual's mental state at the time of publication, not after."[449]

### 5. *Dominion's Reply Brief*

First, Dominion acknowledges that plaintiffs rarely prevail at summary judgment on the issue of actual malice; however, Dominion argues that this case is rare because:

> [Mr.] Ruddy admitted his serious doubts repeatedly in his deposition, to public news outlets during the same time period, to friends and colleagues in contemporaneous correspondence, and in the Editorial Position he instituted specifically instructing Newsmax TV personnel to avoid endorsing the claims because there was no supporting evidence.[450]

Second, Dominion opposes Newsmax's attempt to "downplay" Mr. Ruddy's responsibility for the Statements, stating:

> [Mr.] Ruddy's role went far beyond directing high-level editorial policies. He exercised an exceptionally high degree of control over the content on Newsmax TV, including, among other things, "final say on which guests would appear," "editorial messages," "what can and cannot be said," and whether to "steer clear of a particular topic."[451]

---

[447] *Id.*
[448] *Id.*
[449] *Id.* (emphasis supplied).
[450] Pl. Reply Br. at 50.
[451] *Id.* at 51.

64

Third, Dominion asserts that the Editorial Position email confirms that Newsmax had actual malice because although it does not specifically mention Dominion, "the greater (voter fraud conspiracies) includes the lesser (the specific voter fraud conspiracy about Dominion)."[452]

### 6. *Newsmax's Reply Brief*

First, Newsmax contends that Dominion "completely ignores that Newsmax sent **at least 10 written requests**, along with many more phone calls, inviting Dominion to respond on the air. … That alone should preclude a finding of actual malice as a matter of law."[453]

Second, Newsmax offers Mr. Ruddy's testimony stating that he was "not that involved in the day-to-day programming and dealing with the guests."[454] Newsmax further states that Dominion's "so-called evidence" of Mr. Ruddy's involvement is "damning—for Dominion."[455] Newsmax separates Dominion's evidence into five categories, none of which proves that Mr. Ruddy was "actually involved" in approving any of the Statements:

> (1) evidence that post-dates the at-issue statements, (2) evidence about [Mr.] Ruddy's *authority* to be involved at his discretion, (3) evidence of [Mr.] Ruddy's involvement in unrelated programming, (4) evidence of [Mr.] Ruddy's general involvement in unrelated programming, and (5) evidence from late November that [Mr.] Ruddy wanted to book Sidney Powell.[456]

Third, Newsmax argues that *respondeat superior* "does not allow the imputation of actual malice from an independent contractor to a principal, only from an employee to an employer."[457]

### 7. *The Court Will Not Grant Summary Judgment to Either Party as to Actual Malice*

The Court holds that no party is entitled to judgment on the element of actual malice. The Court has detailed the legal and factual arguments of Dominion and Newsmax to

---

[452] *Id.* at 56.
[453] Def. Reply Br. at 10.
[454] *Id.* at 12 (Def. Mot., Ex. 278 at 427:16- 18).
[455] *Id.* at 13.
[456] *Id.* (emphasis supplied).
[457] *Id.* at 25 (referencing *McFarlane*, 74 F.3d at 1302-03 (D.C. Cir. 1996)).

demonstrate that there are multiple genuine issues of material facts that must be determined by a jury. For example, both parties present contradictory evidence regarding the relevance of Messrs. Ruddy, Jacobson, and Kanofsky's states of mind as it relates to Newsmax. Also, both parties offer differing evidence concerning whether certain Newsmax personnel are employees or independent contractors, and accordingly whether their states of mind may be attributed to Newsmax under *respondeat superior*. The Court may not "weigh the evidence to determine who may have been responsible for publication and if such people acted with actual malice – these are genuine issues of material fact and therefore must be determined by a jury."[458]

A main point of contention is Dominion's position that Mr. Ruddy "admitted his serious doubts" to satisfy Newsmax's actual malice. The Court finds that Newsmax offers sufficient evidence to show that Mr. Ruddy did not admit serious doubts as to Dominion specifically. Because reasonable jurors could differ on whether Mr. Ruddy admitted that he had serious doubts that *Dominion* committed election fraud, a genuine issue of material fact exists.

Also, the Court will not adopt Newsmax's proffered rule that media platforms are not responsible for its guests' statements. This is a fact-intensive inquiry that a jury must address.

Finally, the Court will clarify the burden of proof for actual malice in this case. In *Cerberus Intern Ltd. v. Apollo Management LP*, the Supreme Court of Delaware addressed a similar issue and stated: "The question is whether *any rational* finder of fact could find, on the record presented to the Court of Chancery on summary judgment viewed in the light most favorable to the non-moving party, that the substantive evidentiary burden had been satisfied."[459] In this case, the Court is applying Delaware's summary judgment procedural rules while applying the substantive evidentiary burden under Colorado law: If a statement concerns a matter

---

[458] *US Dominion, Inc.*, 293 A.3d at 1052.
[459] *Cerberus*, 794 A.2d at 1150 (emphasis in original).

of public concern, the plaintiff is subject to heightened standards, including proving actual malice by clear and convincing evidence.[460]  In other words, the Court is not conflating Delaware procedural law with Colorado substantive law—both operate simultaneously.

Accordingly, the Court **DENIES** summary judgment regarding actual malice.  The Court finds that genuine issues of material facts exist, and no party is entitled to judgment as a matter of law.

### E. DOMINION IS ENTITLED TO SUMMARY JUDGMENT CONCERNING TWO OF NEWSMAX'S ASSERTED DEFENSES: (I) THE FAIR REPORT PRIVILEGE, AND (II) THE INCREMENTAL HARM DOCTRINE

#### 1. *The Fair Report Privilege Does Not Protect Any Statement*

The fair report privilege "protects media reports of defamatory statements made in [] public proceedings."[461]  The privilege attaches to "reports of in-court proceedings … if they are fair and substantially correct, or are substantially accurate accounts of what took place."[462]  Reports on such proceedings are privileged "even if the reporter of the defamatory statements believes or knows them to be false."[463]

Colorado law places two relevant limitations on the fair report privilege.  First, the privilege only applies to "ongoing judicial … proceedings."[464]  A proceeding is not ongoing until "some official action has been taken by the officer or body whose proceedings are being

---

[460] *L.S.S.*, ¶ 43: "The rule we espouse is also consistent with Colorado cases applying the clear and convincing evidence standard at the summary judgment stage."

[461] *Wilson*, 126 P.3d at 280 (noting the privilege is based on the idea that "[t]he public properly relies on news media to report actions that affect the public interest, and news outlets will be willing to make such reports only if they will be free from liability, provided that their reports are fair and accurate.").

[462] *Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 964 (Colo. App. 2000); *see Wilson*, 126 P.3d at 280 ("A reporter or publisher must be allowed to convey statements that members of the public would have heard had they attended the public proceeding."); *Meeker v. Post Printing & Pub. Co.*, 55 Colo. 355, 357 (1913) (noting the fair report privilege also applies to reports on "affidavits filed in a civil suit[.]").

[463] *Tonnessen*, 5 P.3d at 964 (internal citations omitted).

[464] *Salem Media*, ¶ 95; *see Switzer v. Anthony*, 71 Colo. 291, 295 (1922) ("The publication of a legal proceeding is qualifiedly privileged, but not until it has gone into court and thereby become public.").

reported."[465]  "Fil[ing] [a] complaint alone" is insufficient.[466]  Second, the allegedly protected statement must not go "'beyond merely reporting' on th[e] suits."[467]  As such, a report is not protected if it "assert[s], as a matter of fact, that [the underlying allegations are] true."[468]

Dominion argues that it is entitled to summary judgment on Newsmax's fair report defense because no Statement "was a report 'of an official proceeding,' let alone a fair and accurate report of a proceeding in which some official action had been taken."[469]

Newsmax rejects Dominion's argument and maintains that the fair report defense applies to two distinct categories:[470] (i) Statements B, C, D, E, F, G, H, I, J, and L "are privileged as fair and accurate reports" of a document that Newsmax refers to as the "Whistleblower Affidavit;"[471] and (ii) Statements Q and R are protected "because they fairly report" the Ramsland Report.[472]

[465] *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003).

[466] *Salem Media*, ¶ 97 ("Therefore, publication 'of the contents of preliminary pleadings such as a complaint or petition, before any judicial action has been taken is not within the [fair report doctrine].'" (quoting *Quigley*, 327 F.3d at 1062)).

[467] *Id.* ¶ 95 (quoting *Quigley*, 327 F.3d at 1062).

[468] *Quigley*, 327 F.3d at 1062; *see Republican Publ'g Co. v. Conroy*, 38 P. 423, 424 (Colo. App. 1894) (holding the fair report privilege did not apply because the publisher "proceeded upon his own responsibility to brand the plaintiff with an opprobrious epithet, and to assert him guilty of the most disgraceful and infamous of offenses.  If the statements were false, the mere fact that the defendant believed them to be true does not justify their publication[.]").

[469] Pl. Mot. at 129-30.  Dominion notes that Colorado law "'precludes a defamation defendant from invoking the judicial proceedings privilege on the basis of a filed complaint alone.'"  *Id.* at 129-30 (quoting *Salem Media*, ¶ 97).

[470] Newsmax does not claim that the fair report privilege applies to all Statements.  There is no dispute that Statements A, H, K, M, N, O, P, and S are not protected by the privilege.  *See* Def. Opp'n at 34-42.  Also, Newsmax technically stylizes the Statements into three categories: (1) "Statements B, C, D, E, F, G, and H: Early Reports on the Whistleblower Affidavit;" (2) "Statements I, J, and L: Post-Filing Reports on the Whistleblower Affidavit;" and (3) "Statements Q and R: Reports on the Ramsland Report[.]"  *Id.* at 35-42.

[471] *See* Def. Mot. at 14, 22, 80.  The "Whistleblower Affidavit" allegedly contains statements from an anonymous source that "'Dominion and Smartmatic did business together,' that 'Smartmatic software is in the DNA of every vote tabulating company's software and system,' including Dominion's software, and that what happened in the 2020 election was 'eerily reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela.'"  *Id.*

[472] Def. Opp'n at 41-42.

### i. The Whistleblower Affidavit

Newsmax claims that Statements B, C, D, E, F, G, H, I, J, and L are fair reports of the Whistleblower Affidavit.[473]

Dominion argues that under Colorado's fair report privilege law, the Statements are not protected for two reasons.[474] First, "[t]he 'early reports' … are not fair reports" because the Whistleblower Affidavit "had not been filed in any proceeding at the time[.]"[475] Second, "post-filing" of the Whistleblower Affidavit, "Newsmax's broadcasts were neither fair nor accurate reports of the [Whistleblower] Affidavit's contents."[476]

An affidavit is not part of an ongoing proceeding until it is filed in court.[477] The Whistleblower Affidavit was first filed in *Wood v. Raffensperger* on **November 17, 2020**.[478]

Statements B, C, D, E, F, G, and H were made before November 17, 2020.[479] Accordingly, these Statements were not reporting on any ongoing proceeding and are therefore not protected by the fair report privilege.[480]

---

[473] *See id.* at 35-41; Def. Mot., Ex. 89.

[474] Pl. Reply Br. at 28-41.

[475] *Id.* at 30-32. Dominion rejects Newsmax's theory that "the Affidavit itself is privileged because it reports on the official actions of a government. *Id.* at 32-36 (citing RESTATEMENT (SECOND) OF TORTS § 611 cmt. d (1977) (describing the fair report privilege as protecting "the report of any official proceeding, or any action taken by *any officers or agency of the government of the United States, or of any State or of any of its subdivisions*." (emphasis added)).

[476] *Id.* at 37-38.

[477] *See Salem Media*, ¶ 95 (holding that an affidavit cannot support the fair report privilege until it is part of an ongoing judicial proceeding).

[478] *See* Def. Mot., Exs. 89, 235, 236; *see also Wood v. Raffensperger*, No. 20-cv-4651 (N.D. Ga.).

[479] *See* Def. Opp'n at 35-39 (classifying those Statements as "early reports" of the Whistleblower Affidavit); Compl., Exs. 12-18.

[480] Contrary to Newsmax's assertion, no facts support the argument that the Whistleblower was part of an ongoing proceeding in a foreign jurisdiction, namely Venezuela, when the challenged statements were made. *See* Pl. Opp'n at 34-35.

Statements I, J, and L were all made after November 17, 2020.[481] These Statements, however, are still unprotected because they go beyond merely reporting on the Whistleblower Affidavit—they affirmatively represented its truth.[482]

Therefore, the Court concludes that none of the Statements allegedly reporting on the Whistleblower Affidavit are protected by the fair report privilege.

### ii. The Ramsland Report

Newsmax argues that Statements Q and R are protected "because they fairly report" on the Ramsland Report.[483] There is no dispute that Statements Q and R were made after the Ramsland Report became part of an ongoing judicial proceeding.[484] Rather, Dominion contends that the fair report privilege does not apply because Statements Q and R exceeded the Ramsland Report's claims "and falsely stated those claims as fact."[485]

The Court finds that fair report privilege does not apply to Statement R because Mr. Kelly repeatedly suggested that the contents of the Ramsland Report were true.[486]

Statement Q does not explicitly identify the Ramsland Report; rather, it references a "two-week long forensic audit" "in one county in Michigan."[487] Mr. Morris describes that report

---

[481] *See* Compl., Exs. 19-20 (Statement I made on November 19, 2020), Ex. 21 (Statement J made on November 19, 2020), Ex. 23 (Statement L made on November 21, 2020). Though these Statements were made after the Whistleblower Affidavit was filed, the *Wood* case did not substantively progress until at least November 20, 2020, when the court entered an order denying an emergency TRO. *See* Def. Mot., Ex. 235 at 10-19. This independently prevents application of the fair reporting privilege to Statements I and J. *See Quigley*, 327 F.3d at 1062.

[482] *See* Compl., Ex. 19 at 3:12-14 ("[Powell] says it proves all the research that our investigative unit here on *Stinchfield* has been uncovering."), Ex. 20 at 2:16-23 ("Today the campaign, as we said, dropped a bomb on the left detailing some of the evidence they have been able to compile so far, *and it is damning*." (emphasis added)).

[483] Def. Opp'n at 42.

[484] *Compare* Def. Mot., Ex. 90 (Ramsland Report) *with* Ex. 234 (docket of Michigan case in which the Ramsland Report was filed).

[485] Pl. Reply Br. at 38.

[486] *See* Compl., Ex. 29 at 2:10-18 ("So sir, your report I think was shocking. I thought it was very, very important, and you lay out in great detail all of the weirdness and the issues, *and you've got the technical expertise and it makes perfect sense*."), 4:1-5 ("It is amazing. Yeah. *68 percent I think was the error rate, which was obviously ludicrous*. By the way, the Dominion CEO, as you know, is denying everything…."), 5:4-13 ("There's absolutely no way this was confined to one county."), 6:4-8 ("*It's so troubling to me that people are discounting this*, but I don't think you can steal something this big and get away with it.") (all emphasis added).

[487] Compl., Ex. 28 at 3:19-23.

as providing "evidence" which "prove[d]" there was "actual intervention in the vote count …

through Dominion software…."[488]  Thus, the fair report privilege does not protect Statement Q

because Mr. Morris represented that the Ramsland Report's allegations were true.  Additionally,

Statement Q exceeded the Ramsland Report by stating it "showed that the results that originally

said that Biden won it with 63 percent were wrong, and Trump won it by 61 percent."[489]

Therefore, the fair report privilege does not insulate Newsmax from liability as to any of

the Statements.

### 2.  *The Incremental Harm Doctrine Does Not Protect Any Statement*

At the outset, the Court notes that caselaw is mixed regarding whether Colorado

recognizes the incremental harm doctrine.[490]  If the incremental harm doctrine exists under

Colorado law, it operates as an addition to the fair report privilege.[491]

To the extent that any Statement goes beyond the underlying document on which it is

allegedly a fair report, Newsmax argues that the incremental harm doctrine bars any liability.[492]

Newsmax contends that such comments fall within the incremental harm doctrine because

"additional damage from them would be 'nominal or nonexistent.'"[493]

---

[488] *Id.* at 3:15-25.

[489] *Id.* at 3:15-23; *see* Def. Mot., Ex. 90 (containing no assertion that Trump won Antrim County with 61% of the vote).

[490] *See Tonnessen*, 5 P.3d at 965-66 (applying the incremental harm doctrine).  *But see Bustos v. A & E Television Networks*, 646 F.3d 762, 765-66 (10th Cir. 2011) (suggesting Colorado law does not recognize the incremental harm doctrine); *Anderson v. Colorado Mountain News Media Co.*, 2019 WL 3321843, at *8 (D. Colo. May 20, 2019) (same).

[491] *Tonnessen*, 5 P.3d at 965-66.  Accordingly, the incremental harm doctrine provides no protection to a statement uncovered by the fair report privilege.  *Id.*  Where the incremental harm doctrine applies, it protects statements that "imply the same view and are simply an outgrowth" of otherwise privileged statements.  *Id.* at 966.  The doctrine only absolves liability from harms "determined to be nominal or nonexistent" when compared to the underlying privileged statements.  *Id.* at 965 (internal quotes omitted).

[492] Def. Opp'n at 35-42 (citing *Tonnessen*, 5 P.3d at 965).

[493] *Id.*

Dominion raises doubts as to whether Colorado law recognizes the incremental harm doctrine.[494]  Dominion contends that if the doctrine exists, it only applies "where a challenged statements and a privileged statement are *identical*, and are expressly attributed to the same speaker[.]"[495]  Dominion posits that even under Newsmax's interpretation of the incremental harm doctrine, the Statements are unprotected because they "were not similar" and "went beyond the purportedly privileged statements."[496]

While Newsmax dismisses Dominion's position that Colorado law does not recognize the incremental harm doctrine,[497] it maintains that Colorado's "material falsehood" requirement nevertheless provides the same protection.[498]

The Court finds that if the incremental harm doctrine exists under Colorado law,[499] it only applies as an extension of the fair report privilege.[500]  Because the fair report privilege is inapplicable here, the incremental harm doctrine also does not apply.[501]

Therefore, the Court **GRANTS** Dominion's Motion concerning Newsmax's fair report privilege and incremental harm defenses.

## F. Newsmax is Not Entitled to Summary Judgment on Damages

Newsmax stylizes Dominion's damages claim as "conten[ding] that hundreds of state and local officials participating in procurement decisions sided against Dominion because they had

---

[494] *See* Pl. Opp'n at 60-61 (citing *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 523 (1991) (rejecting "any suggestion that the incremental harm doctrine is compelled as a matter of First Amendment protection for speech."); *Bustos*, 646 F.3d at 765.

[495] *Id.* (emphasis in original) (citing *Tonnessen*, 5 P.3d at 965-66).

[496] *Id.* at 63-68 (applying Dominion's view of the fair report and incremental harm doctrines to the "purportedly privileged statements.").

[497] Def. Reply Br. at 28-29 (citing Pl. Opp'n at 60).

[498] *Id.* (quoting *Tonnessen*, 5 P.3d at 966).

[499] *See Bustos*, 646 F.3d at 765-66 (suggesting that Colorado law does not recognize the incremental harm doctrine); *see also Colorado Mountain News Media Co.*, 2019 WL 3321843, at *8 (same).

[500] *See Tonnessen*, 5 P.3d at 965-66.

[501] *See id.*

been swayed by Newsmax's challenged broadcasts."[502]  Newsmax argues that "zero evidence …

support that contention."[503]  Accordingly, Newsmax advances four arguments to support its

position that Dominion cannot prove damages caused by Newsmax: (i) the "presumption of

regularity" applies; (ii) Dominion's damages are speculative and contradicted by evidence; (iii)

Dominion attributed the same damages to others; and (iv) Dominion cannot recover lost

enterprise value damages.[504]  The Court finds that none of these arguments show that Dominion

is legally barred from recovering damages or that there is no factual dispute regarding damages.

Newsmax first argues that Dominion's damages claim does not overcome Colorado's

"strong presumption of regularity in the conduct of government affairs[.]"[505]  Newsmax contends

that the "presumption of regularity" requires the Court to assume the government officials that

refused to hire Dominion acted in "good faith."[506]  Not so.  Rather, Colorado law recognizes "a

presumption of regularity and validity."[507]  Under that presumption, "'in the absence of evidence

to the contrary, courts presume that [government actors] [] properly discharged their official

duties.'"[508]  The presumption is "an adjunct and a supplement to the idea that the manner and

extent of the reading and considering of the evidence of the deciding officials of an

administrative agency cannot be probed[.]"[509]  Hence, the presumption of regularity is not a

blanket rule, but a burden-heightening mechanism only used when courts are hesitant to question

the prior rulings of an adjudicative body.

---

[502] Def. Mot. at 98.
[503] *Id.*
[504] *Id.* at 98-118.
[505] *Id.* at 99-103.  Newsmax argues that presumption "attach[es] to the conduct of government officials in procuring election equipment and services."  *Id.* at 101.
[506] *Id*.
[507] *Leonard v. Board of Directors, Prowers County Hosp. Dist.*, 673 P.2d 1019, 1022 (Colo. App. 1983) (citing *Public Utilities Commission v. District Court In and For Arapahoe County*, 431 P.2d 773 (Colo. 1967)).
[508] *Jensen v. City and County of Denver*, 806 P.2d 381, 386 (Colo. 1991) (quoting *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926)).
[509] *Public Utilities Commission*, 431 P.2d at 468-69.

Accordingly, Colorado courts apply the presumption in two situations: (1) when an appellate court reviews a trial court's decision;[510] and (2) when a litigant *directly* challenges the actions of an administrative body[511] or government official.[512] Newsmax cites no case where a Colorado court applied the presumption of regularity as a device to invalidate a damage claim in a suit between private litigants. Dominion will have to prove its damages,[513] but the presumption of regularity does not heighten the standard. Therefore, the presumption of regularity provides no basis for granting Newsmax's Motion regarding damages.

Newsmax's second argument—Dominion impermissibly attributed the same damages to Fox—is unsuited for resolution at summary judgment. Newsmax provides no precedential support for the proposition that a party cannot allege two separate defendants caused similar harm.[514] To prevail on its defamation claim, Dominion "must establish … 'damages … caused by [Newsmax's] publication.'"[515] At trial, Newsmax may present evidence that Dominion attributed similar harms to both Fox and Newsmax. Whether that evidence proves that Newsmax did not damage Dominion is a question for the jury,[516] not the Court at summary judgment.

---

[510] *See, e.g.*, *LePage v. People*, 2014 CO 13, ¶ 15 ("According to the presumption of regularity, appellate courts presume that the trial judge did not commit error absent affirmative evidence otherwise.").

[511] *See, e.g.*, *Leonard*, 673 P.2d at 1022 (citing *Colorado Civil Rights Commission v. Colorado*, 488 P.2d 83 (Colo. 1971)); *Public Utilities Commission*, 431 P.2d at 468-69; *Jensen*, 806 P.2d at 386.

[512] *See, e.g.*, *People ex rel. Foley v. Montez*, 110 P. 639, 643 (Colo. 1910).

[513] *Anderson*, ¶ 13 ("When the defamatory statement involves a matter of public concern … [t]he plaintiff must establish actual damages, even if the statement is defamatory *per se*.").

[514] *See generally* Def. Mot. at 114-16; Def. Reply Br. at 50-57. "Dominion claimed only that Fox was a 'substantial' factor in its damages, not that it was the only cause of its damages." Pl. Opp'n at 118 (citing Pl. Mot., Exs. 25, 388).

[515] *Jogan Health, LLC*, ¶ 21 (quoting *Lawson*, ¶ 15).

[516] *See Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 586 (Colo. 2004) (en banc) ("Proximate cause is a question for the jury."); *see also Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1290 (Del. Super. Oct. 3, 2001) ("Generally, the issues of causation and damages are left for the jury.").

Similarly, Newsmax's third argument—Dominion's damages are "speculative"—does not warrant summary judgment. As the Court recognized in *Fox*, "damage issue[s] [are] … intensely factual."[517]

Newsmax's final argument is that Dominion impermissibly seeks recovery of both lost profit and lost enterprise value damages.[518] Dominion does not dispute that lost enterprise value and lost profits are mutually exclusive damage theories.[519] Rather, the parties' dispute focuses on whether lost enterprise value damages are barred because Dominion's business was not destroyed.

While no Colorado court has squarely addressed this issue, "[c]ircuit courts, district courts, and scholars have concluded that diminution of value is an appropriate measure of damages where a business is completely destroyed."[520] That characterization is consistent with Colorado precedent, which awards "diminished value" damages when the harmed entity "will never have the same value that it had before the incident."[521] Therefore, caselaw suggests that a party can only recover lost enterprise value damages when its business is permanently impaired.

Whether Dominion's business was permanently impaired is a factual question. Newsmax proffers evidence showing Dominion's business is growing,[522] and Dominion cites evidence suggesting its business reputation has been permanently harmed.[523] Accordingly, Newsmax is not entitled to summary judgment on Dominion's lost enterprise value damages claim.

---

[517] *US Dominion, Inc.*, 293 A.3d at 1055.
[518] *See* Def. Mot. at 116-18.
[519] *See* Pl. Opp'n at 118-21; *see also Forsyth v. Associated Grocers of Colorado, Inc.*, 724 P.2d 1360, 1365 (Colo. App. 1986) (noting that allowing both lost profits and lost enterprise value damages "would lead to an improper double recovery."). Dominion maintains that it "lost-profit damages are an alternative to Dominion's list-enterprise-value damages." Pl. Opp'n at 120.
[520] *Opal Labs Inc. v. Sprinklr, Inc.*, 2021 WL 7159869, at *2 (D. Or. Nov. 8, 2021).
[521] *Airborne, Inc. v. Denver Air Center, Inc.*, 832 P.2d 1086, 1092 (Colo. App. 1992).
[522] *See* Def. Mot., Ex. 141 ¶¶ 21-26, (Exs. 2-3); Ex. 142.
[523] Def. Mot., Ex. 142 at 122-218.

The parties also dispute whether Dominion must prove that the Statements were a "substantial factor" or a "but-for" cause of the alleged harm.[524] While Colorado courts have not directly addressed the issue, three sources of existing authority suggest that a defamation plaintiff need only prove the challenged remarks were a "substantial factor" of the alleged damages.

First, Colorado's defamation jury instructions state that "[w]hether the plaintiff's damages were cause, in part, by third persons who published on the same subject, before or about the same time as the defendant published," does not abrogate liability.[525] Rather, the jury can consider that a third-party contributed to same alleged harm "only to the extent that [it] justif[ies] a reduction in the amount of damages to be awarded."[526]

Second, the Second Restatement of Torts, upon which Colorado courts regularly rely,[527] endorses the "substantial factor" causation test in defamation cases.[528] Specifically, the

---

[524] *See* Def. Mot. at 113-15 (arguing that Dominion must show "but-for" causation); Def. Reply Br. at 51-52 (same); Pl. Opp'n at 114 (arguing that Dominion must prove the Statements were a "substantial factor" in bringing about the alleged harm).

[525] Colo. Jury Instr., Civ. 22:26(2) (2025). Similarly, the late addition of Newsmax Broadcasting, LLC as a co-defendant does not compel entry of summary judgment in Newsmax's favor concerning damages. No Colorado court has squarely addressed whether joint and several liability is permissible in defamation cases. Yet, the Supreme Court of Colorado has long held that "[n]o law is better settled than that each publication of a libel is a separate and independent claim[.]" *Lininger*, 226 P.2d at 812. Moreover, persuasive authority provides that "whenever two or more persons cooperate in the publication of a libel, all are responsible for the resultant damages, and the victim can sue them either jointly or severally." 50 AM. JUR. 2D *Libel and Slander* § 358. As discussed, both Newsmax Media, Inc. and Newsmax Broadcasting, LLC are responsible for publishing the Statements. Accordingly, the Court will not hold that Dominion is precluded from suing both Newsmax entities for damages arising out of the Statements' publication, such that summary judgment on damages is warranted in favor of Newsmax.

[526] Colo. Jury Instr., Civ. 22:26 (2025). Newsmax's reliance on jury instruction 9:20 is inapposite. First, while Newsmax *cites* jury instruction 9:20, it *quotes* jury instruction 9:18. Second, Chapter 9 of Colorado's civil jury instructions deals with "Negligence – General Concepts," and Chapter 22 applies to "Defamation" cases specifically. *See generally* Colo. Jury Instr., Civ. 9 (2025); Colo. Jury Instr., Civ. 22 (2025). Finally, while jury instruction 9:18 "applies a 'but-for' causation test" in cases "when only one cause is alleged," jury instruction 9:20 explicitly endorses a "substantial factor" test in cases with "concurrent causes." *See* Colo. Jury Instr., Civ. 9:18 n.3 (2025); *see also* Colo. Jury Instr., Civ. 9:20 (2025) (citing *Calkins v. Albi*, 431 P.2d 17, 20 (1967)).

[527] *See generally* Colo. Jury Instr., Civ. 9 (2025) (repeatedly citing to RESTATEMENT (SECOND) OF TORTS); Colo. Jury Instr., Civ. 22 (2025) (same).

[528] *See* RESTATEMENT (SECOND) OF TORTS § 613 cmt. e ("When damages are claimed for special harm caused by the defamatory publication, the plaintiff has the burden of proving that the special harm was legally caused by the defamatory publication. (See § 622A).)"; *id.* § 622A cmt. b ("For the defamation to be a legal cause of the special harm, it is necessary that it be *a substantial factor in bringing about the harm*. In the ordinary case, this means that the defamation must be a necessary antecedent of the harm, which would not have occurred without it…. It is *not*

76

Restatement provides that "[w]hen two or more persons make defamatory statements to a third person, and each statement is found to have had a substantial influence upon his mind that has induced him to take some action causing special harm to the plaintiff, each of the defamers may be liable for the special harm."[529]

Third, the sparse caselaw confirms that "[d]efamatory remarks are a proximate cause of special harm suffered by the person defamed if the remarks were a *substantial factor* in bringing about the harm."[530]

Accordingly, to prevail on its defamation claim under Colorado law, Dominion will have to prove that the Statements were a "substantial factor" in causing its alleged harm.

In sum, the parties proffer sufficient evidence to support their respective positions on damages.[531] This conflicting evidence shows that there is a genuine factual issue concerning Dominion's damages.[532] Therefore, the Court **DENIES** Newsmax's Motion concerning damages.

---

*necessary*, however, that the defamation be the *sole cause* of the special harm, so long as it has played a *substantial part* in bringing it about." (emphasis added).

[529] *Id.* ("This is true even though it appears that any one statement would have been sufficient in itself to induce the particular action.").

[530] *Roberts v. Bucher*, 584 P.2d 97, 99 (Colo. App. 1978), *rev'd on other ground*, 595 P.2d 239 (1979); *see Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1344-45 (Colo. 1988) (endorsing liability for both original publishers and defendants that republish defamatory statements); *see also Coomer v. Lindell*, 2024 WL 3989534, at *6 (D. Colo. Aug. 29, 2024) (holding an argument that "[plaintiff] cannot show actual damages on his defamation claim because—due to other individuals and entities spreading the same allegedly defamatory message … any damages … are [] not fairly traceable to, Defendants' conduct," did not compel summary judgment. Rather the court held "[t]he fact that a party and a nonparty defamed Plaintiff in the same way, allegedly causing or contributing to similar harm around the same time, does not mean that the nonparty is 'at fault' for the party's statements within the contemplation of Colorado law.").

[531] *See, e.g.*, Def. Mot., Ex. 140 ¶¶ 579-80 (supporting Newsmax's position on damages); Ex. 142 at 90 (same); Ex. 171 at 100:24-101:5, 109:11 (same); Ex. 175 at 124:5-133:23 (same); Ex. 182 at 72:17-73:8 (same); Ex. 201 at 194:17-196:5, 250:13-252:5 (same); Ex. 208 at 56:17-57:5, 160:16-161:4 (same). *But see, e.g.*, Pl. Mot., Ex. 385 at 31-121 (supporting Dominion's position on damages); Ex. 386 at 116:9-117:15 (same); Ex. 387 at 145:10-150:15 (same); Ex. 388 at 314:2-10 (same) Pl. Opp'n Appendix F (same).

[532] *See In re Straight Path Communications Inc. Consolidated Stockholder Litigation*, 2022 WL 484420, at *14 (Del. Ch. Feb. 17, 2022).

### G. NEWSMAX IS NOT ENTITLED TO SUMMARY JUDGMENT ON PUNITIVE DAMAGES

Colorado statute authorizes "exemplary damages" if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]"[533]  Colorado defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."[534]  To recover punitive damages, a plaintiff must "pro[ve] beyond a reasonable doubt that [the defendant] engaged in willful and wanton conduct."[535]  Yet, "[w]hether conduct was willful and wanton must generally be determined at trial."[536]

Dominion claims that it is entitled to punitive damages based on Newsmax's willful and wanton conduct.[537]  Newsmax argues that Dominion's punitive damage claim fails as a matter of law.[538]  The parties dispute whether Newsmax bases its opposition to punitive damages in current caselaw.[539]  Dominion also criticizes Newsmax for improperly "invoke[ing] the 'beyond a reasonable doubt' standard" at summary judgment.[540]

---

[533] COLO. REV. STAT. § 13-21-102(1)(a).

[534] COLO. REV. STAT. § 13-21-102(1)(b).

[535] *Thompson v. Ford Motor Company*, 2025 WL 370431, at *8 (D. Colo. Feb. 3, 2025) (applying Colorado law). Exemplary damages "do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages." *Litterer v. Vail Summit Resorts, Inc.*, 2025 WL 353306, at *7 (Colo. App. Jan. 30, 2025) (internal quotes omitted).

[536] *Carothers v. Archuleta County Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006); *see Speer v. Kourlis*, 935 P.2d 43, 47 (Colo. App. 1996) ("Accordingly, the first issue to be determined is whether plaintiffs' conduct was willful and deliberate, and resolution of this issue *is a question of fact*." (emphasis added)).

[537] Pl. Opp'n at 121-25.

[538] Def. Mot. at 118-21.

[539] Dominion asserts that Newsmax "omits the statutory definition of 'willful and wanton conduct' from its brief," and instead relies on "a case interpreting 'an earlier version of this statute, one that [] did not include the term willful and wanton conduct or the statutory definition of this term' now codified[.]"  Pl. Opp'n at 121-22 (quoting *Cook v. Rockwell Int'l Corp.*, 564 F. Supp. 2d 1189, 1209 (D. Colo. 2008), *rev'd on other grounds*, 618 F.3d 1127 (10th Cir. 2010)); *see* COLO. REV. STAT. § 13-21-102(1)(a)-(b) (providing the requirements for punitive damages under Colorado law).  Newsmax rejects the proposition that it relies on obsolete caselaw and nevertheless maintains there is no "meaningful difference between [the previous case's] definition of 'wanton and reckless' conduct and section 13-21-102(1)(b)'s definition of 'willful and wanton' conduct."  Def. Reply Br. at 60 n.19.

[540] Pl. Opp'n at 123 (citing *Sender v. Mann*, 423 F. Supp. 2d 1155, 1181 (D. Colo. 2006)).

Beyond these legal arguments, Newsmax contends that the facts do not show Dominion is entitled to punitive damages for four reasons.[541] First, "Newsmax repeatedly invited Dominion on the air to respond to the Trump Legal Team's claims," therefore Newsmax did not act purposefully or recklessly.[542] Second, Newsmax accurately "reported what it knew of Dominion's position."[543] Third, Newsmax "gave viewers both sides of the story" by giving "airtime to many guests who countered the Trump Legal Team's claims."[544] Finally, Newsmax notes that it "published a clarification that no evidence was offered that Dominion manipulated votes in the 2020 election."[545]

In response, Dominion contends that these assertions "at most creates a factual dispute as to whether [Newsmax's] conduct was 'willful or wanton,'" such that summary judgment is improper.[546]

The Court concludes that Newsmax is not entitled to summary judgment on Dominion's punitive damages claim. Reasonable jurors could differ on whether Newsmax engaged in willful and wanton conduct.[547] Therefore, summary judgment on the punitive damages issue is improper, and the Court **DENIES** Newsmax's Motion regarding punitive damages.

## H. Summary Judgment is Not Warranted on Newsmax's Setoff Claim

Colorado recognizes three versions of a damage setoff. First, the "amount statute" offsets a damage claim "by the amount by which [the claimant] … has been … wholly or partially indemnified or compensated for his loss."[548] Newsmax does not invoke the amount statute, nor

---

[541] Def. Mot. at 119-21.
[542] *Id.* at 119.
[543] *Id.* at 120.
[544] *Id.* at 120-21.
[545] *Id.* at 121.
[546] Pl. Opp'n at 124-25.
[547] Pl. Mot., Ex. 79 at 176:4-180:24; Ex. 82 at 222:11-223:22; Ex. 90 at 217:23-218:10, 245:24-250:18, 291:9-16; Exs. 225-227; Ex. 229; Ex. 232; Exs. 235-236; Ex. 389; Ex. 390.
[548] COLO. REV. STAT. § 13-21-111.6.

could it given that the amount statute does not apply to settlements made to avoid the risk of liability at trial.[549]

Second, the "percentage statute" reduces a party's "aggregate claim against [one party] to the extent of any degree or percentage of fault or negligence attributable … to the tortfeasor to whom the release or covenant not to sue is given."[550] Accordingly, the percentage statute applies "only when more than one person is responsible for the injuries suffered by the plaintiff."[551] The Supreme Court of Colorado has held that the percentage statute "alone applies to settlement agreements entered into to avoid exposure to liability at trial."[552]

Third, if neither statute applies, then Colorado employs "common law setoff rules."[553]

Procedurally, the parties dispute whether Newsmax's setoff position is based on the percentage statute or common law. Newsmax's Answer cites the percentage statute, not the common law setoff.[554] After Newsmax filed its Answer, the District Court for the District of Colorado issued a decision holding that the percentage statute does not apply "in the context of a defamation action where the nonparties at are alleged to have separately defamed the plaintiff by publishing similar or identical statements."[555] Recognizing this, Newsmax's briefing argues that

---

[549] *Smith v. Zufelt*, 880 P.2d 1178, 1183-85 (Colo. 1994) (en banc).
[550] COLO. REV. STAT. § 13-50.5-105.
[551] *Marso v. Homeowners Realty, Inc*., 2018 COA 15M, ¶ 17.
[552] *Smith*, 880 P.2d at 1183.
[553] *Marso*, ¶ 28. Contrary to Dominion's assertion, the common law setoff is not limited to vicarious liability cases. *See Briargate at Seventeenth Avenue Owners Association v. Nelson*, 2021 COA 78M, ¶¶ 45-52 (citing *United States v. Munsey Tr. Co. of Wash., D.C.*, 332 U.S. 234, 239 (1947)).
[554] *See* Answer (asserting a setoff defense based on "Colo. Rev. Stat. § 13-50.5-105," not common law).
[555] *Lindell*, 2024 WL 3989524, at *13 (D. Colo. Aug. 29, 2024). The court stated that a contrary result "would seem to contradict the basic theory of designating a nonparty at fault under Colorado—that it contributed to the *same injury* as the named defendant." *Id.* (emphasis in original) (citing *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001) ("[A] non-party designation is reserved for individuals or entities who might themselves be at fault and therefore *liable for the injury at issue*.") (emphasis added)). Therefore, the percentage statute did not apply because "[t]he fact that a party and a nonparty defamed Plaintiff in the same way, allegedly causing or contributing to similar harm around the same time, does not mean that the nonparty is 'at fault' for the party's statements within the contemplation of Colorado law. Each has affected a different, albeit similar, injury." *Id.* Thus, the district court's holding was premised on the two alleged defamers causing different injuries, which is a question of fact. *Id.*

80

it is entitled to a setoff under Colorado common law rather than the percentage statute.[556]  In response, Dominion asserts that Newsmax is procedurally barred from seeking a common law setoff.[557]

Generally, "failure to timely assert an affirmative defense constitutes waiver[.]"[558]  Yet, "Delaware public policy favors deciding cases on the merits rather than technicalities."[559]  Based on that policy, the Court will not reject Newsmax's common law setoff argument based on a pleading technicality, especially because at the time of filing the Answer, the Court had not issued its choice of law decision.  Dominion's briefing fully responded the to the common law setoff issue and articulated no undue prejudice arising from Newsmax's original pleading.[560]  Additionally, Newsmax's Answer asserted a setoff defense based on N.Y. Civil Rights Law § 76,[561] which largely mirrors Colorado's common law setoff rule.[562]  Therefore, Dominion had sufficient notice of the substance of Colorado's common law setoff rule, such that rejecting Newsmax's common law setoff claim on procedural grounds is not warranted.

---

[556] *See* Def. Reply Br. at 62-67.

[557] Pl. Opp'n at 127 (citing *Brennan v. Severance*, 2014 WL 4954031, at *2 (Del. Com. Pl. Oct. 3, 2014) (holding an affirmative defense must be pled or it is waived); *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 21 ("courts have refused to construe an asserted defense as raising a different, unasserted defense, even when the evidence supporting the two defenses was overlapping.")).

[558] *McDougall v. Air Products & Chemicals, Inc.*, 2005 WL 2155230, at *7 (Del. Super. Aug. 31, 2005).

[559] *Long v. Jennings*, 2021 WL 2134854, at *1 (Del. Super. May 25, 2021).

[560] *See generally* Pl. Opp'n at 125-30.

[561] *See* Answer.  At the time Newsmax filed its Answer, the Court had not yet issued its choice of law ruling.

[562] *Compare* N.Y. CIV. RIGHTS LAW § 76 ("At the trial of any civil action for libel, the defendant may prove, for consideration by the jury in fixing the amount of the verdict, that the plaintiff has already recovered damages, or has received, or agreed to receive, compensation in respect of a libel or libels of a similar purport or effect as the libel for which such action has been brought.  In consolidated actions based on libels of similar purport or effect the jury shall assess the whole amount of the plaintiff's damages in one sum, but a separate verdict shall be taken for or against each defendant and the jury shall apportion the amount of damages among the defendants against whom it found a verdict."), *with Marso,* ¶¶ 26-28 (citing RESTATEMENT (SECOND) OF TORTS § 885(3) for the common law setoff rule), *and* RESTATEMENT (SECOND) OF TORTS § 885(3) ("A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.").

Substantively, Newsmax contends that the Court should offset any damages from the Fox Settlement because Dominion sued Fox for the same harm allegedly caused by Newsmax.[563] Newsmax maintains that "[i]t is irrelevant that Newsmax and Fox [were] accused of different legal injuries," because "Dominion claims that both are responsible for the same harm."[564]

In response, Dominion insists that the Colorado common law setoff does not apply because it only operates in cases of "vicarious liability."[565] Additionally, Dominion asserts that "[a]llowing Newsmax to set off any award of compensatory damages by amounts paid for release of claims seeking both compensatory and punitive damages" would be a windfall.[566]

While the Court finds that Newsmax may pursue a Colorado common law setoff defense, the Court will not grant summary judgment to Newsmax on the issue. Colorado's common law setoff only applies if the previous settlement compensated the plaintiff *for the same harm*.[567] As discussed, a genuine factual issue exists regarding if Dominion seeks damages from Newsmax for harms caused by Fox. Thus, the Court cannot resolve whether Newsmax is entitled to a setoff from the Fox Settlement at summary judgment.

Therefore, the Court **DENIES** Newsmax's Motion regarding the setoff issue.

## VI.     CONCLUSION

For the reasons stated above, the Newsmax motion is **DENIED**.

---

[563] Def. Mot. at 121-25 (citing *Marso*, ¶¶ 42-43). While Colorado has two statutory setoff schemes, Newsmax asserts that neither applies. Therefore, "'the common law setoff rule remains in force … to preclude windfall recover[y].'" *Id.* (quoting *Marso*, ¶ 29). Dominion agrees that "Colorado's amount and percentage [setoff] statutes do not apply[.]" Pl. Opp'n at 130-31.

[564] *Id*. at 123.

[565] Pl. Opp'n at 126-28 (citing *Marso*, ¶¶ 31-33).

[566] *Id.* at 129-30.

[567] *See* RESTATEMENT (SECOND) OF TORTS § 885(3) ("A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made[.]").

For the reasons stated above, the Dominion Motion is **GRANTED** on the issues of: (i) whether the Statements are *per se* defamatory; (ii) falsity with respect to Dominion and the Election; (iii) whether Statements B through S were published by Newsmax; and (iv) Newsmax's fair report privilege and incremental harm defenses. Otherwise, the Dominion Motion is **DENIED**.

**IT IS SO ORDERED**

April 9, 2025
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     File&ServeXpress

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | C.A. No.: N21C-08-063 EMD |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| NEWSMAX MEDIA, INC., and NEWSMAX BROADCASTING, LLC, | ) ) ) | |
| Defendants. | ) | |

## **APPENDIX**

# I.   STANDARD OF REVIEW

As stated in the Decision, the Court finds that all the Statements are defamatory *per se* because they each suggest that Dominion engaged in criminal activity by aiding election fraud. Thus, the Court finds that it is irrelevant whether the Statements assert opinions under Colorado law.[568]  Even if the opinion inquiry were relevant, the Court alternatively finds that all the Statements are nonetheless actionable because none assert pure opinions.

"Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage."[569]  The First Amendment protects statements of pure opinion, "rhetorical hyperbole," and statements that are either not "verifiable" (*i.e.*, capable of being proven true or false), or cannot reasonably be interpreted as stating actual facts.[570]

*Keohane v. Stewart* suggests that Colorado recognizes the doctrine of "mixed opinion."[571] Under this doctrine, defamation liability may attach "when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader."[572]

Colorado applies a two-part test to determine whether a statement is actionable as defamation.[573]  "The first inquiry is whether the statement is 'sufficiently factual to be susceptible of being proved true or false.'"[574]  The second inquiry is "whether reasonable people would conclude that the assertion is one of fact."[575]  "The factors relevant to the second inquiry

---

[568] *See Keohane*, 882 P.2d at 1304 (finding that under Colorado law, "accusations of criminal activity, 'even in the form of opinion, are not constitutionally protected.'")

[569] *Id.* at 1297.

[570] *See, e.g., Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777-78 (1986); *Gertz v. Robert Welch, Inc.*, 418 U.S. 340-41 (1974).

[571] *See Keohane*, 882 P.2d at 1303; *see also US Dominion, Inc.*, 293 A.3d at 1061 ("A mixed opinion 'implies that it is based on facts which justify the opinion but are unknown to those reading or hearing it.'" (citation omitted)).

[572] *Id.*

[573] *See id.* at 1299.

[574] *Id.* (quoting *Milkovich*, 497 U.S. at 21).

[575] *Id.*

are: (1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed."[576]

The fact that a statement is "prefaced" by phrases such as "I think," "I believe," or "in my opinion" is not dispositive of whether the statement is pure opinion.[577] However, such language "may provide the reasonable listener with grounds to discount that which follows."[578] "Although a particular comment might appear on its face to be a statement of fact, when considered in context it may otherwise be revealed to be mere rhetorical hyperbole, not intended to be understood in its literal sense."[579]

In *Keohane*, the Supreme Court of Colorado found that a letter written about a judge in the editorial section of a newspaper, "when viewed in the context of the letter as a whole," could not "reasonably be interpreted as stating actual facts" about the judge.[580] The *Keohane* court determined that "much of the letter is couched in terms of speculation and conjecture. … *i.e.*, 'makes you wonder,' 'it appears,' and 'it [is] obvious.'"[581] The *Keohane* court also found that "considering the letter in the wider social context in which it appeared, a reasonable reader could not have taken Campbell's letter as actual assertions of fact, but would regard her statements as one citizen's suspicions and conjecture concerning well-publicized public events."[582]

Newsmax argues that ten Statements are "protected opinion" and thus are not actionable as defamation: Statements A, B, C, D, F, L, M, N, R, and S.[583]

---

[576] *Id.*
[577] *See Anderson*, ¶ 35; *see also Lawson*, ¶ 30.
[578] *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983).
[579] *Brooks v. Paige*, 773 P.2d 1098, 1100 (Colo. App. 1988).
[580] *Keohane*, 882 P.2d at 1300.
[581] *Id.*
[582] *Id.* at 1301.
[583] *See* Def. Mot. at 88.

## II. THE STATEMENTS

### A. STATEMENT A

#### 1. *Excerpt from Dominion*

Statement A is a social media post on Twitter, now called X, posted by Ms. Robinson on November 10, 2020.[584] Another individual published a post that stated: "Little tidbit: Smartmatic is the electronic voting systems company that has been used in Venezuela since 2004. Its name is synonymous with fraud for most Venezuelans. Since 2009, Smartmatic has been a subsidiary of Dominion."[585]

Ms. Robinson replied to that individual's post, stating: "All crooked roads lead to Dominion Voting Systems."[586]

#### 2. *Omitted Context Offered by Newsmax*

Newsmax offers no additional context regarding Statement A.

#### 3. *Statement A Asserts Facts*

Newsmax argues that Ms. Robinson's Twitter post cannot be construed as a statement of fact because "courts often have held that 'crook' and 'crooked' are non-actionable opinion and hyperbole."[587] Also, Newsmax argues that the "medium on which [Ms.] Robinson expressed her commentary—social media—also suggests that her comment was one of opinion not fact."[588]

The Court finds that Statement A meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation. Ms. Robinson's post stating that "All crooked roads lead to Dominion Voting Systems" itself may be considered an opinion because it

---

[584] *See* Compl. ¶ 248(a).
[585] *Id.*
[586] *Id.*
[587] Def. Mot. at 88-89.
[588] *Id.* at 89.

contains "rhetorical hyperbole" and is not susceptible of being proved true or false; however, because Ms. Robinson directly quoted another individual's post and added her own commentary, context requires that the two posts must be read together.

The repost itself could be seen by a reasonable viewer as confirmation of the facts asserted in the post. The Statement, however, goes further—by adding her own commentary in agreement, Ms. Robinson undoubtedly asserts that the post contains facts: Smartmatic has been used in Venezuela since 2004, Smartmatic is synonymous with fraud for most Venezuelans, and Smartmatic has been a subsidiary of Dominion since 2009. These statements are capable of being proven true or false.

As such, the Court finds that Statement A asserts facts and is not a protected opinion.

## B. STATEMENT B

Statement B is a from an episode of *Greg Kelly Reports* on November 16, 2020.[589] The segment was titled on the screen as "DEMOCRACY OR 'DOMINION.'"[590]

### 1. *Excerpt from Dominion*

Kelly: … I think this country, this planet, could be in for the awakening of the millennium, something that we haven't seen in thousands of years, as this election, the truth is finally told. … Folks, I think we will be in for the shock of our lifetime this is going to be wild; and the evidence is slowly emerging. Yes, I would like to have seen it yesterday; but the President has some very, very smart lawyers. One of my favorites, Sidney Powell. She helped Michael Flynn beat the travesty of a case that was lodged against him. She's a former federal prosecutor. And you tell me, does she – seem like she's speaking the truth? She spoke to Maria Bartiromo over the weekend.

Powell: President Trump won by not just hundreds of thousands of votes, but by millions of votes, that were shifted by the software that was designed expressly for that purpose. … It was exported internationally for profit by the people that are behind Smartmatic and Dominion. They did this on purpose. It was calculated. They've done it before. We have evidence from 2016 in California. We have so much evidence, I feel like it's coming in through a fire hose.

---

[589] *See* Compl. ¶ 248(b).
[590] *Id.*

Kelly: I believe her, and I don't believe the critics and the naysayers.

Kelly: … talking about Dominion. This company, the software; there are a lot of concerns. And what she's saying, I'm believing. Big problems, vulnerabilities, votes that can be switched. It happened before in South Carolina. And Sidney Powell is right.[591]

### 2. *Omitted Context Offered by Newsmax*

Newsmax asserts that in the Powell Fox Interview, Ms. Powell was specifically referencing the Whistleblower Affidavit as a "sworn affidavit" filed in a Georgia lawsuit.[592]

After playing clips of Ms. Powell's Fox Interview, Mr. Kelly showed the audience a copy of a letter signed by Democratic senators Amy Klobuchar and Elizabeth Warren, among others, dated December 6, 2019.[593] Newsmax contends that the letter "named Dominion" and expressed concern about "secretive and 'trouble-plagued companies'" that left voting systems "across the country 'prone to security problems.'"[594]

Newsmax also offers that Mr. Kelly's comment that "Sidney Powell is right" is "improperly isolated in the Complaint. In fact, it was immediately preceded in the broadcast with his statement that 'Democrats have raised grave concerns'…."[595]

### 3. *Statement B Asserts Facts*

Newsmax argues that Mr. Kelly's "commentary constitutes non-actionable hyperbole or opinion. It is no secret that Mr. Kelly's show is an opinion-based show—he repeatedly reminds viewers of this. … And his viewers know they are not watching a straight news show."[596]

---

[591] *Id.*
[592] *See* Def. Mot. at 14, 22, 80.
[593] *See id.* at 21-22, 54.
[594] *Id.*
[595] *Id.* at 90.
[596] *Id.*

Newsmax also maintains that Mr. Kelly "makes claims that cannot be shown as verifiably false, such as 'I believe her, and I don't believe the critics…'; and he employs conjecture, such as '[f]olks I think we will be in for the shock of our lifetime. This is going to be wild.'"[597]

Further, Newsmax argues that when Mr. Kelly's statement of "Sidney Powell is right" is viewed in context, "it is clear that [Mr.] Kelly was expressing his opinion based on the disclosed true facts, including the concerns about Dominion's voting machines raised by Democratic Senators Warren and Klobuchar in their December 2019 letter."[598]

Finally, Newsmax cites *Abbas v. Foreign Policy Grp., LLC*, a case from the United States Court of Appeals for the District of Columbia Circuit, to argue that questions cannot be actionable as defamation.[599] Not so. *Keohane* makes clear, "A question, like a statement of belief or opinion, though not phrased in the form of a declaration of fact, may imply the existence of a false and defamatory fact."[600]

The Court finds that Statement B meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Although Mr. Kelly uses language like "I think" and "I believe," such phrases are not dispositive of whether the Statement is pure opinion. The Court must also consider the Statement's context to determine whether the Statement is "mere rhetorical hyperbole, not intended to be understood in its literal sense."

Mr. Kelly's statements alone, without the context of Ms. Powell's clips, may be considered opinions because these statements contain "rhetorical hyperbole" and are not susceptible of being proved true or false; however, by playing clips of Ms. Powell and adding his

---

[597] *Id.*
[598] *Id.*
[599] *Id.* (citing *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015)).
[600] *Keohane*, 882 P.2d at 1302.

own commentary in agreement ("Sidney Powell *is right*"), context requires that Mr. Kelly's statements be read together with Ms. Powell's.

By agreeing with Ms. Powell, Mr. Kelly implies that Ms. Powell's claims are based on facts that are capable of being proven true or false: President Trump won the Election by millions of votes, Dominion purposely shifted votes, Dominion was designed expressly for the purpose of shifting votes, and evidence from 2016 in California shows that Dominion has shifted votes before. Context indicates that Mr. Kelly intended these statements to be understood in a literal sense, not as mere rhetorical hyperbole. A reasonable viewer would understand that Mr. Kelly is asserting facts regarding Dominion, not his subjective opinion.

Mr. Kelly also adds his own assertions of fact about Dominion: Dominion has "big problems and vulnerabilities," Dominion can switch votes, and Dominion has switched votes before in South Carolina. Again, these statements are capable of being proven true or false and a reasonable viewer would conclude that these statements are factual.

As such, the Court finds that Statement B asserts facts and is not a protected opinion.

## C. STATEMENT C

Statement C is from a later segment of the same episode of *Greg Kelly Reports* on November 16, 2020, where Mr. Morris appeared as a live on-air guest.[601]

### 1. *Excerpt from Dominion*

Morris: … I believe that this election was absolutely stolen.

Kelly: … I agree with you, by the way.

Morris: … You asked me if I was confident that it had been stolen. I certainly am, and I think we have to fight and fight and fight to get the truth out here about Dominion and about the recounts….[602]

---

[601] *See* Compl. ¶ 248(c).
[602] *Id.*

91

## 2. *Omitted Context Offered by Newsmax*

Mr. Morris began his segment by voicing "numerous concerns" about the Election, including that "vote counts jumped astronomically" for former President Biden in Michigan while President Trump's did not, and that several counties in Wisconsin had "ballooning turnouts, 20% higher than normal."[603] Mr. Morris then stated, "I believe that this election was absolutely stolen."[604] Mr. Kelly responded, "I agree with you, by the way."[605]

Mr. Kelly later asked Mr. Morris, "Are you confident that this thing can be fixed?"[606] Mr. Morris responded, "It's very possible that Biden will be the next President. You asked me if I was confident that it had been stolen. I certainly am. And I think that we have to fight, and fight, and fight to get the truth out there. About Dominion and about the recounts…."[607] Mr. Morris then pressed viewers to "contact [congressmembers] by phone or by email demanding a fair recount."[608]

## 3. *Statement C Asserts Facts*

Newsmax argues that "both [Messrs.] Morris' and Kelly's comments are pure opinion because [Mr.] Morris disclosed the basis for his views (with which [Mr.] Kelly agreed)."[609] Also, "[Mr.] Kelly's comment that he 'agree[s] with' [Mr.] Morris immediately followed [Mr.] Morris opining that the election was stolen, well before [Mr.] Morris even mentioned Dominion."[610]

---

[603] Def. Mot. at 91.
[604] *Id.*
[605] *Id.*
[606] *Id.* at 22, 55.
[607] *Id.*
[608] *Id.* at 91.
[609] *Id.*
[610] *Id.*

The Court finds that Statement C meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Although Dominion is not mentioned by name until later in the Statement, a reasonable viewer would understand that, in context of the entire statement, Mr. Morris was asserting that the election was stolen *by Dominion*. In other words, Mr. Morris' later statement tied Dominion into the statements that immediately preceded it.

Also, in context, Mr. Morris asking viewers to demand a fair recount leads the reasonable viewer to draw the same conclusion as Mr. Morris—that a recount is necessary *because Dominion* stole the Election.

As such, the Court finds that Statement C asserts facts and is not a protected opinion.

## D. STATEMENT D

Statement D is from an episode of *National Report* on November 16, 2020.[611]

### 1. *Excerpt from Dominion*

Powell: We're fixing to overturn the results of the election in multiple states. And President Trump won by, not just hundreds of thousands of votes, but by millions of votes, that were shifted by this software that was designed expressly for that purpose. We have sworn witness testimony of why the software was designed; it was designed to rig elections.

…

Rechenberg: And Joe, I'll go back to you then, too, because it wasn't just the observers staying out of the counting area, it was also this Dominion voting service, this – this technology here. What have you researched about that, and what's the Trump legal team doing in regards to Dominion?

DiGenova: Well, the bottom line about Dominion is – is that it is a suspect company. … It has an origin in Venezuela with friends of Hugo Chavez. The company that runs it now has the counting done overseas in Germany and Barcelona.[612]

---

[611] *See* Compl. ¶ 248(d).
[612] *Id.*

### 2. *Omitted Context Offered by Newsmax*

The segment began with a "live update from Logan Ratick, a Newsmax correspondent in Washington," who played a clip from the Powell Fox Interview, as quoted in full above.[613] Newsmax asserts that in the Powell Fox Interview, Ms. Powell specifically referenced the Whistleblower Affidavit.[614]

Newsmax also offers that "[Ms.] Rechenberg's question did not immediately follow the Powell clip quoted by Dominion; the two are in fact separated by four transcript pages."[615]

### 3. *Statement D Asserts Facts*

Newsmax asserts that Statement D is not an assertion of fact because "[Ms.] Rechenberg was merely asking a barebone question—what is the Trump legal team doing in regards to Dominion?—without injecting any factual statements or insinuations."[616]

The Court finds that Statement D meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Similarly to Statement B, airing the Powell clip implies to a reasonable viewer that Ms. Powell's claims are based on facts that are capable of being proven true or false: President Trump won the Election by millions of votes, Dominion purposely shifted votes, Dominion software was designed expressly for the purpose of shifting votes, and President Trump's legal team has sworn witness testimony verifying that Dominion was designed to rig elections.

Ms. Rechenberg's subsequent statement also asserts a fact—"it wasn't just the observers staying out of the counting area, it was also this Dominion voting service." This statement uses

---

[613] *See* Def. Mot. at 22-23.
[614] *Id.*
[615] Def. Opp'n at 25.
[616] Def. Mot. at 92.

94

conclusory language to assert a claim that is capable of being proven true or false.  The context also creates an inference to a reasonable viewer that the assertion is factual.

While a portion of Mr. diGenova's statement includes language implying that he was asserting his own opinion that Dominion is a "suspect company," the notion is negated by the rest of his statement which asserts facts that are capable of being proven true or false: Dominion has origins in Venezuela with friends of Hugo Chavez, and Dominion's vote counting is completed overseas in Germany and Barcelona.  A reasonable viewer would conclude that these assertions are factual, especially after airing the Powell clip which concerned similar claims about Dominion.

As such, the Court finds that Statement D asserts facts and is not a protected opinion.

### E. STATEMENT E

Statement E is from an episode of *American Agenda* on November 17, 2020, where Mr. Morris appeared as a live on-air guest.[617]

#### 1. *Excerpt from Dominion*

Childers: … you know, everyone saw the statement that came out allegedly from the DHS that said this was the safest election ever, I think, in the history of elections.  But what people did not know, I didn't realize, is sitting on that board of the Department of Homeland Security, Cybersecurity and Infrastructure Security Agency, was, in fact, Dominion and Smartmatic.

Morris: Right, that's true.  And also remember, Dominion is a – kind of a shell company.  The real owners, the real motivators of Dominion are the Chinese Communist Party and two Chavez supporters in Venezuela, who shortly after Chavez seized power, invented the Dominion Voting System as a method of stealing elections in Venezuela.  And as a result, they were kicked out of Venezuela, Argentina, and a whole host of other countries….

Sellers: … By the way, folks, you can get Dick's up-to-the-minute news by going to DickMorris.com, subscribing free.[618]

---

[617] *See* Compl. ¶ 248(e).
[618] *Id.*

95

### 2. *Omitted Context Offered by Newsmax*

Newsmax asserts that "early in" this episode, [Ms.] Robinson "reported on the Whistleblower Affidavit."[619]  Mr. Morris merely "repeated the [Whistleblower] Affidavit's central claim, stating that Dominion's voting system was created in Venezuela to steal elections."[620]

Newsmax also contends that Mr. Morris declared his portion of the Statement about Dominion "unprompted."[621]

### 3. *Statement E Asserts Facts*

Newsmax does not argue that Statement E is a protected opinion.  Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement E meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Ms. Childers' statement advances that Dominion, "*in fact*," sits on the board of the Department of Homeland Security, Cybersecurity and Infrastructure Security Agency.  A reasonable viewer would view this statement as factual, and it is also capable of being proven true or false.

Morris confirms Ms. Childers' assertion by stating, "*Right*, that's *true*."  A reasonable viewer would see this statement as a verification of the preceding claim about Dominion.

Morris then expresses factual assertions about Dominion that are capable of being proven true or false: Dominion is a shell company, the real owners and motivators of Dominion are the Chinese Communist Party and two Chavez supporters in Venezuela who invented the Dominion

---

[619] Def. Mot. at 82.
[620] *Id.*
[621] *Id.* at 57.

Voting System as a method of stealing elections in Venezuela, and Dominion was kicked out of Venezuela, Argentina, and other countries. A reasonable viewer would conclude that these statements are factual, and that the events actually occurred.

As such, the Court finds that Statement E asserts facts and is not a protected opinion.

## F. STATEMENT F

Statement F is from an episode of *National Report* on November 17, 2020, where Mr. Byrne appeared as a live on-air guest.[622]

### 1. *Excerpt from Dominion*

Rechenberg: If you don't mind, kind of break down how you're connected to this Dominion machine voting system and why you have some concerns about it.

Byrne: This election was hacked. This election was hacked. The outcome has been rigged. I was a – I did not vote for Trump. I'm a libertarian – small "L" libertarian – never voted Republican or Democrat for President in my life. I'm saying this election was rigged. I'm a CEO who built a $2 billion tech company. I was – I don't mean to sound like I'm beating my chest. I was national entrepreneur of the year, you go back a decade, for building a $2 billion tech company, Overstock. I know what I'm talking about. I'm – yeah, I'm also a Ph.D. from Stanford and a Marshall scholar [inaudible]. I'm putting all that credibility on the line. This election was hacked, the outcome was rigged and should be completely ignored or discounted, I mean, through the court system. The courts should throw it out.

Rechenberg: Right. You sound like Trump's legal team right now, so we're all on the same page. You sound like what their claims are as well, and clearly you have the experience and the expertise in regards to maybe shedding some light on how you know that to be true, yeah.

Byrne: Okay. Here's how I know that. I'm backing – I have the data incidentally. I have the data, the electronics, everything. … This is how it came about. In 2018, the Dallas election had irregularities. The Texas state government hired a[n] elite cyber security company to go in and study what had happened in 2018, and they reverse engineered it. And when you reverse engineer something, that's when you take the final product and you sorta get a bunch of people to study it and – they break it apart and figure out how you built it so they can go copy it. These guys reverse engineered the 2018 Dallas irregularities which turned out to be a hack. Dominion – Dominion ran it. It was Dominion's technology that ran it. … I'm putting my – I was a Marshall scholar, a Ph.D. from Stanford. I built a $2 billion

[622] *See* Compl. ¶ 248(f).

97

company. I'm putting it all on the line. This entire election was hacked. It's far easier to have hacked this than a PayPal or your Venmo account.

Rechenberg: Sure. I mean, we've seen hacks on major social media outlets before in this year alone. My mind goes to Twitter. Are you in touch with the Trump campaign, and would you advise when they are pursuing these lawsuits specifically about Dominion, that they would bring on board someone who would be able to prove that they could, in fact, change votes for Donald Trump to Joe Biden? Would that be provable in court if you brought on the right person?

Byrne: Absolutely provable. We have the data. We have the data. You do not have to worry. The only question is how quickly can the process intake versus how quickly the goons are trying to shut down the process so they can seal this all in cement. Now, I'm saying this again. I did not vote for Mr. Trump. I respect him. He got elected President. He's – so this isn't a Trump supporter coming out and saying this. I'm a tech CEO, national entrepreneur of the year for building a tech company, if you go back about – Ernst and Young about 10 years ago. I know what I'm talking about, and this thing is child's play to have beaten. It's embarrassing. And Trump is actually correct, his campaign is correct.

Rechenberg: Have they reached out to you?

Byrne: I'm one step ahead of the sheriffs myself because of the fact that I've come out about some things, so I don't work for them, anything like that. I'm not a donor to them, but I've been using my own resources to unscramble this and I'm trying to feed it into the system. Yes, the system is taking it in. They have their other sources, but we have all the goods, they're absolutely correct.

Rechenberg: And do you believe it was millions of votes that were again flipped from Donald Trump to Joe Biden?

Byrne: Well, the main event is not the total number of millions. It was not widespread deep. It was narrow and deep. It was very strategic.

Rechenberg: In select states, you're saying?

Byrne: Select counties. … Five counties that really matter. And they realized if you hack these five – well, they're very – a small number of places, if you defeated the election, you could flip the states, and you could flip the – from that, you can flip the electoral college. And how it was done – I mean, people can see this in news, they already know, if you think about this. Doesn't it seem a little odd that Mr. Biden was behind in states, you know, 800 – 600,000 votes, and then he has this come from behind victory and wins by 14,000?

Rechenberg: I know. That's what so many people are asking. That is what a lot of people are asking.

Byrne: 800,000.[623]

### 2. Omitted Context Offered by Newsmax

Newsmax asserts that "early in" this episode, Ms. Robinson "reported on the Whistleblower Affidavit."[624] Newsmax contends that Mr. Byrne "echoed" the Whistleblower Affidavit's claims.[625]

### 3. Statement F Asserts Facts

Newsmax maintains that "[Ms.] Rechenberg was clearly asking questions—not making statements of fact. She was probing Byrne for information or asking his views on different matters."[626] Newsmax argues, "Asking a guest to state what they believe (even if their belief may be controversial) or what support they have for their allegations is what journalists 'routinely and necessarily' do—they 'ask questions in order to obtain information.'"[627]

Newsmax also contends:

> [Mr.] Byrne's comments claim the "election was rigged," but not by Dominion. Instead, he contends that Dominion's systems can be "hacked" and speculates that unidentified persons could have hacked voting systems in the "[f]ive counties that really matter" to "flip the Electoral College." … [N]o reasonable viewer would understand [Mr.] Byrne to have made the nonsensical claim that Dominion hacked itself.[628]

The Court finds that Statement F meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

In response to a question from Ms. Rechenberg specifically mentioning Dominion, Mr. Byrne stated that the Election was hacked, and the outcome was rigged. In context, a reasonable

---

[623] *Id.*
[624] Def. Mot. at 82.
[625] *Id.*
[626] *Id.*
[627] *Id.* (citing *Abbas*, 783 F.3d at 1339).
[628] Def. Opp'n at 27.

viewer would find that by answering a question *about Dominion*, Mr. Byrne is asserting that *Dominion* hacked and rigged the Election. Also, this statement is capable of being proven true or false.

Ms. Rechenberg affirmed Mr. Byrne's preceding statement by stating, "*Right*. … we're all on the same page." This statement implies to a reasonable viewer that Ms. Rechenberg accepts Mr. Byrne's claims about Dominion as factual.

Ms. Rechenberg then asked how Morris *knew* these claims to be *true*, which a reasonable viewer would see as verification of the preceding claims. Mr. Byrne responded with factual assertions that he "has the *data*" to support his conclusion that Dominion hacked and rigged the Election, and further that Dominion previously caused irregularities in a 2018 Dallas election. These claims are capable of being proven true or false, and a reasonable viewer would find these assertions as factual.

Ms. Rechenberg then asked Mr. Byrne if a voting fraud claim against Dominion would be provable in court, and Mr. Byrne responded conclusively, "*Absolutely provable*. We have the *data*. You do not have to worry." This statement implies facts, unknown to the viewer, exist to justify Mr. Byrne's claims. This would lead the reasonable viewer to come to the same conclusion as Mr. Byrne—that Dominion hacked and rigged the election.

Finally, following a question from Ms. Rechenberg about "vote flipping," Mr. Byrne stated that between 600,000 and 800,000 votes were "flipped" in at least five counties. When considered in context with the preceding statements about Dominion, a reasonable viewer would understand that Mr. Byrne is implying that *Dominion* "flipped" between 600,000 and 800,000 votes in five counties. Again, this assertion is capable of being proven true or false.

As such, the Court finds that Statement F asserts facts and is not a protected opinion.

## G. STATEMENT G

Statement G is from an episode of *Greg Kelly Reports* on November 17, 2020, where Ms.

Powell appeared as a live on-air guest.[629]

### 1. Excerpt from Dominion

Powell: … we know Dominion has a long history of rigging elections. That's what it was created to do to begin with. … We've got increasingly mounting evidence of significant fraud across multiple states that cast in the question the validity of the elections in every swing state; including Nevada and Arizona and Michigan, Wisconsin, Georgia. And it went beyond that, too.

Kelly: You know regarding Dominion …

Powell: And worse than that, it had a backdoor so it could be manipulated by anyone who could access it through that backdoor. And that was a deliberate feature the affidavit of the young military officer we provided yesterday to the public explains how it was created for that very purpose, so … Hugo Chavez would never lose another election. And he did not after that software was created. He won every single election. And then they exported it to Argentina, and other countries in South America, and then they brought it here. And they – it's a foreign company no matter how you look at it. So they've already violated the President's order against foreign interference in our elections. Our votes were actually eventually counted in Barcelona, Spain or Frankfurt, Germany on foreign servers. It's absolutely stunning. And what's really stunning is the effort that is being mounted against getting the truth out on this. But you have to realize that every tech company, every media company, every social media company, scads of globalist corporations have been doing business in countries with these dictators that have been installed through this rigged election system for decades. The corruption is actually worldwide [inaudible] going to upset a countless number of elections across this country and – and around the world.

Kelly: All right.

Powell: So we need to do that to get rid of the corruption.

Kelly: It does make a lot of sense now…

Powell: … We can – got the evidence from the word – the own mouths of the guy who founded the company. I haven't even had a chance to get that out to the public yet, but they admit – the founder of the company admits, he can change a million votes no problem at all.

---

[629] *See* Compl. ¶ 248(g).

Kelly: The founder of Dominion admitted a long time ago? Recently to you? Can – tell us more, please.

Powell: Publicly. I will – I will tweet out the video later, and I'll tag you in it.

Kelly: Please do. @GregKellyUSA if you don't mind….

…

Powell: … I think we'll find he had at least 80 million votes. The only reason the glitches happened in the system was because he was so – he had so far many more votes than they had calculated in advance, their algorithms wouldn't perform the functions they had originally performed or were set to perform. They couldn't make up the vote count he had gotten so many hundreds of thousands more than they planned. So that's when they had to stop the counting and come up with a way to back fill the votes or destroy votes for Trump while they fabricated votes for Biden.

Kelly: Sidney Powell, who is a former federal prosecutor, by the way, spent ten years working for the government. Good luck. And by the way, very quickly, you have evidence, it's coming in fast. There is a reason for not making public, correct? I mean, you're going to have a hostile media picking it apart, possibly trying to destroy your case before you can even make it; is that part of your thinking? Very briefly, if you don't mind.

…

Kelly: Well, millions are praying for you and with you. And find her on Twitter, the least we can do. SidneyPowell1. @SidneyPowell1, the numeral one. We appreciate it so much. Good luck, and please stay safe.[630]

### 2. Omitted Context Offered by Newsmax

The segment began with Mr. Kelly reading a Twitter post from Ms. Ellis which stated: "BREAKING: This evening, the county board of canvassers in Wayne County, MI refused to certify the election results. If the state board follows suit, the Republican legislator will select the electors. Huge win for [Trump]."[631]

---

[630] *Id.*
[631] Def. Mot. at 60.

Mr. Kelly then asked Ms. Powell about the "situation in Michigan."[632]  Ms. Powell

responded, as quoted in full above, "We know that Dominion has a long history of rigging

elections.  That's what it was created to do to begin with…."  Ms. Powell then "specifically

cit[ed]" the Whistleblower Affidavit by stating, as quoted in full above, "We've got increasingly

mounting evidence of significant fraud across multiple states…."[633]

Mr. Kelly then showed the audience a "Dominion contract with Santa Clara County, CA,

that included a provision stating that staff could 'adjust tally based on review of the scanned

ballot images.'"[634]  Ms. Powell then stated, as quoted in full above, "And worse than that, it had

a backdoor so it could be manipulated by anyone who could access it through that backdoor…."

Later in the episode, "[Mr.] Kelly cited the October 2020 PBS report documenting

vulnerabilities in Dominion voting machines.  It stated that 'election security experts … have

uncovered several troubling issues' including vulnerabilities and serious bugs that could make

candidates 'disappear[] from screens.'"[635]

### 3.  Statement G Asserts Facts

Newsmax does not argue that Statement G is a protected opinion.  Regardless, the Court

will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement G meets both elements of Colorado's two-part test to

determine whether a statement is actionable as defamation.

Throughout the Statement, Ms. Powell asserts of fact about Dominion—*we know*

Dominion has a long history of rigging elections and that's what it was created to do to begin

with, there is increasingly mounting evidence of significant fraud across multiple states, there

---

[632] *Id.*
[633] *Id.* at 82.
[634] *Id.* at 25, 61.
[635] *Id.* at 26, 62.

was a backdoor into the Dominion systems that would allow someone to flip votes, Dominion was created for the purpose of ensuring that Hugo Chavez would never lose another election, and Dominion counted the Election's votes in Barcelona, Spain or Frankfurt, Germany on foreign servers. A reasonable viewer would conclude that these statements are factual and are capable of being proven true or false.

Mr. Kelly's statement in agreement, "[i]t does make a lot of sense now," would be seen by a reasonable viewer as confirmation of the claims previously asserted by Ms. Powell.

As such, the Court finds that Statement G asserts facts and is not a protected opinion.

## H. STATEMENT H

Statement H is from an episode of *Wake Up America* on November 17, 2020, where Ms. Robinson appeared live.[636]

### 1. *Excerpt from Dominion*

Robinson: … [I]n the last 24 hours, [Powell] has released a very long detailed whistleblower statement that she says is by a high-ranking military official with firsthand knowledge of Dominion Voting Systems, and how they can be misused. In the statement, the whistleblower describes the evolution of Dominion Voting machines and Smartmatic software. Smartmatic software is what was used by Hugo Chavez and his successor to fix elections in Venezuela. This whistleblower said that the software was – was developed in conjunction with Chavez in order to appease his desires to manipulate the vote in Venezuela in a way that could not be detected. The whistleblower go to – went on to describe in detail his firsthand experience watching the votes being manipulated in Venezuela in their 2013 presidential elections. He goes on to say that the Smartmatic software is – that all the vote tabulating machines, including Dominion Voting machines, uses a derivative or a descendant of Smartmatic software, saying that it's in the DNA of every software program used by every voting machine. In the statement he says quote: "The fact that the voting machine displays a voting result that the voter intends and then prints out a paper ballot which reflects that change does not matter. It is the software that counts the digitized vote and reports the results. The software itself is the one that changes the information electronically to the result that the operator of the software and vote counting system intends to produce that counts." He says that he came forward because he's concerned about what he's seeing in the 2020 presidential election saying, quote: "The circumstances and events are eerily

---

[636] *See* Compl. ¶ 248(h).

reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela." He describes what he saw on election night in five key, battleground states using Dominion Voting Systems, that includes Georgia, where the vote count was stopped and went offline for several hours when President Trump was ahead in the vote; when they came back online, later in the wee hours of the morning, then Joe Biden had taken the lead significantly.[637]

### 2. Omitted Context Offered by Newsmax

Newsmax asserts that Ms. Robinson merely offered a "live, on-air recitation and summary of the Whistleblower Affidavit, which was filed in court that day."[638]

### 3. Statement H Asserts Facts

Newsmax does not argue that Statement H is a protected opinion. Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement H meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation. Although Ms. Robinson uses language like "the whistleblower describes" and "he says," a reasonable viewer would understand that Ms. Robinson was asserting that these statements are facts about Dominion, not her opinions. Also, these claims are capable of being proven true or false.

Also, Ms. Robinson prefaced the segment by noting that, according to Ms. Powell, the statements are from a "high-ranking military official with firsthand knowledge of Dominion Voting Systems, and how they can be misused," indicating the authenticity of the claims to viewers.

As such, the Court finds that Statement H asserts facts and is not a protected opinion.

---

[637] *Id.*
[638] Def. Mot. at 62.

## I. STATEMENT I

Statement I is from an episode of *Stinchfield* on November 19, 2020.[639]

### 1. *Excerpt from Dominion*

Powell: … votes from President Trump and flipped them to President Biden; which we might never uncovered had the votes for President Trump not been so overwhelming in so many of these states that it broke the algorithm that have been plugged into the system, and that's what caused them to have to shut down.

Stinchfield: This is unbelievable. That's President Trump's attorney, Sidney Powell, laying out evidence that a corrupt algorithm in the Dominion Voting System starts switching votes from President Trump to Biden on election night, and it's such a massive scale it crashes the system. That's when we see the [inaudible] them all stop counting. This is why multiple states stopped counting ballots in the middle of the night, she says. But she also says the states, what they did afterwards, was absolutely shocking.

Powell: That's when they came in the back door with all the mail-in – mail-in ballots, many of which they had actually fabricated. Some were on pristine paper with identically matching perfect circled dots for Mr. Biden; others were shoved in, in batches. They're always put in a certain number of batches, and people would rerun the same batch. This corresponds to our statistical evidence that shows incredible spikes in the vote counts at particular times.

Stinchfield: So she says the algorithm was designed to crash allowing these states to shut down and usher in thousands of fake ballots for Biden. It all makes sense now, if this is true, right? And she says it proves all the research that our investigative unit here on *Stinchfield* has been uncovering….

…

Stinchfield: … The bottom line is, the media is going to ignore all this anyway. Not us though. That's Jenna Ellis, of course, ripping into the media naysayers who been hounding the president's campaign for proof of widespread voter fraud. Today the campaign, as we said, dropped a bomb on the left detailing some of the evidence they have been able to compile so far and it is damning….[640]

---

[639] *See* Compl. ¶ 248(i).
[640] *Id.*

### 2. *Omitted Context Offered by Newsmax*

Newsmax contends that at the beginning of the episode, Mr. Stinchfield described Ms. Powell's claims as "being backed by 'sworn witness affidavits.'"[641]

### 3. *Statement I Asserts Facts and Mixed Opinions*

Newsmax does not argue that Statement I is a protected opinion. Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement I meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Similarly to Statements B and D, airing the Powell clips implies to a reasonable viewer that Ms. Powell's claims are based on facts that are capable of being proven true or false: Dominion flipped so many votes from President Trump to former President Biden that it broke the system, and Dominion's algorithm was designed to crash to allow for states to enter fake votes for Biden.

Mr. Stinchfield's statements following the Powell clips are mixed opinions because Mr. Stinchfield implies that Ms. Powell's assertions justify his opinions—"*it all makes sense now*, if this is true, right?" and "it *proves* all the *research* that our investigative unit here on *Stinchfield* has been uncovering." Colorado recognizes that mixed opinions may be actionable as defamation.

After playing the clip of Ms. Ellis, Mr. Stinchfield asserts that the Trump campaign "dropped a bomb on the left detailing some of the *evidence* they have been able to compile so far and it is damning." Although the statements "dropped a bomb" and "it is damning" may be considered "rhetorical hyperbole," the context of the statement shows that Mr. Stinchfield was

---

[641] Def. Opp'n at 40.

referring to the preceding assertions about Dominion's role in the Election. This would lead a reasonable viewer to conclude, as a fact, that the Trump campaign has evidence of Dominion committing election fraud. This claim is capable of being true or false.

As such, the Court finds that Statement I asserts facts and mixed opinions, and is not a protected opinion.

## J. STATEMENT J

Statement J is from the *Chris Salcedo Show* on November 19, 2020, where Mr. Stinchfield appeared as a live on-air guest.[642]

### 1. *Excerpt from Dominion*

Stinchfield: … but I think if you're going to prove fraud, the electronic pathway to that is the way you're going to have to do it, and it may be the most simple way to do it. We've been on the forefront on our show *Stinchfield* of going into the Dominion Voting Systems….

Salcedo: … *Stinchfield* has been very good on the forefront of exploring the Dominion Voting Machines, *Salcedo Show* has been exploring and trying to sound the alarm bells for – for months now, about how our votes are tabulated outside the country. Rudy Giuliani spoke on this today. And – and just listen to him lay this out. I – my jaw dropped because it was – A, it was validation from what we've been reporting. And B, to hear Rudy Giuliani talking about it was just amazing. Listen.

Giuliani: … you should be more astounded by the fact that our votes are counted in Germany and in Spain by a company owned by affiliates of Chavez and Maduro….

Salcedo: … number two – I mean, the fact they were able to lay out that case, Grant, was just – jaw dropping to me.

Stinchfield: … we saw, Chris that these votes had gone through a server in Frankfurt, Germany. I know there was a lot of talk about what happened to these servers in Frankfurt, Germany; what's confirmed and what's not. But what I can tell you is the people that I've talked to absolutely proved that votes were going from certain states through this server. And lo and behold, we put up the IP address of that Frankfurt server, the next day, after *Stinchfield* aired that, the server was taken offline, Chris. You can't even find it anymore.[643]

---

[642] *See* Compl. ¶ 248(j).
[643] *Id.*

108

### 2. *Omitted Context Offered by Newsmax*

Newsmax asserts that "immediately following" the Press Conference, Mr. Salcedo and Mr. Stinchfield had a "'live and not scripted' discussion around whether Trump could prove fraud."[644] Newsmax also claims that "this episode was basically ad-libbed, after expected guest Lin Wood cancelled and Stinchfield was brought in as a last-minute replacement."[645]

Newsmax also offers that at the end of Mr. Stinchfield's first at-issue Statement, Mr. Stinchfield stated that his show "has been covering the story about Dominion and Smartmatic and that 'investigators' appearing on his show claimed it 'certainly is possible that these systems can be hacked and even used to switch votes.'"[646]

### 3. *Statement J Asserts Facts and Mixed Opinions*

Newsmax does not argue that Statement J is a protected opinion. Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement J meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Mr. Salcedo asserts that Dominion tabulated the Election votes "outside the country," then states that Mr. Giuliani "spoke on this today"—"this" meaning where Dominion counts its votes—and then played a clip of Mr. Giuliani stating that "our votes are counted in Germany and in Spain by a company owned by affiliates of Chavez and Maduro." While the Giuliani clip does not mention Dominion by name, the context of the statement shows that Mr. Salcedo offered the clip to Newsmax viewers to bolster his claim that *Dominion* ("a company owned by affiliates of

---

[644] Def. Mot. at 28, 67.
[645] *Id.* at 67-68.
[646] *Id.* at 67.

Chavez and Maduro") tabulated the Election votes outside the country ("in Germany and Spain"). These claims are capable of being proven true or false.

A portion of Statement J includes language implying that Mr. Salcedo was asserting his own opinion that the case is "jaw dropping" to him; however, the notion is negated by the rest of his statement which asserts facts.

Mr. Stinchfield asserted as a fact that "these votes"—in context, *Dominion's* votes—went through a server in Germany, and that "people" he has talked to "*absolutely proved*" his claim. This statement implies Mr. Stinchfield is privy to facts, unknown to the viewer, which justify Mr. Stinchfield's claims. This would lead the reasonable viewer to come to the same conclusion as Mr. Stinchfield—that Dominion's votes went through a server in Germany. This claim is capable of being proven true or false.

As such, the Court finds that Statement J asserts facts and mixed opinions, and is not a protected opinion.

## K. STATEMENT K

Statement K is from an episode of *The Howie Carr Show* on November 20, 2020, where Ms. Powell appeared via telephone as a live on-air guest.[647]

### 1. *Excerpt Offered by Dominion*

Powell: … a lot of evidence of fraud is going to be coming out next week. I've got just more than I can say grace over right now coming in every day. It only gets worse and worse. This was very widespread. Very deliberate. Very well-funded….

…

Powell: Yeah, we have a lot of extremely solid evidence. It's beyond impressive and absolutely terrifying….

…

---

[647] *See* Compl. ¶ 248(k).

Carr: So how many fraudulent votes do you think that Joe Biden had on his side … of the slate?

Powell: Probably at least ten million.

Carr: Ten million fraudulent votes?

…

Carr: So did – did most of these votes disappear for the President and appear for Joe Biden in the – in those states that are still being fought over or – or did this go on – how many states did this go on in?

Powell: I think the – well, there are several ways that they did this. One was an algorithm that I believe they ran nationwide, but I can't say that for sure yet, because we haven't had the time to run the data nationwide. But that would typically be the way it would be done. And certainly make it less apparent that it had been done in any one place if they ran the algorithm consistently across the country. So, for example, they can dial it – literally dial it – to every time there was a vote for Trump or – that it be weighted at 0.75, and every vote for Biden be weighted at 1.25. … So I don't think any state was safe from it, despite the best efforts of some not to use the Dominion Voting Systems which were clearly fraudulently created and sold.

…

Powell: … and then the other thing they did, where they had the real problem, was Trump won so overwhelmingly in all the states that had to cut off their machines, that they had to cut off their machines for hours to go in and backfill additional votes and move things around even more to make sure that Biden won. … We found … pristine ballots with only a computer-made dot for Biden, and all of them were alike. They could just stick those in the machine in batches and run them through repeatedly and count, you know, hundreds of thousands of votes that way. There's a drag-and-drop feature to take Trump votes and put them in a trash can or assign them to a third-party candidate or move them from a third-party candidate to Biden. I mean, I think they did absolutely everything. And we also have information that one of the high people in Dominion Voting Systems went to Detroit to operate the system himself there that night at the – the Detroit center.

…

Carr: Let me ask about this guy Eric Coomer. He's – I think he – he works for Dominion, he's – he's Berkeley, California University of California grad. He's the one who was allegedly – there's a – he was on a conference call or something, a Zoom, with – with Antifa and he said, supposedly: Don't worry about Trump, I've

111

already – I've already made sure he's going to lose the election. … Is that true, for – for starters … ?

Powell: Yes.

Carr: It's true?  You have that … ?

Powell: It's true.  Yeah, we – we have an affidavit to that effect and we have … I think we have a copy of the call.

…

Powell: And also Dominion has shuttered up both of their offices in Canada where they shared an office floor with a George Soros entity. … And they have moved their office in Denver.  And, of course, I'm sure there was a lot of document shredding and things, quote, "lost," end quote, in that process.  You know, the FBI should have moved on all of this immediately; all of the voting machines should have already been impounded.  The software should have been secured and examined….

…

Powell: … in the meantime we will be producing additional evidence to help the public understand the breadth and depth of this international, frankly criminal conduct; and it will also reflect substantial foreign interference in our election.

Carr: Sidney Powell … Including China, correct?

Powell: Yeah.  China, Iran, Serbia, Lichtenstein.  Multiple places.[648]

### 2.  *Omitted Context Offered by Newsmax*

Newsmax offers no additional context regarding Statement K.

### 3.  *Statement K Asserts Facts*

Newsmax does not argue that Statement K is a protected opinion.  Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement K meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

---

[648] *Id.*

Ms. Powell initially makes assertions about voting fraud generally without naming Dominion. After stating that the Trump legal team has a "lot of extremely solid *evidence*" of voting fraud, that former President Biden had "at least ten million" fraudulent votes, and that "they" ran an algorithm nationwide to "dial" the machines to give more weight to former President Biden votes, Ms. Powell then stated that "I don't think any state was safe from it, despite the best efforts of some not to use the Dominion Voting Systems which were clearly fraudulently created and sold." When considering the last statement in context, a reasonable viewer would conclude that Ms. Powell was referring to *Dominion* in her preceding statements. Also, these claims are capable of being proven true or false.

Ms. Powell also makes an assertion of fact that a Dominion employee, Mr. Coomer, said that he had "made sure [Trump was] going to lose the election." Ms. Powell states that the Trump legal team has an "affidavit" verifying this claim, indicating the authenticity of the claims to viewers. This statement is capable of being proven true or false, and a reasonable viewer would conclude this statement to be factual.

Ms. Powell also asserts that Dominion "shuttered up both of their offices in Canada where they shared an office floor with a George Soros entity" and moved to Colorado. Ms. Powell then expresses, "*of course, I'm sure*, there was a lot of document shredding and things, quote, 'lost,' end quote, in that process." This assertion alone may seem like an opinion, but when read in context with the rest of the Statement, a reasonable viewer would conclude that Ms. Powell was asserting this information as a fact.

Finally, Ms. Powell states that Trump's legal team *will* be producing *evidence* of "international, frankly criminal conduct; and it will also reflect substantial foreign interference in our election" by China, Iran, Serbia, Lichtenstein, and others. These claims are capable of being

113

proven true or false. Also, when considering the context of the conversation about Dominion immediately preceding this claim, a reasonable viewer would conclude that Powell is asserting claims about *Dominion's* "international" "criminal conduct" and "substantial foreign interference."

As such, the Court finds that Statement K asserts facts and is not a protected opinion.

## L. STATEMENT L

Statement L is from an episode of *The Count* on November 21, 2020, where Ms. Powell appeared via telephone as a live on-air guest.[649]

### 1. Excerpt from Dominion

Schmitt: If you want to shut the media up, and they say that you guys have nothing – when will you have some of the stuff that's – that's this hardcore evidence in paper and writing?

Powell: Well, frankly, the affidavits we've already introduced are hardcore evidence. They're first-hand testimony of witnesses who saw how and why the system was created and how it worked to accomplish the objective for Hugo Chavez. … We've got all kinds of different evidence. And then we've the statistical and mathematical evidence that's absolutely irrefutable. … And we've got other testimonial evidence that appears to be coming in now to indicate the Democrats literally added 35,000 votes to every Democratic candidate to begin with.

…

Powell: … frankly, with everything we've got, these should be criminal prosecutions at a – at a significant level for fraud and conspiracy to defraud … provable beyond a reasonable doubt. There are hundreds of thousands of people in our criminal system right now in prison who were convicted on far less evidence of guilt than we have here.

…

Powell: … and they can see it. Everybody saw it on election night. They saw votes being subtracted from President Trump and appearing on the Biden side of the scale. And that's exactly what this Dominion System was designed to do. And we have … eyewitness testimony to its entire creation for that very purpose.

---

[649] *See* Compl. ¶ 248(l).

…

Schmitt: If this happened, how big of a conspiracy – how many people would have had to been in on something like this?

Powell: Oh gosh. Probably thousands, including the people running the machines at each of the polls and polling centers. We know, for example, that one of the higher ups of Dominion went to Detroit the night of the election to – to handle things himself. And we also have evidence that there were any number of VPN lines open to the Internet for foreign actors to be meddling in it.

…

Powell: … our key – our witness from Venezuela who saw it all created and how it worked, said that he knew as soon as the machines were turned off in those key states, it was because we the people in voting Trump – and voting for Trump in a landslide election, had essentially broken the algorithm that had been preprogrammed into the machine….

…

Powell: … Georgia's probably going to be the first state I am going to blow up, and – and [Georgia governor] Mr. Kemp and the Secretary of State need to go with it, because they're in on the Dominion scam with their last-minute purchase or award of a contract to Dominion of $100 million. The State Bureau of Investigation for Georgia ought to be looking into financial benefits received by Mr. Kemp and … the Secretary of State's family about that time. And another benefit, Dominion was created to award, is what I would call, election insurance. That's why Hugo Chavez had it created in the first place.

…

Powell: … And it looks like it – thirty-five thousand votes were added to every democratic candidate.[650]

### 2. *Omitted Context Offered by Newsmax*

Prior to Ms. Powell stating that there "should be criminal prosecutions … for fraud," Mr.

Schmitt asked whether Ms. Powell thought she had "irrefutable evidence."[651]

---

[650] *Id.*
[651] Def. Mot. at 30.

Newsmax asserts that "after hearing everything," Mr. Schmitt stated, "everything you're alleging frankly, is nuts."[652]

### 3. Statement L Asserts Facts and Mixed Opinions

Newsmax does not dispute that Ms. Powell's statements are statements of fact. For the same reasons as stated above regarding Ms. Powell's previous guest appearances, a reasonable viewer would understand that Ms. Powell is asserting provable facts regarding Dominion.

Newsmax instead argues that Mr. Schmitt's questions were not statements of fact; rather, Mr. Schmitt was "merely asking [Ms.] Powell questions germane to the credibility of [Ms.] Powell's statements."[653] "For instance, he asked her when she will have 'hardcore evidence' to support her statements. He was also testing the credibility of her claims when he inquired as to how big of a 'conspiracy' there would need to be to accomplish what [Ms.] Powell was asserting regarding electronically changing votes."[654] Newsmax argues that Mr. Schmitt was "doing what journalists 'routinely and necessarily' do—they 'ask questions in order to obtain information.'"[655]

The Court finds that Statement L meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

After watching the video of Statement L and considering its context, the Court finds that Mr. Schmitt's questions to Ms. Powell do not express opinion or rhetoric hyperbole. Rather, a reasonable viewer would conclude that Mr. Schmitt asked his questions to *verify* Ms. Powell's assertions of facts, not to express his opinion. Throughout the interview, Mr. Schmitt and co-

---

[652] *Id.*
[653] *Id.* at 93.
[654] *Id.*
[655] *Id.* (citing *Abbas*, 783 F.3d at 1339).

host Mark Halperin repeatedly ask Ms. Powell to produce evidence unknown to the audience to verify the truth of her claims about Dominion.

As such, the Court finds that Statement L asserts facts and is not a protected opinion.

## M. STATEMENT M

Statement M is from an episode of *The Benny Report* on November 23, 2020.[656]

### 1. *Excerpt Offered by Dominion*

<u>Johnson</u>: Finally, we get to Dominion Voting Systems. … Their voting systems are used in Venezuela. And their votes are counted off of American soil; if that tells you anything….[657]

### 2. *Omitted Context Offered by Newsmax*

Newsmax contends that toward the end of Mr. Johnson's "9-minute-long opening monologue on the election controversy," Mr. Johnson offered "commentary on Dominion and the value of paper ballots."[658]

Newsmax also provides that during his monologue, Mr. Johnson stated that Dominion's voting system "is about as trustworthy as Ilhan Omar's marriage certificates."[659]

Further, Newsmax adds that Mr. Johnson concluded his monologue by stating that Dominion is a Canadian company, and that the Canadian Election Board is "laughing at us" for using electronic voting.[660]

---

[656] *See* Compl. ¶ 248(m).
[657] *Id.*
[658] Def. Mot. at 70.
[659] *Id.* at 94.
[660] *Id.*

117

### 3. *Statement M Asserts Facts*

Newsmax argues, "While [Mr. Johnson's] claims may derive from statements by [] [Ms.] Powell and other members of the Trump Legal Team, [Mr.] Johnson did not repeat their accusations about Dominion being involved in any election fraud."[661]

Newsmax also contends that Mr. Johnson's commentary is "non-actionable hyperbole or opinion. *The Benny Report* is an opinion-based show, and that is especially true of Mr. Johnson's opinionated opening monologue."[662]

Further, Newsmax claims that Mr. Johnson's comments are "excerpted from an over-the-top rant against electronic voting that begins with his unchallenged quip that Dominion's systems are 'about as trustworthy as Ilhan Omar's marriage certificates.' … [Mr.] Johnson's commentary expresses his opinion about electronic voting and is not a defamatory statement of fact."[663]

The Court finds that Statement M meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Although Newsmax offers additional context showing that Mr. Johnson uttered a sentence of "rhetoric hyperbole," this does not negate the rest of the Statement where Mr. Johnson *did* assert facts about Dominion—that Dominion's voting systems "*are* used in Venezuela" and Dominion's votes "*are* counted off of American soil." These statements are capable of being proven true or false, and a reasonable viewer would conclude that Mr. Johnson's assertions were factual.

As such, the Court finds that Statement M asserts facts and is not a protected opinion.

---

[661] *Id.* at 93-94.
[662] *Id.* at 94.
[663] *Id.*

## N. Statement N

Statement N is from an episode of *Greg Kelly Reports* on December 7, 2020, where Ms. Powell appeared as a live on-air guest.[664]

### 1. Excerpt from Dominion

Kelly: Gosh, we're pulling for you. As you know, this is an opinion show and we're on your side. How are you holding up, first of all?

…

Kelly: You're still focused primarily on the Dominion Voting machines and the issues on a technical basis, correct?

Powell: … yes, we focused also on the systematic problem with the Dominion machines. We have an expert who has identified that the votes for Biden was 5% overall greater wherever there were Dominion machines than any of the other votes. That is essentially the amount of votes that it can flip and brag about being able to flip. We know from … one of our witnesses that these machines were created in Venezuela, and the entire process was started there to make sure Mr. Chavez won every election. And then, of course, the Wall Street Journal, I think, today featured Venezuela's rigged election for Maduro. This is the same technology. The same equipment. It came out of Venezuela to be used here. I would imagine our three-letter agencies have a role in it. We're essentially fighting the entire globalist elite power structure that wants to control the world for their own financial benefit….

Kelly: You know, two years ago, I would have said that sounds crazy; but after all that's happened, I think you're absolutely right. I think this is the way the world works. By the way, I do want to ask you about the servers overseas. Dominion reportedly has all kinds of internet connections and – for whatever reason they were counting the votes in places like Spain and Germany. You have seen the reports, maybe you know firsthand that – you know, some of these servers may or may not have been seized. Overseas equipment of Dominion taken possession of by forces friendly to the United States. Do you know anything about that?

Powell: … The Dominion system should never have been allowed in this country. They are internationally known. Our votes were counted in Frankfurt, Germany, and altered in Barcelona, Spain, and other places. We simply cannot allow that as the United States of America.[665]

---

[664] *See* Compl. ¶ 248(n).
[665] *Id.*

### 2. *Omitted Context Offered by Newsmax*

Newsmax offers that right before Mr. Kelly stated, "I think you're absolutely right," Ms. Powell stated, "And frankly, that includes a lot of American corporations that have international interests and want to do business with China, have made back deals with the Chinese, and untold numbers of politicians who have done the same thing."[666]

### 3. *Statement N Asserts Facts*

Newsmax does not dispute that Ms. Powell's statements represent facts. For the same reasons discussed above, a reasonable viewer would understand that Powell is asserting facts capable of being proven true or false regarding Dominion.

Rather, Newsmax argues that Mr. Kelly's questions to Ms. Powell—including whether Ms. Powell was "still primarily focused on Dominion voting machines" and whether any "overseas equipment of Dominion" had been seized "by forces friendly to the United States"— are not actionable because "a genuine effort to obtain information cannot be defamatory."[667]

Newsmax also asserts that Mr. Kelly's statement that Ms. Powell was "absolutely right" did not concern Dominion because it immediately followed the following statement by Ms. Powell:

> We're essentially fighting the entire globalist elite power structure that wants control of the world for their own financial benefit. And frankly, that includes a lot of American corporations that have international interests and want to do business with China, have made back deals with the Chinese, and untold numbers of politicians who have done the same thing.[668]

---

[666] Def. Mot. at 95-96.
[667] *Id.* (citing *Abbas*, 783 F.3d at 1339 (quoting 1 SACK ON DEFAMATION § 2:4.8)).
[668] *Id.* at 95-96.

Even when considering Newsmax's additional context and arguments, the Court finds that Statement N meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

When viewed in context, a reasonable viewer would conclude that Mr. Kelly's statements validate Ms. Powell's claims about Dominion. Mr. Kelly's initial statement, "[a]s you know, this is an opinion show and we're on your side," does not negate the rest of the Statement containing factual assertions about Dominion.

Although Mr. Kelly uses language like "I think," such language is not dispositive of whether the Statement is one of pure opinion. The Court must also consider the Statement's context to determine whether the Statement is "mere rhetorical hyperbole, not intended to be understood in its literal sense." In context, a reasonable viewer would conclude that Mr. Kelly's statements offer an endorsement of Ms. Powell's claims in a literal sense. Also, unlike in *Keohane*, none of Mr. Kelly's statements contain speculation or conjecture about Powell's claims concerning Dominion.

As such, the Court finds that Statement N asserts facts and is not a protected opinion.

## O. STATEMENT O

Statement O is from an episode of *John Bachman Now* on December 14, 2020, where Mr. Morris appeared as a live on-air guest.[669]

### 1. Excerpt from Dominion

<u>Morris</u>: … Bear in mind, Dominion was invented by people working for Hugo Chavez, the Venezuelan dictator after he, quote, "lost" an election. And he then decided to, quote, "win" the election by fixing the voting machines. And he expressly had them designed – it's written in the specs – that this should be so votes can be altered and not be traced. … And secondly, they're about to do the same damn thing on January 5th in Georgia with the same machines and the same result, and the Senate is at risk this time.

---

[669] *See* Compl. ¶ 248(o).

121

Bachman: … but fundamentally, nothing has really changed in that state for voters who are going to the polls … today.[670]

### 2. *Omitted Context Offered by Newsmax*

Newsmax provides that prior to Dominion's offered excerpt, Mr. Bachman mentioned that Trump's attorneys had a "lack of evidence" in a recent Wisconsin election lawsuit, then asked Mr. Morris, "Why did that happen?"[671]  Mr. Morris responded, "I have no idea," then Mr. Morris "blurted out" the Statement.[672]

Newsmax also offers that Dominion omitted the first part of Mr. Bachman's statement, that there is a "task force watching over for election fraud[,] … fundamentally, nothing has really changed in that state for voters who are going to the polls today."[673]

### 3. *Statement O Asserts Facts*

Newsmax does not argue that Statement O is a protected opinion.  Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

Even when considering Newsmax's offered omitted context, the Court finds that Statement O meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Mr. Morris asserts that Dominion *was* invented by people who worked for Hugo Chavez to ensure that he would win Venezuelan elections, and that it is "written in the specs" that Dominion can alter votes and not be traced.  This claim is capable of being proven true or false, and a reasonable viewer would conclude that Mr. Morris was asserting this statement as a fact.

---

[670] *Id.*
[671] Def. Mot. at 33.
[672] *Id.*
[673] Def. Opp'n at 30.

Mr. Morris then claims that "they"—in context, *Dominion*—are about to do the "same thing"—in context, *alter votes*—with the "same machines" and the "same result" in Georgia's senate election. Again, this claim is capable of being proven true or false, and a reasonable viewer would conclude that Mr. Morris was asserting this statement as a fact.

Mr. Bachman responded in agreement about Mr. Morris' claims, which would be seen by a reasonable viewer as confirmation of the facts asserted by Mr. Morris.

As such, the Court finds that Statement O asserts facts and is not a protected opinion.

## P. STATEMENT P

Statement P is from an episode of *Stinchfield* on December 17, 2020, where Mr. Lindell appeared as a live on-air guest.[674]

### 1. Excerpt from Dominion

Stinchfield: I want to bring in a guy now, who I know agrees with me … Mike Lindell … So look, Fox News, we all know, has problems. We know it's responsible for bringing a lot of viewers to Newsmax…

…

Lindell: … But I will say this, it's a blessing, because at 11:15, when they realized that the – all of algorithms broke in all those Dominion machines, that Donald Trump was going to win the presidency anyway, in spite of all the cheating, so they had to stop everything in the middle of the night, and then backfill votes and stop….[675]

### 2. Omitted Context Offered by Newsmax

"After [Mr.] Stinchfield—in a portion omitted by Dominion—asked [Mr.] Lindell about Fox News, [Mr.] Lindell began to discuss Fox's election night coverage, referring to Fox as

---

[674] *See* Compl. ¶ 248(p).
[675] *Id.*

123

'they'—for example, 'they don't call Florida for the president when it was impossible for Biden to win Florida.'"[676]

Newsmax asserts that Mr. Lindell then "blurted out," "unbidden," his portion of the Statement.[677] Newsmax also claims that Dominion "misquotes" the Statement and offers the following transcription:

> But I will say this, it's a blessing, because at 11:15 when they realized that the all the algorithms broke and all those Dominion machines that Donald Trump was going to win the presidency anyway, in spite of all the cheating, so they had to stop everything in the middle of the night and then backfill votes and stuff.[678]

Newsmax continues, "Although Dominion omits it, [Mr.] Lindell then continued to discuss Fox, beginning, 'And I put Fox right up there with….'"[679]

Newsmax adds that "shortly after [Mr.] Lindell's outburst," Mr. Stinchfield stated, "You know, you brought up Dominion. I've tried to reach out to them six, seven times. They've never called me back or returned my emails."[680]

### 3. Statement P Asserts Facts and Mixed Opinions

Newsmax does not argue that Statement P is a protected opinion. Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

The Court finds that Statement P meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Mr. Stinchfield's comment is a mixed opinion because it implies that there are facts, unknown to the viewer, which justify his impending statements—*I know* Lindell agrees with me, and *we know* Fox News is responsible for bringing a lot of viewers to Newsmax.

---

[676] Def. Opp'n at 31.
[677] Def. Mot. at 34, 73.
[678] Def. Opp'n at 31.
[679] *Id.*
[680] Def. Mot. at 34.

In context, when Mr. Lindell said "they," he was referring to Dominion—when *Dominion* realized that its "algorithms broke," *Dominion* stopped the vote count and "backfilled" the votes. These statements are capable of being proven true or false, and a reasonable viewer would conclude that Lindell was asserting these statements as facts.

As such, the Court finds that Statement P asserts facts and mixed opinions and is not a protected opinion.

## Q. STATEMENT Q

Statement Q is from an episode of *American Agenda* on December 18, 2020, where Mr. Morris appeared as a live on-air guest.[681]

### 1. *Excerpt from Dominion*

Morris: … This is actual intervention in the vote count. This is through Dominion software and Smartmatic. And the accusation here is that the vote count itself was altered and flipped through that software. You know, it's been proven in one county in Michigan….[682]

### 2. *Omitted Context Offered by Newsmax*

Newsmax claims that in the "middle of a conversation about foreign interference, [Mr.] Morris changed the topic" and "exclaimed" the Statement.[683]

Newsmax also offers that Mr. Morris followed up the Statement by stating that the "initial results" in Antrim County, Michigan, held that former President Biden "won it with 63 percent" but later that "Trump won it by 61 percent."[684]

---

[681] *See* Compl. ¶ 248(q).
[682] *Id.*
[683] Def. Mot. at 34, 74.
[684] *Id.* at 34-35.

### 3. *Statement Q Asserts Facts*

Newsmax does not argue that Statement Q is a protected opinion. Regardless, the Court will examine the Statement to determine whether it asserts a fact or opinion.

Even when considering Newsmax's offered context, the Court finds that Statement Q meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

In context, Mr. Morris is implying that *Dominion* committed an "actual intervention" in the Election's vote count, and further that the "accusation" that Dominion's software "altered and flipped" the vote count had been "*proven*" in Antrim County, Michigan. These claims are capable of being proven true or false, and a reasonable viewer would conclude that Mr. Morris was asserting these statements as facts.

As such, the Court finds that Statement Q asserts facts and is not a protected opinion.

## R. STATEMENT R

Statement R is from an episode of *Greg Kelly Reports* on December 18, 2020, where Mr. Ramsland appeared as a live on-air guest.[685]

### 1. *Excerpt from Dominion*

Kelly: That's Russell Ramsland, election technology and security expert, speaking before the election, and all of his concerns unfortunately came true. Russell Ramsland wrote the very important report on the craziness that happened in Antrim County, Michigan. Russell, welcome back to Newsmax. How are you tonight?

Ramsland: Good to be here.

Kelly: Thanks so much. So sir, your report, I think, was shocking. I thought it was very, very important, and you lay out in great detail all of the weirdness and the issues, and you've got the technical expertise and it made perfect sense….

Ramsland: … [T]he logs, had they been able to be published, show very clearly that the RCV algorithm was enacted, it shows very clearly that the error messages were

---

[685] *See* Compl. ¶ 248(r).

massive, it shows very clearly that races were flipped.  Now, most of the important races that were flipped were down ballot.  The most important race was a marijuana, proposal….

Kelly: It is amazing.  Yeah.  68 percent I think was the error rate, which is obviously ludicrous….

…

Kelly: I want to show the initial tally from Antrim County.  It has Joe Biden up with a pretty comfortable lead, and then things switched.  Let's go ahead to the next one.  By November 21st Donald Trump had the lead, and I guess we were lucky to catch this.  And you, I think, made the point in the report that it could not have just been Antrim County.  Antrim County, if this were to happen there, Dominion voting system is used in what, 48 counties, all 48 of Michigan.  There's absolutely no way this was confined to one county.

Ramsland: Correct….

Kelly: It's so troubling to me that people are discounting this, but I don't think you can steal something this big and get away with it….[686]

### 2.   *Omitted Context Offered by Newsmax*

"In a portion omitted by Dominion," Mr. Ramsland "explains that the software makes it 'easy' 'to change votes' and that 'you can easily change the audit trail so that later you cannot even forensically go back and find out the votes that were changed.'"[687]

Newsmax also offers additional context to Mr. Kelly's statement: "It is amazing.  Yeah. 68 percent I think was the error rate, which is obviously ludicrous.  By the way, the Dominion CEO, as you know, is denying everything…."[688]  Mr. Kelly then played a clip of Mr. Poulos' December 15, 2020, Michigan Senate testimony where he stated in relevant part, "There are no switched or deleted votes involving Dominion machines."[689]

---

[686] *Id.*
[687] Def. Opp'n at 33.
[688] *See* Def. Mot. at 35, 96.
[689] *Id.* at 96.

After watching the Poulos clip, Mr. Ramsland stated, "I guess [Mr. Poulos] needs to read Chapter 11.0 in his own user's manual … because he's dead wrong."[690]

### 3. *Statement R Asserts Facts*

Newsmax does not dispute that Mr. Ramsland's statements are ones of fact. The Court finds that Mr. Ramsland's statements are capable of being proven true or false and a reasonable viewer would conclude that Mr. Ramsland was asserting facts.

Rather, Newsmax argues that Mr. Kelly's comments about the Ramsland Report are all subjective opinions that are not verifiably true or false.[691] Newsmax states:

> In context, it is clear that [Mr.] Kelly was acting as a typical opinion journalist. He allowed his guest ([Mr.] Ramsland) to present his information, and then [Mr.] Kelly aired footage of [Mr. Poulos] denying the allegations about Dominion. [Mr.] Kelly then interspersed his own opinions, including that the error rate alleged in [Mr.] Ramsland's report was "obviously ludicrous" and that "we were lucky to catch this" regarding the vote-flip in Antrim County. He phrased comments in the conditional: "*if* this were to happen there, …." This signifies that [Mr.] Kelly is conveying his belief or conjecture as opposed to stating fact. … Similarly, the language "[i]t's so troubling to me" and "I don't think you can steal something this big and get away with it" signifies that he was expressing personal opinions and beliefs, not making statements of fact.[692]

Even considering Newsmax's offered context, the Court finds that Statement R meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Mr. Kelly introduces Mr. Ramsland by stating that Mr. Kelly agrees with the Ramsland Report's assertions about Dominion—"all of his concerns" about alleged vote-flipping in Antrim County, Michigan, "*unfortunately came true*." Not only are these claims capable of being proven true or false, but a reasonable viewer would conclude that they are factual.

---

[690] *Id.*
[691] *See id.*
[692] *Id.* at 96-97 (emphasis supplied).

Although Mr. Kelly uses language like "I think," such language is not dispositive of whether the Statement is one of pure opinion. The Court must also consider the Statement's context to determine whether the Statement is "mere rhetorical hyperbole, not intended to be understood in its literal sense." In context, a reasonable viewer would conclude that Mr. Kelly's statements about the Ramsland Report offer an endorsement of Mr. Ramsland's claims in a literal sense. Also, unlike in *Keohane*, none of Mr. Kelly's statements contain speculation or conjecture about Mr. Ramsland's claims concerning Dominion.

As such, the Court finds that Statement R asserts facts and is not a protected opinion.

## S. STATEMENT S

Statement S is from an episode of *Greg Kelly Reports* on December 21, 2020, where Mr. Lindell appeared as a live on-air guest.[693]

### 1. Excerpt from Dominion

Gorka: But now the election's fine because their guy "won." So, don't investigate anything. Nothing. … Well, we're not going to ignore it here, because we fight for the truth and we believe that this is still the greatest nation on God's earth and nobody gets to steal it from us. … One man who decided, he's not a politician, he doesn't work for the president, but he's still fighting for him and for the cause of truth, is a man that makes my show, for example, *America First* on Salem Radio possible. The great Mike Lindell…. He's fighting for America. … Mike Lindell, what's going on?

Lindell: Well, I believe in this president, but – and I'll tell you what, nobody realizes … what America we had on election night at 11:15. You know, you talked about all this fraud, doctoring – the biggest fraud is the Dominion machines. And at 11:15 on election night our great president –

(Talking simultaneously.)

Gorka: Mike, I don't want to discuss. Mike. Mike. We're not going to get into the minutia and the details….[694]

---

[693] *See* Compl. ¶ 248(s).
[694] *Id.*

## 2. *Omitted Context Offered by Newsmax*

Newsmax contends that prior to Mr. Lindell appearing as a guest, Mr. Gorka "played a short clip of testimony from a congressional hearing on December 16 where Jesse Binnall, an attorney, testified about mail-in voting fraud and stated that in Nevada '[o]ver 42,000 people voted more than once. At least 1,500 dead people are recorded as voting,' and '[m]ore than 19,000 people voted even though they didn't live in Nevada.'"[695]

Before Mr. Lindell started his Statement, Mr. Gorka asked Mr. Lindell, "Why are you fighting the legal battle for election transparency?"[696]

Newsmax asserts that Dominion "splices multiple comments into one paragraph, but … [Mr.] Gorka's commentary was actually interspersed over two spaces of transcript. … The parts that Dominion edited out of the paragraph provide context and show that [Mr.] Gorka's commentary is all protected opinion."[697] Newsmax offers the following additional context:

> [Mr.] Gorka's sarcastic remark that the election is fine and "don't investigate anything," when viewed with the portions that Dominion omitted as the Court must do, was [Mr.] Gorka lamenting on how Robert Mueller spent $40 million of taxpayer funds to investigate the "so-called Russian collusion with no evidence at the end of it after 20 months of investigation," … but there was no investigation of the 2020 election irregularities. In [Mr.] Gorka's comment that "we're not going to ignore it," the "it" refers to the various election irregularities that [Mr.] Gorka just cited.[698]

## 3. *Statement S Asserts Facts and Mixed Opinions*

Newsmax argues that Mr. Gorka's statements prior to introducing Mr. Lindell do not concern Dominion, are not susceptible of being proven true or false, and contain statements that are "merely hyperbole."[699] Also, Newsmax asserts that Mr. Lindell's portion of the Statement

---

[695] Def. Mot. at 36.
[696] *Id.*
[697] *Id.* at 97.
[698] *Id.* at 97-98.
[699] *Id.*

cannot be attributed to Mr. Gorka, because when Lindell brought up Dominion, Mr. Gorka "cut him off."[700]

The Court finds that Statement S meets both elements of Colorado's two-part test to determine whether a statement is actionable as defamation.

Mr. Gorka's statement is a mixed opinion because implies that there are facts, unknown to the viewer, which justify his opinions about the "*truth*" of the Election, and further that Mr. Lindell is "fighting" for that "*truth*."

Mr. Lindell's statement asserts a fact capable of being proven true or false, and a reasonable viewer would conclude that the statement is factual, especially because it occurred in the context of answering a question about why Mr. Lindell is "fighting the legal battle for election transparency."

As such, the Court finds that Statement S asserts facts and mixed opinions and is not a protected opinion.

---

[700] *Id.* at 98.